UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| TERRY GENE BOLLEA professionally known as HULK HOGAN, <br><br>               Plaintiff, <br><br>       v. <br><br> GAWKER MEDIA, LLC aka GAWKER MEDIA; GAWKER MEDIA GROUP, INC. aka GAWKER MEDIA; GAWKER ENTERTAINMENT, LLC; GAWKER TECHNOLOGY, LLC; GAWKER SALES, LLC; NICK DENTON; A.J. DAULERIO; KATE BENNERT; BLOGWIRE HUNGARY SZELLEMI ALKOTAST HASZNOSITO KFT, <br><br>               Defendants. | Case No. 8:12-cv-2348 |

**MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff Terry Gene Bollea ("Plaintiff"), by and through his undersigned counsel,

pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and Rule 4.05 of the Local Rules

for the Middle District of Florida, moves the Court for entry of a Temporary Restraining Order

and, thereafter, a Preliminary Injunction to have Defendants remove the excerpts from the Hulk

Hogan sex tape that were posted on the www.Gawker.com website on or about October 4, 2012,

and enjoin said Defendants from posting, publishing or releasing any portions or content of the

sex tape to the public, including that or any other website.  In support of this Motion, Plaintiff

relies upon, incorporates and refers to the Declaration of Terry Gene Bollea in Support of

Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, the Complaint

1

and the matters of fact and law set forth below in the Incorporated Memorandum of Law.

Plaintiff states as follows:

1.     Defendants have engaged in intentional, outrageous, irresponsible and despicable conduct by posting to the Internet on or about October 4, 2012, excerpts (herein the "Video Excerpts") of a secretly-taped video depicting Plaintiff engaged in private consensual sexual relations with a woman in a private bedroom (the "Video").  Defendants posted the Video Excerpts at their website www.Gawker.com (the "Gawker Site").  Defendants posted the Video Excerpts for the public to view, for the purpose of obtaining tremendous financial benefit for themselves, including without limitation (a) the sale of advertisements at the Gawker Site to viewers of the webpage with a link to the Video Excerpts, and (b) attracting new viewers to the Gawker Site for the long-term financial benefit of Defendants and all of their affiliated websites, and additional revenues from the substantial new viewers brought thereto by the Video Excerpts.

2.     Plaintiff, through legal counsel, has repeatedly requested and demanded the removal of the Video Excerpts from the Gawker Site.  Defendants have failed to comply with any of those requests and demands.

3.     Plaintiff had no knowledge that the intimate activity depicted in the Video was being recorded.  To the contrary, Plaintiff believed that such activity was completely private, and Plaintiff had a reasonable expectation of his privacy in his intimate activities, and reasonably believed that his privacy was safe and protected.

4.     Defendants' posting of the Video Excerpts at the Gawker Site constitutes a shameful and outrageous invasion of Plaintiff's right of privacy by a group of loathsome Defendants who have no regard for human dignity and care only about maximizing their revenues and profits at the expense of all others.

5.     This lawsuit was necessitated by Defendants' blatant violation of Plaintiff's right of privacy; their wrongful disclosure of the private acts depicted in the Video; their unauthorized commercial exploitation of Plaintiff's name, image, identity and persona; their refusal to remove the Video Excerpts when Plaintiff repeatedly requested and demanded its removal from the Gawker Site; and other calculated wrongful and tortious conduct as described herein.

6.     Plaintiff's reasons for his motion for temporary restraining order are more fully explained and supported in the Complaint and accompanying affidavit of Terry Gene Bollea and the accompanying Memorandum of Law below.

7.     Without temporary, preliminary and injunctive relief, Plaintiff will suffer irreparable injury to his reputation, his personal life, and his business ventures.

8.     The public interest favors the issuance of a temporary restraining order until the case can be resolved on the merits.

9.     Defendants will not be harmed by the issuance of a temporary restraining order as the "value of the tape" will not diminish during the pendency of these proceedings.

