UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRY GENE BOLLEA professionally
known as HULK HOGAN,

Plaintiff,

v.

GAWKER MEDIA, LLC aka GAWKER
MEDIA; GAWKER MEDIA GROUP, INC.
aka GAWKER MEDIA; GAWKER
ENTERTAINMENT, LLC; GAWKER
TECHNOLOGY, LLC; GAWKER SALES,
LLC; NICK DENTON; A.J. DAULERIO;
KATE BENNERT; BLOGWIRE HUNGARY
SZELLEMI ALKOTAST HASZNOSITO
KFT,

Defendants.

Case No. 8:12-cv-2348

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Terry Gene Bollea ("Plaintiff"), by and through his undersigned counsel and

pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and Rule 4.06 of the Local Rules

for the Middle District of Florida, moves the Court for entry of a Preliminary Injunction to have

Defendants remove the excerpts from the Hulk Hogan sex tape that were posted on the

www.Gawker.com website on or about October 4, 2012 and to enjoin Defendants from posting,

publishing or releasing any portions or content of the sex tape to the public, including that or any

other website. In support of this Motion, Plaintiff relies upon, incorporates and refers to the

Declaration of Terry Gene Bollea in Support of Plaintiff's Motion for Temporary Restraining

1

Order and Preliminary Injunction, the Complaint and the matters of fact and law set forth below
in the Incorporated Memorandum of Law.

## MEMORANDUM OF LAW

### I.   INTRODUCTION

Defendants have engaged in intentional, outrageous, irresponsible and despicable conduct
by posting to the Internet on or about October 4, 2012, excerpts (herein the "Video Excerpts") of
a secretly-taped video depicting Plaintiff engaged in private consensual sexual relations with a
woman in a private bedroom (the "Video"). (Declaration of Plaintiff Terry Gene Bollea dated
October 15, 2012, ("Bollea Decl."), a true and correct copy of which is attached hereto as
**Exhibit 1**, at ¶7.) Defendants posted the Video Excerpts at their website www.Gawker.com (the
"Gawker Site"). Defendants posted the Video Excerpts for the public to view, for the purpose of
obtaining tremendous financial benefit for themselves, including without limitation (a) the sale
of advertisements at the Gawker Site to viewers of the webpage with a link to the Video
Excerpts, and (b) attracting new viewers to the Gawker Site for the long-term financial benefit of
Defendants and all of their affiliated websites, and additional revenues from the substantial new
viewers brought thereto by the Video Excerpts.

Plaintiff had no knowledge that the intimate activities depicted in the Video were being
recorded. To the contrary, Plaintiff believed that such activity was completely private, and
Plaintiff had a reasonable expectation of his privacy in his intimate activities in a private
bedroom, and reasonably believed that his privacy was safe and protected.

At no time prior to, during, or after the consensual sexual encounter between Plaintiff and
the woman depicted in the Video did Plaintiff ever in any way or manner whatsoever authorize
or consent to any person or entity recording the private, intimate acts depicted in the Video, or to

2

the storage, editing, dissemination, publication and exploitation of the Video. Bollea Decl. at ¶6. To the contrary, Plaintiff finds the creation and publishing of the Video Excerpts by Defendants to be outrageous and egregious. The Video and Video Excerpts have never been authorized by Plaintiff for any purpose whatsoever, including any form of disclosure to the public.

Numerous media outlets and websites have reported on the Gawker Story, and feature links to the Gawker Story (though do not feature the Video or Video Excerpts). Thus, millions of people are being exposed to the Video Excerpts. Id. at ¶10. As a natural and foreseeable consequence, millions of individuals were drawn to the Gawker Site to view the Video Excerpts. Defendants have reaped and will continue to reap tremendous revenues and profits as a result, and have been and will continue to be unjustly enriched therefrom, both from the short term web traffic of millions of people viewing the Gawker Story that posted the Video Excerpts, the advertisements displayed thereat, the long term increase in viewership to the Gawker Site and Defendants' other affiliated sites, and the revenues and profits associated therewith for a prolonged period of time. Such tremendous benefits are a direct result of the substantial fame and goodwill of Plaintiff, and the public's interest in his life and activities. (A completely unknown person in a sex video posted at the Gawker Site would probably draw very few viewers, and might even cause many viewers to avoid the site in the future due to its distasteful content.)

