UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRY GENE BOLLEA, professionally
known as HULK HOGAN,

                 Plaintiff,

vs.                                                    Case No. 8:12-cv-02348-T-27TBM

GAWKER MEDIA, LLC, *et al.*,

                 Defendant.
_____/

## ORDER

**BEFORE THE COURT** is a Motion for Preliminary Injunction (Dkt. 5) filed by Plaintiff Terry Gene Bollea ("**Bollea**"), in which he seeks an order requiring Defendants to remove "the excerpts from the Hulk Hogan sex tape that were posted on the www.Gawker.com website on or about October 4, 2012 and to enjoin Defendants from posting, publishing or releasing any portions or content of the sex tape to the public, including that or any other website." (Dkt. 5, p. 1). Defendants oppose the motion, contending that the requested relief would constitute an unconstitutional prior restraint (Dkts. 28, 29). Argument on the motion was heard on November 8, 2012. Upon consideration, Plaintiff's Motion for Preliminary Injunction (Dkt. 5) is due to be denied.

### I.  Applicable Standard

A preliminary injunction may be granted only if the movant establishes: "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts,*

*Inc.*, 299 F.3d 1242, 1246–47 (11ᵗʰ Cir. 2002). In addition, a party seeking a prior restraint must establish that the prior restraint will be effective and that no less extreme measures are available. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 562 (1976).

In all but the most exceptional circumstances, an injunction restricting speech pending final resolution of constitutional concerns is impermissible. *See Near v. Minnesota*, 283 U.S. 697, 716 (1931); *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226-27 (6ᵗʰ Cir. 1996). Any prior restraint bears a "heavy presumption against its constitutional validity." *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971). Thus, the Supreme Court has "imposed this 'most extraordinary remed[y]' only where the evil that would result from the reportage is both great and certain and cannot be mitigated by less intrusive measures." *CBS, Inc. v. Davis*, 510 U.S. 1315, (1994) (Blackmun, J., in chambers) (quoting *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 562 (1975)).

## II. Factual Background

According to Plaintiff's submissions, approximately six years ago, he engaged in consensual sexual relations with a woman that was not his wife.[1] Allegedly unbeknownst to Plaintiff, the encounter was videotaped (the "**Video**"). Plaintiff insists that he was unaware that the encounter was being videotaped and would have strenuously objected to any recording thereof.

On or about October 4, 2012, one or more of the named defendants (collectively, "**Gawker Media**") posted to their website (www.Gawker.com) (the "**Gawker Site**") excerpts of the Video. Plaintiff contends that the Video was posted without his permission and Gawker Media has refused

---

[1] Plaintiff has submitted the Declaration of Plaintiff Terry Gene Bollea (Dkt. 4-1).

numerous requests that they remove the excerpts from the Gawker Site. Plaintiff contends that "[i]f the Video remains publicly posted and disseminated, it will have a substantial adverse and detrimental effect on [his] personal and professional life, including irreparable harm to both." Bollea Declaration (Dkt. 4-1), ¶ 11.

On October 15, 2012, Plaintiff commenced this action by filing a five count complaint against Defendants asserting claims for (1) invasion of privacy by intrusion upon seclusion, (2) publication of private facts, (3) violation of the Florida common law right of publicity, (4) intentional infliction of emotional distress, and (5) negligent infliction of emotional distress.[2]

### III Discussion

The purpose of a preliminary injunction is to preserve the status quo so that a reasoned resolution of a dispute may be had. *Procter & Gamble Co.*, 78 F.3d at 226. Where freedom of the press is concerned, the status quo is to "publish news promptly that editors decide to publish. A restraining order disturbs the status quo and impinges on the exercise of editorial discretion." *In the Matter of Providence Journal Company*, 820 F.2d 1342, 1351, *modified on reh'g by* 820 F.3d 1354 (1st Cir. 1986). Accordingly, in the case of a prior restraint on pure speech, the hurdle is substantially higher than that necessary to obtain a traditional preliminary injunction: "publication must threaten an interest more fundamental than the First Amendment itself. Indeed, the Supreme Court has never upheld a prior restraint, even faced with the competing interest of national security or the Sixth Amendment right to a fair trial." *Procter & Gamble Co.*, 78 F.3d at 226-27.

---

[2] Following the hearing on the motion for preliminary injunction, Plaintiff filed a First Amended Complaint adding a new claim for copyright infringement.

Although Defendants concede that Plaintiff has a right of privacy in what is depicted in the sex tape, they contend that their First Amendment rights outweigh Plaintiff's privacy interests. Specifically, they urge, consistent with "[t]he First Amendment principles articulated in this long and unbroken line of precedent demonstrate that a prior restraint may not properly issue in this case," and that any alleged invasion of his privacy must be redressed in an action for damages that do not require a prior restraint in derogation of the First Amendment (Dkt. 28, p. 8 - 9).

