UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| TERRY GENE BOLLEA, professionally known as HULK HOGAN,<br><br>                Plaintiff,<br><br>      v.<br><br>GAWKER MEDIA, LLC aka GAWKER MEDIA; GAWKER MEDIA GROUP, INC. aka GAWKER MEDIA; GAWKER ENTERTAINMENT, LLC; GAWKER TECHNOLOGY, LLC; GAWKER SALES, LLC; NICK DENTON; A.J. DAULERIO; KATE BENNERT; BLOGWIRE HUNGARY SZELLEMI ALKOTAST HASZNOSITO KFT,<br><br>                Defendants. | Case No. 8:12-cv-2348-T-27TBM |

**PLAINTIFF'S MOTION FOR INJUNCTION PENDING APPEAL**

      Plaintiff Terry Gene Bollea, professionally known as "Hulk Hogan" ("Mr. Bollea" or "Plaintiff"), by and through his undersigned counsel, hereby moves the Court for entry of an Injunction Pending Appeal, requiring Defendants to immediately remove the excerpts from the Hulk Hogan sex tape that were posted on the www.Gawker.com website on or about October 4, 2012 and the written narrative describing in vivid detail the sex acts portrayed in the sex tape, and enjoining Defendants from posting, publishing or releasing any portions or content of the sex tape to the public until the Eleventh Circuit of the United States Court of Appeals rules on Plaintiff's appeal of the Court's November 14, 2012 Order denying his motion for a preliminary injunction. While Plaintiff intends to seek such relief from the

Eleventh Circuit if necessary, Plaintiff first seeks such relief from this Court pursuant to Rule 8(a)(1)(C) of the Federal Rules of Appellate Procedure, which requires that "[a] party must ordinarily move first in the district court for . . . an order . . . granting an injunction while an appeal is pending," before seeking such relief in the Court of Appeals. Fed. R. App. P. 8(a)(1)(C); Fed. R. Civ. P. 62(c).

## MEMORANDUM OF LAW

### I.     INTRODUCTION

This case involves one of the most egregious sets of facts imaginable. Mr. Bollea was secretly taped having consensual sexual relations with a woman in a private bedroom. He was unaware that he was being taped and never consented to the taping or the release of the tape. Gawker Media somehow gained possession of the tape and edited the most graphic parts of it into a 1.5 minute "highlight reel" (the "Video Excerpts") depicting Mr. Bollea fully naked; showing his sex partner performing oral sex on him; and showing him engaged in sexual intercourse with her. The footage was not blocked, blurred or obscured in any way by Gawker Media, which created the edited "highlight reel" and also added English subtitles to the video to ensure that viewers did not miss a word of their private encounter. Gawker Media also posted a graphic narrative, describing the sexual encounter in lurid detail. Both the surreptitious filming of Plaintiff, and Gawker's posting of the Video Excerpts on its website, constitute a felony under Florida's video voyeurism statute, Fla. Stat. § 810.145.

While Plaintiff is a public figure, the Eleventh Circuit – like various other jurisdictions – has recognized that "even public figures, like actresses, may be 'entitled' to keep private 'some intimate details ... such as sexual relations ....'" *Toffoloni v. LFP Publ'g*

*Group, LLC*, 572 F.3d 1201, 1211 (11th Cir. 2009) (citing Restatement (2d) of Torts § 652D, cmt. (h)). Defendants' posting of the Video Excerpts and the graphic narrative is nothing more than "a morbid and sensational prying into private lives" for Defendants' financial gain, which has injured, and continues to injure, Mr. Bollea in his personal and professional reputation and in his "human dignity and peace of mind." *See Michaels v. Internet Ent. Group, Inc.*, 5 F.Supp.2d 823, 840, 842 (C.D. Cal. 1998) (holding that where "publicity is so offensive as to constitute a morbid and sensational prying into private lives for its own sake, it serves no legitimate public interest and is not deserving of protection," and that the actionable disclosure of private facts results in an injury "to the plaintiffs' 'human dignity and peace of mind.'").