10.     Plaintiff has demonstrated that he is threatened with irreparable injury and he has demonstrated a likelihood of success on the merits of his claims.

11.     Pursuant to Local Rule 3.01(g), counsel for Plaintiff certified that counsel for Plaintiff notified Defendants of its intent to seek a temporary restraining order on October 15, 2012 because of the damage being caused by the publication of the videotape.

**WHEREFORE**, Plaintiff respectfully requests that this Court issue a temporary restraining order and set a hearing on a preliminary injunction requiring Defendants to:

1.     Remove the Video Excerpts from the Gawker Site and any affiliated websites;

2.      Temporarily and preliminarily restrain and enjoin Defendants and all of their respective agents, officers, and employees from disseminating, distributing, or publishing any excerpt or portion of the Video, or the entire Video, or any content therein, or any related "sex tape" involving Plaintiff, to the public in any way, including to any media outlet or website;

3.      Requiring the delivery to Plaintiff of all copies of the Video, and all portions and content thereof, including without limitation the Video Excerpts, in all formats and all forms of media, including electronic and physical media, within Defendants' possession, custody or control, including without limitation turning over to Plaintiff any and all storage devices (such as CDs, DVDs, hard drives, flash drives, tapes, and disks) containing same;

4.      Requiring Defendants to turn over to Plaintiff all information pertaining to the Video and Video Excerpts, including without limitation, all activity by all persons and entities related to the creation, storage, transportation, editing, distributing, disseminating, publishing, displaying, posting for view or access on or through the Internet or any other manner or media outlet, broadcasting, transferring, licensing, selling, offering to sell or license, or otherwise using, exploiting or attempting to exploit, the Video or any portions or content thereof or any copies thereof, including without limitation the Video Excerpts, in any and all formats and media, including all electronic and physical media; and

5.      For a constructive trust to be placed upon Defendants and all persons acting on their behalf or under their direction or control, as to all revenues and profits received by such individuals, including Defendants, to be held for the benefit of Plaintiff.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
### NATURE OF THE CASE

On or about October 4, 2012, the Gawker Site published a story entitled "Even For a Minute, Watching Hulk Hogan Have Sex on a Canopy Bed is Not Safe For Work, But Watch It

Anyway" (the "Gawker Story").  The Gawker Story featured a link to the Video Excerpts depicting Plaintiff having private consensual sexual relations with an anonymous woman in a private bedroom.  (Declaration of Plaintiff Terry Gene Bollea dated October 15, 2012, ("Bollea Decl."), a true and correct copy of which is attached hereto as **Exhibit 1**, at ¶7)  The Video was recorded in or about 2006 and was recorded without Plaintiff's knowledge or consent.  Id. at ¶6.  Defendant Bennert edited the Video into the Video Excerpts without Plaintiff's knowledge or consent.  The Gawker Story was written and/or edited by defendant Daulerio.  Plaintiff made numerous and repeated demands to Gawker Media, and also directly to defendant Denton, the owner of Gawker Media, to remove the Video Excerpts from the Gawker Site.  Bollea Decl. at ¶8.  Defendants failed and refused to do so.

At no time prior to, during, or after the consensual sexual encounter between Plaintiff and the woman depicted in the Video did Plaintiff ever in any way or manner whatsoever authorize or consent to any person or entity recording the private, intimate acts depicted in the Video, or to the storage, editing, dissemination, publication and exploitation of the Video.  Bollea Decl. at ¶6.  To the contrary, Plaintiff finds the creation and publishing of the Video Excerpts by Defendants to be outrageous and egregious.  The Video and Video Excerpts have never been authorized by Plaintiff for any purpose whatsoever, including any form of disclosure to the public.