Plaintiff has devoted a tremendous amount of his time and effort to developing his career as a professional champion wrestler, motion picture actor, and television personality, and to developing his universal goodwill, reputation and brand. Bollea Decl. at ¶¶2-5. Such efforts have created considerable commercial value in his name, image, identity and persona. Id. at ¶5.

3

The commercial value of Plaintiff's name, image, identity and persona is diminished by the unauthorized posting, publishing, distribution and dissemination of the Video Excerpts, which are perceived unfavorably by the public and by the negative portrayal of Plaintiff in the Video Excerpts to the general public.

Defendants' posting of the Video Excerpts at the Gawker Site constitutes a shameful and outrageous invasion of Plaintiff's right of privacy by a group of loathsome Defendants who have no regard for human dignity and care only about maximizing their revenues and profits at the expense of all others.

This lawsuit was necessitated by Defendants' blatant violation of Plaintiff's right of privacy; their wrongful disclosure of the private acts depicted in the Video; their unauthorized commercial exploitation of Plaintiff's name, image, identity and persona; their refusal to remove the Video Excerpts when Plaintiff repeatedly requested and demanded their removal from the Gawker Site; and other calculated, intentional, wrongful and tortious conduct as described herein.

Without preliminary and injunctive relief, Plaintiff will suffer irreparable injury to his reputation, his personal life, and his business ventures, and will continue to suffer severe emotional distress.

## II.    ARGUMENT

### A.    Plaintiff Is Entitled to the Entry of a Preliminary Injunction

A movant is entitled to preliminary injunctive relief upon establishing: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if injunctive relief is not granted; (3) that the threatened injury outweighs any threatened harm of an

injunction to defendants and (4) that granting a preliminary injunction will not disserve public interest. See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998).

In light of the facts and issues presented herein, the four factors favor the issuance of a preliminary injunction in this case. See id.

Plaintiff made numerous and repeated demands to Gawker Media, and also directly to defendant Denton, to remove the Video Excerpts from the Gawker Site. Defendants, however, failed and refused to do so.

Plaintiff is informed that unless enjoined and restrained, Defendants will continue to post, publish, distribute, disseminate and exploit the Video and Video Excerpts, despite Plaintiff's numerous and repeated demands that Defendants cease and desist, and Defendants' clear violation of Plaintiff's rights. Such infringement and violation of Plaintiff's rights will continue to cause Plaintiff severe distress and damage, for which there is no adequate remedy at law, if the Video and/or Video Excerpts continue to be posted, published, distributed, disseminated and exploited by the Defendants. Such conduct and activity has caused and will continue to cause Plaintiff to suffer irreparable harm for which there is no adequate remedy at law.

## II.     Likelihood of Success on the Merits.

To issue injunctive relief, "a district court need not find that the evidence positively guarantees a final verdict" in favor of the movant. Levi Strauss & Co. v. Sunrise Int'l Trading, Inc., 51 F.3d 982, 985 (11th Cir. 1995). Plaintiff need only demonstrate a likelihood of success on the merits. Plaintiff has pleaded causes of action for invasion of privacy and infliction of emotional distress under Florida law. As demonstrated in the Complaint and the Bollea Declaration, Plaintiff has demonstrated a likelihood of success on the merits.

Invasion of privacy by intrusion is defined as follows:

5

> One who intentionally intrudes, physically or otherwise, upon the solitude or
> seclusion of another or his private affairs or concerns, is subject to liability to the
> other for invasion of privacy, if the intrusion would be highly offensive to a
> reasonable person.

Restatement (Second) of Torts, Section 652B (1977).