The Supreme Court recently recognized that "speech on matters of public concern ... is at the heart of the First Amendment's protection." *Snyder v. Phelps*, 131 S.Ct. 1207, 1215 (2011) (internal citations and quotations omitted). In a somewhat different context, the Court noted: "Not all speech is of equal First Amendment importance, however, and where matters of purely private significance are at issue, First Amendment protections are often less rigorous." *Id.* (internal citations and quotations omitted). "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id.* at 1216 (internal citations and quotations omitted).[3] The arguably "inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern." *Rankin v. McPhereson*, 483 U.S. 378, 387 (1987).

---

[3] In the context of privacy law, the privilege to publish facts of legitimate public concern extends beyond the dissemination of news "to information concerning interesting phases of human activity" even when the individuals thus exposed did not seek or have attempted to avoid publicity. *Campbell v. Seabury Press*, 614 F.2d 395, 397 (5th Cir.1980). "The privilege is broad and extends beyond subjects of political or public affairs to all matters of the kind customarily regarded as 'news' and all matters giving information to the public for purposes of education, amusement or enlightenment, where the public may reasonably be expected to have a legitimate interest in what is published." *Anonsen v. Donahue*, 857 S.W.2d 700, 703-04 (Tex.App.-Houston [1 Dist.] 1993, *writ denied*).

Consistent with these authorities, Plaintiff has failed to satisfy his heavy burden to overcome the presumption that the requested preliminary injunction would be an unconstitutional prior restraint under the First Amendment. Plaintiff's public persona, including the publicity he and his family derived from a television reality show detailing their personal life, his own book describing an affair he had during his marriage, prior reports by other parties of the existence and content of the Video, and Plaintiff's own public discussion of issues relating to his marriage, sex life, and the Video all demonstrate that the Video is a subject of general interest and concern to the community. *Compare San Diego v. Roe*, 543 U.S. 77, 84 (2004) (*per curiam*) (in the context of a government employer regulating the speech of its employees, videos of an employee engaging in sexually explicit acts did not address a public concern; the videos "did nothing to inform the public about any aspect of the [employing agency's] functioning or operation").

As such, Defendants' decision to post *excerpts* of the Video online is appropriately left to editorial discretion, particularly when viewed in connection with a request for a prior restraint. *See Heath v. Playboy Enterprises, Inc.*, 732 F.Supp. 1145, 1149 n.9 (S.D. Fla. 1990) ("the judgment of what is newsworthy is primarily a function of the publisher, not the courts") (citing *Doe v. Sarasota-Bradenton Florida Television Co., Inc.*, 436 So.2d 328, 331 (Fla. 2d DCA 1983)); *cf. Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1234 (7th Cir. 1993) (holding that in cases balancing First Amendment against state law right to privacy, federal courts should resolve doubtful cases at summary judgment to prevent freedom of the press from being restricted "at the sufferance of juries").[4]

---

[4] Moreover, the manner by which the Video was obtained by a third-party and provided to Defendants bears "no relation to the right of [Defendants] to disseminate the information in [their] possession" and, therefore, is not an appropriate basis for entering a prior restraint. *See Procter & Gamble Co.*, 78 F.3d at 224.

Plaintiff relies heavily on the reasoning of the district court in *Michaels v. Internet Entertainment Group, Inc.*, 5 F.Supp.2d 823 (C.D. Cal. 1998). At a minimum, however, *Michaels* is distinguishable from this case in that it involved purely commercial speech. *Id.* at 834-35.[5] *Michaels* essentially involved the *sale* of a copyrighted sex tape via the Internet to a paid subscriber base and the display of short segments of the tape in an effort to entice individuals to purchase a subscription to the defendant's website. *Id.* at 835 (noting that "because the nature of the adult entertainment business on the Internet, the commercial value of the Tape lies as much in the display of brief images as in display of the entire tape").[6] In contrast, Defendants in this case have not attempted to sell the Video and only posted *excerpts* of the Video in conjunction with the news reporting function of Defendants' website. *See Jones v. Turner*, No. 94 Civ. 8603 (PKL), 1995 WL 106111, at *21 (S.D.N.Y. Feb. 7, 1995) (concluding that prior restraint was unwarranted when sexually explicit pictures had relationship to accompanying article and that the article itself was a matter of public interest).[7] Moreover, even the *Michaels* court recognized that the preliminary injunction was focused on the defendant's use of plaintiffs' names, likenesses or identities in

---

[5] In a companion decision more analogous to this case, the California district court granted summary judgment in favor of a tabloid news program with respect to plaintiffs' claims that a television report that outlined the impending release of the tape together with eight (two to five second) excerpts from the tape violated plaintiffs' rights under privacy and copyright law. *See Michaels v. Internet Entertainment Group, Inc.*, No. CV 98-0583 DDP (CWx), 1998 WL 882848 (C.D. Cal. Sept. 11, 1998).