In an effort to stop this egregious violation of his privacy and the attendant irreparable damage caused as a result, Mr. Bollea requested the issuance of a preliminary injunction requiring Defendants to immediately remove the offensive material from their website. On November 14, 2012, this Court denied Plaintiff's Motion for a Preliminary Injunction (Dkt. 47). On November 15, 2012, Plaintiff filed a Notice of Appeal, respectfully seeking appellate review of this ruling by the Eleventh Circuit (Dkt. 49).

In the meantime, the offensive video is receiving many thousands of new views each and every day. Indeed, just last week the offensive web page received almost 35,000 page views. Declaration of Nathaniel Wong dated November 16, 2012 ("Wong Decl."), a true and correct copy of which is attached as Exhibit 1, at ¶¶ 2-4, Exh. B. Permitting hundreds of thousands – or possibly even more than a million – of people to view the offensive material while the Eleventh Circuit considers Plaintiff's appeal threatens to severely undermine the

Eleventh Circuit's ruling in the event that the Eleventh Circuit determines that the preliminary injunction application was improperly denied. In order to stop the ongoing violation of his privacy rights and attendant irreparable damage being suffered on an ongoing basis while the Court of Appeals reviews this matter, this Court should issue an injunction requiring the removal of the offensive material pending the Eleventh Circuit's ruling on Plaintiff's appeal.

## II.  STANDARD OF REVIEW

"Similar to the standard for securing a preliminary injunction, to secure a stay or an injunction pending appeal, the moving party must demonstrate (1) a strong showing of the likelihood of success on the merits; (2) that the moving party will be irreparably injured absent the relief; (3) that the issuance of the stay or injunction will not substantially injure the other parties interested in the proceeding; and (4) that the public interest will not be adversely affected by the requested relief." *Sierra Club v. United States Army Corp of Engineers*, No. 3:05-cv-362-J-32TEM, 2007 WL 402830 (M.D. Fla. Feb. 1, 2007) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

When seeking a stay pending appeal, "a showing on the latter three factors that is 'heavily tilted' in favor of a stay may compensate for a showing on the first factor that is 'substantial' without necessarily showing that success on the merits is 'probable.'" *Id.* (citing *Ruiz v. Estelle*, 650 F.2d 555, 565-66 (5th Cir.1981)). "In such a case, it can be enough to show that 'a serious legal question is presented' even if success is not mathematically probable, but only if the other factors 'weigh heavily' in favor of granting the stay." *Id.*

As discussed below, here the latter three factors, namely that the moving party will be irreparably injured absent the relief; that the issuance of the stay or injunction will not substantially injure the other parties interested in the proceeding; and that the public interest will not be adversely affected by the requested relief weigh heavily in favor of an injunction pending appeal. With respect to a probability of success, the appeal of the Court's order denying Plaintiff's injunction application – at a minimum – raises serious legal questions. As such, an injunction pending appeal should issue as requested.

### III.  ARGUMENT

#### A.  Plaintiff Has a Strong Likelihood of Succeeding on the Merits on Appeal

##### 1.  Defendants are Continuing to Violate Plaintiff's Right of Privacy by Publicly Disclosing Intimately Private Facts

"The right of privacy is defined as the right of an individual to be let alone and to live a life free from unwarranted publicity." *Harms v. Miami Daily News, Inc.*, 127 So. 2d 715, 717 (Fla. 3d DCA 1961). To establish a claim for public disclosure of private facts under Florida law, a plaintiff must show that there was (1) a publication, (2) of private facts, (3) that are offensive, and (4) are not of public concern.[1] *Cape Publications, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989). As discussed below, Mr. Bollea has provided substantial evidence to support each of these elements.

---

[1] Florida has adopted the four causes of action comprising invasion of the right to privacy as stated in the restatement. Robert C. Sanchez, *Business Law: Unauthorized Appropriation of an Individual's Name or Likeness—Florida's Appellate Courts and 540.08,* 72 FLA. BAR. J. 57, 57 (1998) (observing that "Florida courts accepted the four general categories noted by Prosser").