Numerous media outlets and websites have reported on the Gawker Story, and feature links to the Gawker Story (though do not feature the Video or Video Excerpts).  Thus, millions of people are being exposed to the Video Excerpts.  Id. at ¶10.  As a natural and foreseeable consequence, millions of individuals were drawn to the Gawker Site to view the Video Excerpts.  Defendants have reaped and will continue to reap tremendous revenues and profits as a result, and have been and will continue to be unjustly enriched therefrom, both from the short term web

traffic of millions of people viewing the Gawker Story that posted the Video Excerpts, the advertisements displayed thereat, the long term increase in viewership to the Gawker Site and Defendants' other affiliated sites, and the revenues and profits associated therewith for a prolonged period of time.  Such tremendous benefits are a direct result of the substantial fame and goodwill of Plaintiff, and the public's interest in his life and activities.  (A completely unknown person in a sex video posted at the Gawker Site would probably draw very few viewers, and might even cause many viewers to avoid the site in the future due to its distasteful content.)

Plaintiff has devoted a tremendous amount of his time and effort to developing his career as a professional champion wrestler, motion picture actor, and television personality, and to developing his universal goodwill, reputation and brand.  Bollea Decl. at ¶¶2-5.  Such efforts have created considerable commercial value in his name, image, identity and persona.  Id. at ¶5.

The commercial value of Plaintiff's name, image, identity and persona is diminished by the unauthorized posting, publishing, distribution and dissemination of the Video Excerpts, which are perceived unfavorably by the public and by the negative portrayal of Plaintiff in the Video Excerpts to the general public.

Defendants' conduct manifests a depraved disregard for Plaintiff's privacy rights, his emotional distress,, and an unauthorized commercial exploitation of his publicity rights.

## NEED FOR TEMPORARY RESTRAINING ORDER

Plaintiff made numerous and repeated demands to Gawker Media, and also directly to defendant Denton, its owner, to remove the Video Excerpts from the Gawker Site.  Defendants, however, failed and refused to do so.

Plaintiff is informed that unless enjoined and restrained, Defendants will continue to post, publish, distribute, disseminate and exploit the Video and Video Excerpts, despite Plaintiff's

numerous and repeated demands that Defendants cease and desist, and Defendants' clear violation of Plaintiff's rights. Such infringement and violation of Plaintiff's rights will continue to cause Plaintiff severe distress and damage, for which there is no adequate remedy at law. Defendants' conduct and activity have caused and will continue to cause Plaintiff to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, Plaintiff cannot wait fourteen days for the adjudication of a noticed motion for preliminary injunction and respectfully seeks a temporary restraining order.

The Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Middle District of Florida authorize this Court to issue a temporary restraining order without written or oral notice to the adverse party under certain circumstances. Fed.R.Civ.P. 65(b); M.D.Fla.R. 4.05. A temporary restraining order may be issued without notice, only if "(A) specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give the notice and the reasons why it should not be required." Fed.R.Civ.P. 65(b)(1). A temporary restraining order will be issued only if Plaintiff demonstrates: (1) the likelihood of success on the merits of the claims; (2) the irreparable nature of the threatened injury and the reason notice cannot be given; (3) the potential harm that might be caused to the opposing party or others if the order is issued; and (4) the public interest, if any. *See* M.D. Fla. R. 4.05(b)(4); See also Parker v. State Board of Pardons & Paroles, 275 F.3d 1032, 1034-35 (11th Cir. 2001).

The factors for determining preliminary injunctive relief operate as a sliding scale, and where one factor, such as irreparable harm, weighs so heavily in favor of granting relief, the focus of the Court upon the remaining factors, such as likelihood of success on the merits, weans

accordingly.  See Faculty Senate of Florida Int'l University v. Winn, 477 F.Supp.2d 1198, 1203

(S.D. Fla. 2007) ("A sliding scale can be employed, balancing the hardships associated with the

issuance or denial of a preliminary injunction with a degree of likelihood of success on the

merits."); Louis v. Meissen, 530 F. Supp. 924, 925 (S.D. Fla. 1981) ("A showing that Plaintiffs

will be more severely prejudiced by a denial of the temporary restraining order or injunction than

will Defendants should it be granted, lessens the standard likelihood of success that must be

met.")