It is clear that Defendants' actions have invaded Plaintiff's privacy rights and their

actions are highly offensive to reasonable people.

Further, Defendants have publicly disseminated private facts about Plaintiff. The

Restatement (Second) of Torts Section 652D (1977) provides that:

> One who gives publicity to a matter concerning the private life of another is subject to
> liability to the other for invasion of his privacy, if the matter publicized is of a kind
> that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate
> concern to the public.

Just as in the "intrusion" area, the news media can be held liable for damages for truthful

publication. In order for an offended plaintiff to prevail, he must prove both that the publication

was "highly offensive to a reasonable person" and that the matters were not "of legitimate

concern to the public." Id.

In Cason v. Baskin, 30 So. 2d 635, 638 (Fla. 1947), the Florida Supreme Court held that

invasion of privacy by publication of private facts could be accomplished only when "the

community has no legitimate concern" in those facts. In the instant action, the community has

no legitimate concern in the publication of the Video taken over six years ago of a private,

consensual sexual encounter.

Plaintiff has also pleaded that Defendants have negligently and intentionally caused the

infliction of emotional distress. The tort of "intentional infliction of emotional distress" is

recognized in Florida. Gallogly v. Rodriguez, 970 So. 2d 470 (Fla. 2d DCA. 2007). To state a

cause of action for intentional infliction of emotional distress, a complaint must allege four

elements:

6

(1) the wrongdoer's conduct was intentional or reckless, that is, he or she intended his or her behavior when he or she knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe.

Gallogly, 970 So. 2d at 471

Here, Defendants conduct is intentional and outrageous, and Defendants knew or should have known that emotional distress would likely result from their conduct. Although requested, Defendants have refused to remove the offending Video from their website. The dissemination of the Video has caused and will continue to cause Plaintiff severe emotional distress.

As to negligent infliction of emotional distress, Florida's "impact rule" provides that "'before a plaintiff can recover **damages** for emotional distress caused by the negligence of another, the emotional distress must flow from physical injuries the plaintiff sustained in an impact.'" Southern Baptist Hosp. of Florida, Inc. v. Welker, 908 So. 2d 317, 320 (Fla. 2005)(quoting R.J. v. Humana of Florida, Inc., 652 So. 2d 360, 362 (Fla. 1995)(quoting Reynolds v. State Farm Mut. Auto. Ins., 611 So. 2d 1294, 1296 (Fla. 4th DCA 1992)) (Emphasis supplied). With certain exceptions, the "impact rule" bars a Plaintiff from recovering damages for his or her emotional distress that is caused by another's negligence but does not flow from physical injury. The "impact rule," does not, however, bar injunctive relief, as requested here. See id.

Accordingly, for the same reasons Plaintiff has shown likelihood of success on the merits of his claim for Intentional Infliction of Emotional Distress, he has shown a likelihood of success on the merits of his claim for Negligent Infliction of Emotional Distress requesting only injunctive relief.

7

III.   **Plaintiff Will Suffer Irreparable Injury if the Video and/or Video Excerpts Remains on the Gawker Site**

In addition to affecting Plaintiff's fundamental right of privacy, the Defendants' maintenance of the excerpts of the videotape on its website will also cause injuries that "cannot be undone through monetary remedies" and are "actual and imminent." Northeastern Fla. Chapter of Ass'n of Contractors of AM v. Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990). Plaintiff has spent considerable time and effort developing his career as a professional champion wrestler and in developing his brand. (Bollea Decl. at ¶5.) Because the acts depicted in the Video Excerpts are likely be viewed negatively by the public and cast Plaintiff in a negative light by the public, if the Video, and excerpts thereof, remain publicly posted and disseminated, it will have a substantial adverse and detrimental effect on Plaintiff's personal and professional life, including irreparable harm to both. The more widely disseminated the Video Excerpts become, the more unmarketable Plaintiff is likely to become. Not because Plaintiff has done anything publically wrong, but because Defendants chose to publically disseminate Plaintiff's private encounter.