[6] The defendant in *Michaels* offered a subscription service with approximately 100,000 members, each of whom paid approximately $14.95 per month to access various online content. *Id.* at 837. Even in the context of commercial speech, however, numerous courts have recognized that the same procedural safeguards are required in the context of a prior restraint. *See, e.g., Bosley v. Wildwett.com*, No. 04-3428, 2004 WL 1093037, at *1 (6th Cir. Apr. 21, 2004).

[7] It is true that Defendants stand to indirectly profit from the posting of the Video excerpts to the extent it drives additional traffic to Defendants' website. This is true, however, with respect to any information posted online by any media outlet and is distinguishable from *selling* access to the Video solely for the purpose of commercial gain.

6

connection with the *sale* of the video and not the defendant's ability to comment on matters of public interest. *Id.* at 839.[8]

Even assuming that Plaintiff could overcome the constitutional concerns associated with a prior restraint on speech, Plaintiff has failed to demonstrate that he is entitled to preliminary injunctive relief under the factors applicable in a traditional preliminary injunction analysis. For example, Plaintiff has failed to introduce evidence demonstrating that he would suffer irreparable harm if Defendants are not forced to remove the Video excerpts from the Internet, that the balancing of harm warrants entry of a preliminary injunction, or that the public interest would be served by the entry of a preliminary injunction.

With respect to the issue of irreparable harm, the fact that Plaintiff may be embarrassed by the Video is not "the type of irreparable harm or injury that would tip the scale toward justifying a prior restraint." *In re King World Productions*, 898 F.2d 56, 60 (6th Cir. 1990) (holding that fact that physician may be embarrassed by publication of video allegedly showing him engaging in medical malpractice did not justify temporary restraining order). Moreover, economic loss, even if difficult to quantify, is no basis for the entry of a preliminary injunction restricting speech. *See, e.g., Hughes Network Sys., Inc. v. Interdigital Communications Corp.*, 17 F.3d 691, 693 (4th Cir. 1994); *In re King World Productions, Inc.*, 898 F.2d at 60.

Plaintiff has also failed to demonstrate that the balancing of harm favors entry of a preliminary injunction or that an order essentially altering the status quo by requiring Defendants to

---

[8] The court also noted that the "[n]ewsworthiness is defined broadly to include not only matters of public policy, but any matter of public concern, including the accomplishments, everyday lives, and romantic involvements of famous people." *Id.* at 839 (citing *Eastwood v. Superior Court (National Enquirer)*, 149 Cal.App.3d 409, 198 Cal.Rptr. 342, 346 n. 6 (1983)).

remove the video excerpts from the Internet would further the public interest.  The Supreme Court

has repeatedly recognized that even minimal interference with the First Amendment freedom of the

press causes an irreparable injury.  *See, e.g., Nebraska Press Ass'n*, 427 U.S. at 559; *Elrod v. Burns*,

427 U.S. 347, 373-74 (1976); *see also Bartnicki v. Vopper*, 532 U.S. 514, 531-32 (2001) (holding

that First Amendment interest in publishing matters of public importance outweighed conversants'

privacy rights given fact that media outlet had played no part in illegal reception).

Moreover, this is an example of where the proverbial "cat is out of the bag," rendering

injunctive relief ineffective in protecting the professed privacy rights of the Plaintiff.  *See Bank

Julius Baer & Co., Ltd. v. Wikileaks*, 535 F.Supp.2d 980, 985 (N.D. Cal. 2008); *see also Jones*, 1995

WL 106111, at *21(concluding that plaintiff was unable to demonstrate that prior restraint would

be effective when magazine containing sexually explicit pictures had already shipped and several

pictures had already been displayed both on television and in print media).  Thus, even if Plaintiff's

privacy concerns could arguably justify injunctive relief, is not apparent  that entry of the requested

preliminary injunction would serve its intended purpose.  *See Nebraska Press Ass'n*, 427 U.S. at 569.

## IV.  Conclusion

For these reasons, Plaintiff is not entitled to a preliminary injunction.[9]  If it is ultimately

found that Defendants have violated Plaintiff's rights, any such violations must be "redressed in legal

---

[9] While this order focuses on the principal relief requested by Plaintiff, for many of the same and similar reasons, Plaintiff is also not entitled to the other relief sought in the motion for preliminary injunction (*e.g.*, disclosure of unpublished information relating to Defendants' acquisition of the Video, imposition of a constructive trust).  *See WTVJ-NBC 6 v. Shehadeh*, 56 So.3d 104, 106 (Fla. 3d DCA 2011) (reversing trial court's interlocutory order compelling reporter to identify source of leaked information); *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999) (holding that a district court may not issue a preliminary injunction preventing a defendant from disposing of assets in support of a claim for money damages).

actions that do not require a prior restraint in derogation of the First Amendment." *In re Lifetime Cable*, 17 Media L. Rep. (BNA) 1648, 1990 WL 71961, at *1 (D.C. Cir. Apr. 6, 1990).

Accordingly, Plaintiff's Motion for Preliminary Injunction (Dkt. 5) is **DENIED**.

**DONE AND ORDERED** this *13*ᵗʰ day of November, 2012.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record