### (a) Public Disclosure of Private Facts

Defendants' posting of the Video Excerpts and the graphic narrative description of the sex tape at the Gawker Webpage is a public disclosure. *See Michaels*, 5 F.Supp.2d at 840 ("distribution of the [sex] Tape [of Pamela Anderson Lee and Bret Michaels] on the Internet would constitute public disclosure"). Any person with an Internet connection can freely access the Video Excerpts and the description posted at the Gawker Webpage. In fact, within the first week after being published, the Video Excerpts and Gawker Webpage had already been viewed more than 2.9 million times. Harder Decl. ¶ 2, Exh. A. Thus, the first element of the test is easily satisfied.

The Restatement (Second) of Torts, which Florida has adopted for privacy violations, states that "[s]exual relations, for example, are normally entirely private matters." Restatement (2d) of Torts, § 652D, cmt. (b) (1977). Numerous cases throughout the United States have similarly found information of a sexual nature to be private. *See, e.g.*, *Michaels*, 5 F.Supp.2d at 840 ("content of the Tape – [plaintiffs] engaged in sexual relations – constitutes a set of private facts…" and "**[s]exual relations are among the most personal and intimate of acts**") (emphasis added); *Lewis v. LeGrow*, 258 Mich.App. 175, 188 (2003) (where plaintiff was secretly recorded having sex with defendant in defendant's bedroom "**there is no question that defendant's bedroom meets the required definition of a 'private place' as one from which the general public is excluded**") (emphasis added). The Restatement (Second) of Torts further provides that:

> when a photograph is taken **without the plaintiff's consent in a private place**, or one already made is stolen from his home, the plaintiff's appearance that is made public **when the picture appears in a newspaper** is still a private matter, and **his privacy is invaded**.

Restatement (2d) of Torts, § 652D, cmt. (b) (emphasis added). The Restatement, which Florida follows, then sets out an example of a privacy violation that is remarkably similar to the present case:

> A, an undistinguished hardware merchant, is engaged in an **adulterous affair with the wife of one of his friends**. B Magazine buys from private detectives a picture of the pair **in a hotel room** in a state of dishabille and publishes it. *B has invaded A's privacy*.

*Id*. cmt. (b), illus. 6 (emphasis added).[2]

Likewise, here, Defendants have engaged in an invasion of Mr. Bollea's privacy by publishing the Video Excerpts and the graphic narrative description at the Gawker Webpage. The fact that Mr. Bollea was not in his own bedroom, but in the bedroom of his sexual partner, is of no import. *Lewis*, 258 Mich. App. at 188 ("a bedroom in a private home in which a couple engages in intimate relations fulfills the definition of a 'private place'" and "reasonable people engaged in sexual relations in a bedroom of a private home expect to be free from 'surveillance.'"). Thus, Mr. Bollea's right of privacy includes the sexual relations that are the subject of the Video Excerpts and graphic narrative.

    **(b)**    **Offensiveness**

The Video Excerpts and narrative are manifestly offensive and would make any reasonable person uncomfortable and embarrassed. Defendants enabled everyone in the world with Internet access to take a "front row seat" in the private bedroom to watch Mr. Bollea's sexual encounter first-hand. Moreover, the particular excerpts from the sex tape selected by Defendants, and the particular events that were described in the narrative, are the

---

[2] As discussed in the "Newsworthiness" section below, the fact that Plaintiff is a well-known individual, rather than an undistinguished hardware merchant, does not alter the analysis.

1159509.1                              7

most offensive events from the sexual encounter: full-frontal nudity of Mr. Bollea; his partner performing oral sex on him; the two engaged in sexual intercourse, etc., without any images being blocked, blurred or obscured in any way. Defendants' conduct therefore meets the "offensiveness" part of the analysis. *See Michaels*, 5 F.Supp.2d at 840 (public disclosure of a videotape of private sexual relations "would be objectionable to a reasonable person").