   "No particular quantum of proof is required as to each of the four criteria."  Laboratories

Roldan v. Tex Int'l, Inc., 902 F. Supp. 1555, 1565 (S.D. Fla. 1995).  In light of the facts and

issues presented herein, the four factors favor the issuance of a temporary restraining order in

this case, particularly insofar as requested injunctive relief protects the privacy interests of

Plaintiff and does not affect the non-moving parties.

## ARGUMENT

### I.    Standard and scope of review.

   Plaintiff is entitled to a temporary restraining order and preliminary injunctive relief if he

shows: "(1) a substantial likelihood of success on the merits of the underlying case; (2) the

movant will suffer irreparable harm in the absence of an injunction; (3) the harm suffered by the

movant in the absence of an injunction would exceed the harm suffered by the opposing party if

the injunction is not issued; and (4) an injunction would not disserve the public interest."

Johnson & Johnson Vision Care, Inc. v. 1-800-Contacts, Inc., 299 F.3d 1242, 1246-47 (11th Cir.

2002); Keeton v. Anderson-Wiley, 664 F.3d 865, 868 (11th Cir. 2011); Local Rule 4.05.

   The Eleventh Circuit does not hold a Plaintiff seeking preliminary injunctive relief to the

same evidentiary standard that would be required in a summary judgment proceeding.  For

instance: "A District Court may rely on affidavits and hearsay materials which would not be

admissible evidence for permanent injunction if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (quoting Asseo v. Pan American Grain Co., 805 F.2d 23, 26 (1st Cir. 1986).  See also, Complete Angler, LLC v. City of Clearwater, Fla., 607 F.Supp.2d 1326 (M.D. Fla. 2009).

## II.    Likelihood of Success on the Merits.

To issue injunctive relief, "a district court need not find that the evidence positively guarantees a final verdict" in favor of the movant.  Levi Strauss & Co. v. Sunrise Int'l Trading, Inc., 51 F.3d 982, 985 (11th Cir. 1995).  Plaintiff need only demonstrate a likelihood of success on the merits.  Plaintiff has pleaded causes of action for invasion of privacy and infliction of emotional distress under Florida law. As demonstrated in the Complaint and the Bollea Declaration, Plaintiff has demonstrated a likelihood of success on the merits.

Invasion of privacy by intrusion is defined as follows:

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts, Section 652B (1977).

It is clear that Defendants' actions have invaded Plaintiff's privacy rights and their actions are highly offensive to reasonable people.

Further, Defendants have publicly disseminated private facts about Plaintiff.  The Restatement (Second) of Torts Section 652D (1977) provides:

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.

9

Just as in the "intrusion" area, the news media can be held liable for damages for truthful publication.  In order for an offended plaintiff to prevail, he must prove both that the publication was "highly offensive to a reasonable person" and that the matters were not "of legitimate concern to the public."  Id.

In Cason v. Baskin, 30 So. 2d 635, 638 (Fla. 1947), the Florida Supreme Court held that invasion of privacy by publication of private facts could be accomplished only when "the community has no legitimate concern" in those facts.  In the instant action, the community has no legitimate concern in the publication of the Video taken over six years ago of a private, consensual sexual encounter.

Plaintiff has also pleaded that Defendants have negligently and intentionally caused the infliction of emotional distress.  The tort of "intentional infliction of emotional distress" is recognized in Florida.  Gallogly v. Rodriguez, 970 So. 2d 470 (Fla. 2d DCA. 2007).  To state a cause of action for intentional infliction of emotional distress, a complaint must allege four elements:

> (1) the wrongdoer's conduct was intentional or reckless, that is, he or she intended his or her behavior when he or she knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe.

Gallogly v. Rodriguez, 970 So. 2d 470, 471 (Fla. 2d DCA. 2007).

Here, Defendants' conduct is intentional and outrageous, and Defendants knew or should have known that emotional distress would likely result from their conduct.  Although requested, Defendants have refused to remove the offending Video from their website.  The dissemination of the Video has caused and will continue to cause Plaintiff severe emotional distress.