IV.   **The Defendants Will Not Suffer Harm if the Video is Removed from the Gawker Media Websites**

The devastating harm to Plaintiff and his continuing severe emotional distress supports an issuance of injunctive relief. The maintenance of the Video Excerpts on the Gawker Site implicates and affects Plaintiff's fundamental rights of privacy. By contrast, the website's maintenance of the video only seeks to advance prurient interests, as well as to drive traffic to their website, thus increasing advertising revenue. Defendants' only incentive is economic, and they are acting without regard for Plaintiff's rights. Requiring Defendants to remove the Video Excerpts from the website will simply put Defendants back into the same position they were before they obtained and posted the Video Excerpts and will cause them no harm.

8

V.     **Public Interest Will be Served by Granting the Requested Relief**

There is a benefit to the public by granting the requested relief because the Video affects

Plaintiff's fundamental rights of privacy. The public interest is certainly disserved by

Defendants' continuing disregard of the rights of privacy of individuals when their motivation is

simply for prurient interests and commercial gain.

VI.    **Plaintiff Should Not be Required to Post a Bond.**

"The amount of an injunction bond is within the sound discretion of the district court."

Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd., 112 F.3d 1125, 1127 (11th Cir. 1997).

The Court's discretion is wide and extends to whether any bond should be required at all.

Despite the mandatory nature of the language of Federal Rule of Civil Procedure 65(c), "'federal

courts have come to recognize that the district court possesses discretion over whether to require

the posting of security.'" The Complete Angler, LLC v. City of Clearwater, 607 F. Supp. 2d

1326,1335, (M.D. Fla. 2009)(quoting Popular Bank of Fla. v. Banco Popular de Puerto Rico, 180

F.R.D. 461, 463 (S.D. Fla. 1998)). "Waving the bond requirement is particularly appropriate

where a plaintiff alleges the infringement of a fundamental constitutional right." The Complete

Angler, 607 F. Supp. 2d at1335; see also Cont'l Oil Co. v. Frontier Ref. Co., 338 F.2d 780, 782

(10th Cir. 1964)(noting that exercise of the Court's discretion not to require a bond is particularly

appropriate where issues of public concern or important constitutional rights are involved).

Here, Plaintiff alleges an infringement of his fundamental and important Constitutional right of

privacy. Accordingly, and because Defendants will not suffer any harm if the Court enters an

injunction, the Court should not require a bond. If a bond is required, Plaintiff suggests the *de*

*minimis* amount of One Thousand Dollars ($1,000.00).

9

## III. CONCLUSION

The standards for issuance of a preliminary injunction having been met, Plaintiff requests

that this Court enjoin Defendants from disclosing, disseminating or publishing the Video or any

excerpts or portions thereof, and enter a Preliminary Injunction in the form attached hereto as

**Exhibit 2,** provided in accordance with Local Rules 4.06(b)(1) and 4.05(b)(3)(iii).

Respectfully Submitted,

DATED: October 16, 2012

/s/ E. Colin Thompson
Fredrick H.L. McClure
Florida Bar No. 147354
fredrick.mcclure@dlapiper.com
E. Colin Thompson
Florida Bar No. 684929
colin.thompson@dlapiper.com
DLA PIPER LLP (US)
100 N. Tampa Street, Suite 2200
Tampa, FL 33602
Phone: (813) 229-2111
Facsimile: (813) 229-1447

/s/ Charles J. Harder
Charles J. Harder, Esq.
California Bar No. 184593
(*Pro Hac Vice* to be filed)
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Boulevard, 9th Floor
Los Angeles, Ca 90064-1582
T: (310) 478-4100
F: (310) 479-1422
charder@wrslawyers.com

/s/ David R. Houston
David R. Houston, Esq.
Nevada Bar No.
(*Pro Hac Vice* to be filed)
432 Court Street
Reno, Nevada 89501
T: (775) 786-4188
F: (775) 786-5091
dhouston@houstonatlaw.com

Attorneys for Plaintiff

10