### (c) The Content of the Sex Tape Is Not a Matter of Public Concern

The Eleventh Circuit has recognized that "even public figures, like actresses, may be 'entitled' to keep private 'some intimate details ... such as sexual relations ....'" *Toffoloni*, 572 F.3d at 1211 (citing Restatement (2d) of Torts § 652D, cmt. (h)). While there is no precedent within this Circuit addressing privacy violations in the context of a sex tape, the federal courts in California have confronted a nearly identical set of circumstances in the *Michaels* case. That analysis is instructive. In *Michaels*, plaintiff Bret Michaels, a rock musician from the band *Poison*, and *Baywatch* actress Pamela Anderson Lee, filed a motion for a preliminary injunction to prevent the defendants from publishing a private videotape of plaintiff having sex with Pamela Anderson Lee. *Michaels,* 5 F.Supp.2d at 828-29. Unlike in the current case, however, Michaels and Lee **knew** that the sexual act was being recorded. They did not, however, consent to the distribution of the recording by the defendants. Based on those facts, the court held that Michaels and Lee had satisfied the test for a preliminary injunction with respect to their claims for violation of the right to privacy and publicity. *Id.* at 836-42.

In *Michaels*, the defendants claimed that plaintiffs' status as celebrities somehow diminished their expectation of privacy in their sex life. The court rejected the defense,

holding: "[w]hile Michaels's voluntary assumption of fame as a rock star throws open his private life **to some extent,** even people who voluntarily enter the public sphere retain **a privacy interest in the most intimate details of their lives**." *Id*. at 840 (emphasis added). The court further held:

> Because they sought fame, Lee and Michaels must tolerate some public exposure of the fact of their involvement.  The fact recorded on the Tape, however, is not that [plaintiffs] were romantically involved, but rather the visual and aural **details of their sexual relations,** facts which are ordinarily considered **private even for celebrities**.

*Id*. (emphasis added; citations omitted).  The same analysis applies here.  Defendants Gawker Media *et al.* did not simply report the arguably newsworthy story that Mr. Bollea was involved in a sex tape; they allowed the world to peer into that private bedroom and watch Mr. Bollea fully naked and having sex.

The *Michaels* court acknowledged that privacy torts are subject to a "newsworthiness privilege." *Id.* at 839.  "Newsworthiness is defined broadly to include not only matters of public policy, but any matter of public concern, including the accomplishments, everyday lives, and romantic involvements of famous people." *Id.*  The court, however, **refused to apply the newsworthiness privilege to a sex tape**, holding:

> The privilege to report newsworthy information is not without limit. Where the publicity is so offensive as to constitute **a morbid and sensational prying into private lives for its own sake**, it serves no legitimate public interest and is not deserving of protection.

*Id.* at 840 (emphasis added; internal quotations and citations omitted); s*ee also* Restatement 2d Torts §652D cmt. (h).  Moreover, the court found that the utter lack of social value in the videotape, combined with the depth of intrusion into the plaintiff's private affairs, weighed heavily against a finding of newsworthiness.  *Michaels,* 5 F. Supp. 2d at 841-42.

Here, the Gawker Webpage and Video Excerpts serve no legitimate public interest – they serve only the most prurient and voyeuristic of desires. Defendants' own description of the sex tape highlights this fact: "… the internet has made it easier for all of us to be **shameless voyeurs and deviants**, we love to watch famous people have sex …. When you see glimmers of sloppy kissing or some shoulder moles or just an earnest, breathy, post-coital 'iluvvvvuuuu...' it becomes mesmerizing." Declaration of Charles J. Harder dated November 19, 2012 ("Harder Decl."), a true and correct copy of which is attached as Exhibit 2, Exh. A (emphasis added). Moreover, the Gawker Webpage admits that the footage of Mr. Bollea is private and not intended for public view: "We watch this footage **because it's something we're not supposed to see**." *Id.* Thus, the Gawker Webpage and the Video Excerpts is shameless voyeurism, and nothing more. It is not newsworthy, and any attempt by Defendants to claim it as such would show a lack of understanding or respect for what constitutes "news."