10

As to negligent infliction of emotional distress, Florida's "impact rule" provides that "'before a plaintiff can recover **damages** for emotional distress caused by the negligence of another, the emotional distress must flow from physical injuries the plaintiff sustained in an impact.'" Southern Baptist Hosp. of Florida, Inc. v. Welker, 908 So. 2d 317, 320  (Fla. 2005)(quoting R.J. v. Humana of Florida, Inc., 652 So. 2d 360, 362 (Fla. 1995)(quoting Reynolds v. State Farm Mut. Auto. Ins., 611 So. 2d 1294, 1296 (Fla. 4th DCA 1992)) (Emphasis supplied).  With certain exceptions, the "impact rule" bars a Plaintiff from recovering damages for his or her emotional distress that is caused by another's negligence but does not flow from physical injury.  The "impact rule," does not, however, bar injunctive relief, as requested here. See id.

Accordingly, for the same reasons Plaintiff has shown likelihood of success on the merits of his claim for Intentional Infliction of Emotional Distress, he has shown a likelihood of success on the merits of his claim for Negligent Infliction of Emotional Distress requesting only injunctive relief.

### III.   Substantial Threat of Irreparable Injury.

In addition to affecting Plaintiff's fundamental right of privacy, the Defendants' maintenance of the Video Excerpts on its website will also cause injuries that "cannot be undone through monetary remedies" and are "actual and imminent." Northeastern Fla. Chapter of Ass'n of Contractors of AM v. Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990).  Plaintiff has spent considerable time and effort developing his career as a professional champion wrestler and in developing his brand.  (Bollea Decl. at ¶5.)  Because the acts depicted in the Video Excerpts are likely be viewed negatively by the public and cast Plaintiff in a negative light by the public, if the Video, and excerpts thereof, remain publicly posted and disseminated, it will have a

substantial adverse and detrimental effect on Plaintiff's personal and professional life, including irreparable harm to both.  The more widely disseminated the Video Excerpts become, the more unmarketable Plaintiff is likely to become.  Not because Plaintiff has done anything publically wrong, but because Defendants chose to publically disseminate Plaintiff's private encounter.

## IV.     Balance of Harm/Public Interest.

The devastating harm to Plaintiff and his continuing severe emotional distress supports an issuance of injunctive relief.  The maintenance of the Video Excerpts on the Gawker Site implicates and affects Plaintiff's fundamental rights of privacy.  However, the website's maintenance of the Video Excerpts, depicting Plaintiff engaged in private consensual sexual activity, only seeks to advance prurient interests, and drive traffic to Defendants' website, thus increasing its advertising revenue.  The Defendants' only incentive is economic, and they are acting without any regard for Plaintiff's rights of privacy.  Requiring Defendants to remove the Video Excerpts from the website will simply put Defendants back into the same position they were before they obtained and posted the Video Excerpts and will cause them no harm.

## V.     Plaintiff Should Not be Required to Post a Bond.

"The amount of an injunction bond is within the sound discretion of the district court." Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd., 112 F.3d 1125, 1127 (11th Cir. 1997). The Court's discretion is wide and extends to whether any bond should be required at all. Despite the mandatory nature of the language of Federal Rule of Civil Procedure 65(c), "'federal courts have come to recognize that the district court possesses discretion over whether to require the posting of security.'"  The Complete Angler, LLC v. City of Clearwater, 607 F. Supp. 2d 1326,1335, (M.D. Fla. 2009)(quoting Popular Bank of Fla. v. Banco Popular de Puerto Rico, 180 F.R.D. 461, 463 (S.D. Fla. 1998)).  "Waving the bond requirement is particularly appropriate

where a plaintiff alleges the infringement of a fundamental constitutional right." The Complete Angler, 607 F. Supp. 2d at1335; see also Cont'l Oil Co. v. Frontier Ref. Co., 338 F.2d 780, 782 (10th Cir. 1964)(noting that exercise of the Court's discretion not to require a bond is particularly appropriate where issues of public concern or important constitutional rights are involved). Here, Plaintiff alleges an infringement of his fundamental and important Constitutional right of privacy.  Accordingly, and because Defendants will not suffer any harm if the Court enters an injunction, the Court should not require a bond.  If a bond is required, Plaintiff suggests the *de minimis* amount of One Thousand Dollars ($1,000.00).