### (d) Defendants' Conduct is Also A Felony Under Florida's Video Voyeurism Statute

While the criminal aspect Defendants' conduct is not being directly adjudicated in this lawsuit, the fact that Defendants' conduct constitutes a **felony** under Florida law further supports the need for injunctive relief. Specifically, the Florida video voyeurism statute provides, in pertinent part:

(2) A person commits the offense of video voyeurism if that person:

(a) For his or her own amusement, entertainment, sexual arousal, gratification, or profit, or for the purpose of degrading or abusing another person, intentionally uses or installs an imaging device to secretly view, broadcast, or record a person, without that person's knowledge and consent, who is

dressing, undressing, or privately exposing the body, at a place and time when that person has a reasonable expectation of privacy;…

(3) A person commits the offense of **video voyeurism dissemination** if that person, **knowing or having reason to believe** that an image was created in a manner described in this section, intentionally **disseminates, distributes, or transfers** the image to another person for the purpose of amusement, entertainment, sexual arousal, gratification, or profit, or for the purpose of degrading or abusing another person.

Fla. Stat. §810.145 (emphasis added).

Defendants' conduct falls squarely within this criminal statute. As described above, Defendants knew or had reason to believe that the sex tape was a secret recording of Mr. Bollea undressing, including fully exposing his private areas, and engaging in sexual relations, in the confines of a private bedroom. Defendants knew that this activity was private and that they should not be watching, let alone disseminating it to the general public. The Gawker Website admits: "[I]t's something we're not supposed to see." Harder Decl., Exh. A. Moreover, Mr. Bollea's legal counsel sent two cease and desist communications to Defendants, and Defendants responded to them. (Declaration of Plaintiff Terry Gene Bollea dated October 15, 2012 ("Bollea Decl."), a true and correct copy of which is attached as Exhibit 1 to Plaintiff's previously filed Motion for Preliminary Injunction filed on October 16, 2012, at ¶¶ 8-9). The letters informed Defendants that Mr. Bollea had been secretly taped, did not consent to any aspect of the video, including its posting at the Gawker.com website, and demanded the immediate removal of the Video Excerpts and Gawker Webpage. Bollea Decl., Exhs. A and B. Defendants refused to comply with the demands and confirmed their refusal in a letter responding to Mr. Bollea's legal counsel. Bollea Decl., Exh. C. Accordingly, Defendants violated, and are continuing to violate, the Florida video voyeurism

law, Fla. Stat. §810.145, which constitutes felony conduct. This fact should provide further incentive for the Court to enjoin Defendants' outrageous conduct.

### 2. Defendants are Continuing to Violate Plaintiff's Right of Publicity by Misappropriating Plaintiff's Name and Image for Commercial Gain

To prevail on his right of publicity claim, Mr. Bollea must show that Defendants used his name or image for commercial, trade, or advertising purposes. *Fuentes v. Mega Media Holdings, Inc.*, 721 F. Supp. 2d 1255, 1260 (S.D. Fla. 2010) (citing *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1320 n. 1 (11th Cir. 2006). Mr. Bollea has established that Defendants used his name, image and likeness without his consent. Defendants have never suggested that his consent was ever sought, let alone obtained. The only remaining element for the claim is whether Defendants used Mr. Bollea's name or image for a **commercial purpose**.

Profit and commercial benefit were the sole or predominant purpose for Defendants' posting of the Video Excerpts and the graphic narrative description at the Gawker Webpage. Defendants' business relies upon advertising revenues, which are based on the number of "hits" or "page views" they are able to generate. The more "views" the Gawker Webpage receives (and the Gawker.com site generally), the more advertising revenue. The U.S. District Court for the Southern District of New York recently granted a temporary restraining order against Gawker Media in a copyright infringement lawsuit. The court discussed how Gawker Media posts material to its website "in order to attract viewers to Gawker," and that Gawker's use of material on its website is "commercial in nature" because:

> [T]he copyrighted material was placed alongside links to advertisements. The more clicks those links receive, the more compensation [Gawker] can ask of advertisers. Second, the more visitors Gawker receives because of the posting of the copyrighted material, the more attractive it becomes to potential

advertisers on the site and, again, the more compensation [Gawker] can ask of those advertisers.