### VI.    Notice to Defendants of Intent to Seek a Temporary Restraining Order

The undersigned counsel certifies that the following efforts have been made to give Defendants notice of Plaintiff's request that the Court enter a Temporary Restraining Order and a Preliminary Injunction:

1.  Prior to filing this lawsuit, Plaintiff, through his attorneys, requested that Defendants remove the Video Excerpts from the website and stated that if they did not do so, Plaintiff would file a lawsuit against them to require them to do so. Defendants refused;

2.  Before filing the Complaint, counsel for Plaintiff sent to Defendants' representative a copy of the Complaint via e-mail and stated in the e-mail that Plaintiff will request that the Court issue a Temporary Restraining Order enjoining Defendants from engaging in the conduct alleged in the Complaint (a copy of which is attached hereto as **Exhibit 2**);

3.  Plaintiff issued a press release to numerous local and national media which stated that Plaintiff had filed a lawsuit against Defendants and would seek a Temporary

Restraining Order and Preliminary Injunctive Relief (a copy of which is attached hereto as **Exhibit 3**); and,

4.    After receiving a call and e-mail from Greg D. Thomas of Thomas & LoCicerco PL, in which Mr. Thomas stated that he and his firm represent the "defendants in the above-styled litigation" and prior to the filing of this Motion with the Court, the undersigned sent a copy of the Complaint, this Motion for Temporary Injunction, and Plaintiff's Motion for Preliminary Injunction to Greg D. Thomas, via e-mail to gthomas@tlolawfirm.com.

Defendants have been given ample notice of Plaintiff's demand that Defendants remove the Video Excerpts from the website and of this lawsuit.  Nevertheless, Defendants have continued to refuse to acknowledge Plaintiff's right to privacy and have refused to remove the Video Excerpts from the website.  Every second that goes by that the Video Excerpts are available on Defendants' website Plaintiff is damaged and continues to suffer severe emotional distress, all while Defendants continued to reap rewards at the expense of Plaintiff.  For these reasons, the Court should enter the Temporary Restraining Order Plaintiff requests without further notice to Defendants.

## CONCLUSION

For all the reasons stated above, Plaintiff respectfully requests that the Court enter a temporary restraining order in the form attached hereto as **Exhibit 4** and set an order to show

cause for preliminary injunction so that the Video and Video Excerpts at issue may be taken

down pending an adjudication of this case on the merits.

Respectfully Submitted,

DATED: October 16, 2012

/s/ E. Colin Thompson
Fredrick H.L. McClure
Florida Bar No. 147354
fredrick.mcclure@dlapiper.com
E. Colin Thompson
Florida Bar No. 684929
colin.thompson@dlapiper.com
DLA PIPER LLP (US)
100 N. Tampa Street, Suite 2200
Tampa, FL 33602
Phone: (813) 229-2111
Facsimile:  (813) 229-1447


/s/ Charles J. Harder
Charles J. Harder, Esq.
California Bar No. 184593
(*Pro Hac Vice* to be filed)
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Boulevard, 9th Floor
Los Angeles, Ca  90064-1582
T: (310) 478-4100
F: (310) 479-1422
charder@wrslawyers.com


/s/ David R. Houston
David R. Houston, Esq.
Nevada Bar No.
(*Pro Hac Vice* to be filed)
432 Court Street
Reno, Nevada  89501
T: (775) 786-4188
F: (775) 786-5091
dhouston@houstonatlaw.com


Attorneys for Plaintiff