*HarperCollins Publishers v. Gawker Media*, 721 F. Supp. 2d 303, 306 (S.D.N.Y. 2010).

As a result, Defendants post provocative, obscene and/or outrageous content at their websites for the purpose of generating page views and, in turn, advertising revenue. Harder Decl. ¶¶ 6-8, Exhs. E, F and G. In a 2010 interview, Nick Denton, owner of Gawker Media, admits that his websites' more shocking stories are "*the most cost effective marketing you can possibly do*." Harder Decl. ¶7. These shocking stories, like the Gawker Webpage and Video Excerpts, are a means to market, advertise, and grow the Gawker Media websites.

On October 15, 2012, Denton posted to Gawker.com an article entitled "**The Purpose of Gawker,**" which specifically discusses how the posting of Mr. Bollea's sex tape at Gawker.com drove substantial traffic to the website and the resulting advertising revenues. Harder Decl., ¶ 5, Exh. D. In that article, and in his statements to commenters of the article appearing immediately below, Denton states that the Hulk Hogan sex tape story and the Video Excerpts (along with another Gawker.com story which posted topless photographs of Kate Middleton) "**pushed daily US audience over 1m – for the first time ever…. Those stories bring the site to new readers.**" Harder Decl., ¶5, Exh. D. In that story, Denton discusses its ad revenue model regarding such provocative content, stating: "Gawker's sales and in-house creative teams do not simply land one-off banner campaigns wrapped in jargon and fads like other digital properties. . . .We aspire to real interactive advertising. . . ." *Id.*

Defendants misappropriated Mr. Bollea's name, image, likeness and identity for Defendants' financial gain. This is precisely what the Florida right of publicity laws are intended to prevent. In the *Michaels* case, the District Court granted injunctive relief based

on plaintiffs' right of publicity claim, as well as their invasion of privacy claim. *Michaels,* 5 F.Supp.2d at 836-39. Both in *Michaels*, and the present case, the defendants misappropriated the plaintiff's name, image and likeness to drive viewers to their website(s) for financial gain. Accordingly, Mr. Bollea is likely to succeed on this claim.

### B. Mr. Bollea is Continuing to Suffer Irreparable Injury

Many courts have found public disclosure of private sexual content to cause irreparable damage. For example, in granting a preliminary injunction, the *Michaels* court held:

> By definition, an actionable disclosure of private facts must be highly offensive to a reasonable person. The injury inflicted is therefore to the plaintiffs' "human dignity and peace of mind." Although monetary damages are available for such injuries, they are difficult to quantify, and such injuries are to some extent irreparable. Furthermore, the privacy of the acts depicted on the Tape cannot be restored by monetary damages after the Tape becomes public. The nature of the internet aggravates the irreparable nature of the injury.

*Michaels*, 5 F. Supp. 2d at 842 (internal citation omitted).

The Southern District of New York found similar irreparable injury resulting from the publication of a nude image of Muhammad Ali:

> …[I]n the course of his public career plaintiff has established a commercially valuable proprietary interest in his likeness and reputation, analogous to the good will accumulated in the name of a successful business entity. To the extent that defendants are unlawfully appropriating this valuable commodity for themselves, proof of damages or unjust enrichment may be extremely difficult. . . . Furthermore, defendants appear not only to be usurping plaintiff's valuable right of publicity for themselves but may well be inflicting damage upon this marketable reputation. As described previously, the 'likeness' of Ali which has been published is a full frontal nude drawing, not merely a sketch or photograph of him as he appears in public. Damages from such evident abuse of plaintiff's property right in his public reputation are plainly difficult to measure by monetary standards.

*Ali v. Playgirl, Inc.*, 447 F.Supp. 723, 726 (S.D.N.Y. 1978).

Defendants acknowledge the strength of Mr. Bollea's professional reputation at the time they posted the Gawker Webpage and Video Excerpts: "[u]p top, you'll see one minute from the 30 minutes of footage taken of 59-year-old Hulk Hogan, **professional wrestler, Real Life American Hero to many**, fucking a woman rumored to be the ex-wife of his best friend." Plaintiff's status as a "professional wrestler, Real Life American Hero" and his ability to exploit his name, his brand, and his reputation is being irreparably damaged by Defendants' continued violation of his rights.

Moreover, the Gawker Webpage and Video Excerpts are continuing to have a profoundly detrimental effect on Mr. Bollea's emotional state and personal life. As described in his declaration, "the public posting and dissemination of the Video has completely flipped my life upside down, has rattled my current marriage, has been devastating to me and my family, and has caused [] severe emotional distress. Bollea Decl. ¶ 12. This harm is exacerbated daily as many thousands of people continue to view the Gawker Webpage and Video Excerpts each day they remain online. Wong Decl. ¶¶ 2-4, Exh. B. Indeed, the Gawker Webpage containing the offensive video received almost 35,000 page views the week of November 12, 2012 alone. *Id*.

Absent issuance of the requested injunction pending appeal, if Plaintiff prevails in his appeal, the Court of Appeals' ruling would be severely undermined, as a result of hundreds of thousands of people viewing the offensive material while the appeal is pending. To avoid such unnecessary irreparable harm while the Court of Appeals reviews the serious issues raised by this appeal, the Court should issue an injunction requiring the removal of the offensive material until the Eleventh Circuit rules on Plaintiff's pending appeal.

### C. Issuance of the Injunction Pending Appeal Will Not Substantially Injure Defendants

Issuance of the injunction pending appeal will not substantially injure Defendants. There is nothing time sensitive about the offensive material. In fact, the video was recorded six years ago. If the Court's ruling denying Plaintiff injunctive relief is affirmed on appeal, Defendants will, at worst, be temporarily prohibited from displaying that material. Such a delay in being permitted to display video footage made over six years ago cannot constitute substantial injury to Defendants.

Additionally, as discussed above, Defendants are already prohibited from displaying this material by Florida law. Indeed, Defendants' conduct constitutes a **felony** under Florida law, which further supports the need for injunctive relief. The requested injunction pending appeal will simply require Defendants to cease from engaging in conduct from which they are already prohibited under Florida law. Thus, Defendants would suffer no substantial injury from the issuance of the injunction pending the appeal. This factor weighs strongly in favor of the requested injunction.

### D. The Public Interest Will Not Be Adversely Affected

For the reasons discussed above, there is no legitimate public interest in being able to view surreptitiously and improperly obtained footage of Plaintiff engaged in private consensual sexual activity. *See Michaels*, 5 F. Supp. 2d at 840 ("Where the publicity is so offensive as to constitute a morbid and sensational prying into private lives for its own sake, *it serves no legitimate public interest* and is not deserving of protection." (emphasis added.)) Indeed, permitting continued public access to this material is an egregious violation of

Plaintiff's privacy rights. Thus, the public interest will not be adversely affected by the issuance of the requested injunction pending appeal.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff requests that this Court issue an injunction pending Plaintiff's appeal, enjoining Defendants from disclosing, disseminating or publishing the Gawker Webpage and the Video Excerpts, or any excerpts or portions thereof. Respectfully Submitted,

Dated: November 19, 2012

  /s/ Kenneth G. Turkel
Kenneth G. Turkel, Esq.
Florida Bar No. 867233
kturkel@bajocuva.com
Christina K. Ramirez
Florida Bar No. 0954497
cramirez@bajocuva.com
**BAJO CUVA COHEN & TURKEL, P.A.**
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Telephone: (813) 443-2199
Facsimile: (813) 443-2193
Attorneys for Plaintiff

Dated: November 19, 2012

  /s/ Charles J. Harder
Charles J. Harder, Esq.
California Bar No. 184593 (Admitted *Pro hac vice*)
charder@wrslawyers.com
**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
11400 W. Olympic Boulevard, 9th Floor
Los Angeles, CA 90064-1582
Telephone: (310) 478-4100
Facsimile: (310) 479-1422
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of November, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send a notice of electronic filing to all persons registered to receive notice via the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/ECF participants.

                                            /s/ Charles J. Harder
                                            Attorney