UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| TERRY GENE BOLLEA, professionally known as HULK HOGAN,<br><br>        Plaintiff,<br><br>   v.<br><br>GAWKER MEDIA, LLC aka GAWKER MEDIA; GAWKER MEDIA GROUP, INC. aka GAWKER MEDIA; GAWKER ENTERTAINMENT, LLC; GAWKER TECHNOLOGY, LLC; GAWKER SALES, LLC; NICK DENTON; A.J. DAULERIO; KATE BENNERT; BLOGWIRE HUNGARY SZELLEMI ALKOTAST HASZNOSITO KFT,<br><br>        Defendants. | Case No. 8:12-cv-2348-T-27TBM |

## MOTION FOR PRELIMINARY INJUNCTION

## TO ENJOIN COPYRIGHT INFRINGEMENT

Plaintiff Terry Gene Bollea, professionally known as "Hulk Hogan" ("Mr. Bollea" or "Plaintiff"), by and through his undersigned counsel and pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and Rule 4.06 of the Local Rules for the Middle District of Florida, hereby moves the Court for entry of a Preliminary Injunction, requiring Defendants to immediately remove the excerpts from the Hulk Hogan sex tape that were posted on the www.Gawker.com website on or about October 4, 2012, and enjoining Defendants from posting, publishing or releasing any portions or content of the video to the public because Defendants' display of these excerpts constitutes an infringement of Plaintiff's copyright.

1164124.1                                       1

This Motion is separate and distinct from Plaintiff's prior Motion for Preliminary Injunction in that the present Motion is based entirely on Defendants' continuing infringement of Plaintiff's recently-acquired copyright in the video, as alleged for the first time in Plaintiff's First Amended Complaint, filed on November 8, 2012.  In support of this Motion, Plaintiff relies upon, incorporates and refers to the Declarations of Charles J. Harder and Nathaniel Wong, the Declaration of Terry Gene Bollea in Support of Plaintiff's Motion for Temporary Restraining Order, the First Amended Complaint, and the matters of fact and law set forth below in the Incorporated Memorandum of Law.

## MEMORANDUM OF LAW

### I. INTRODUCTION

The Copyright Act, 17 U.S.C. §§ 101, *et seq.*, provides owners of copyrights with the ability to allow, *or to prevent*, others from using their protected works.  It is well-established that when a copyright is infringed, the copyright owner may obtain an injunction to prevent further infringement.  Indeed, once a copyright owner has demonstrated that he has a viable copyright infringement claim, *irreparable harm is presumed* and he is entitled to injunctive relief.  *See e.g., Stoneworks, Inc. v. Empire Marble & Granite, Inc.*, No. 98-2017, 1998 WL 998962, at *6 (S.D. Fla. Nov. 19, 1998) ("Once the moving party has demonstrated a likelihood of success on the merits of a copyright infringement claim, irreparable harm is presumed.") (*citing* 4 Nimmer, Nimmer on Copyright § 14:06[A]).  In the present case, Defendants used, and continue to use, excerpts of a video in which Plaintiff now owns a valid, registered copyright.  Plaintiff has rightfully amended his complaint to pursue a copyright infringement claim and seeks immediate injunctive relief to prevent further

infringement.  As discussed below, Plaintiff can establish that he owns the copyright and that Defendants are infringing it.  Thus, injunctive relief is appropriate on that basis alone.

Plaintiff filed a prior Motion for Preliminary Injunction ("Prior Motion") based on Defendants' alleged violations of Plaintiff's rights to privacy and publicity, and infliction of emotional distress.  While the Court found that the prior restraint doctrine precluded it from granting a preliminary injunction based on Plaintiff's claims for violation of the right to privacy and publicity, and for infliction of emotional distress, both the Court and Defendants' counsel recognized that an injunction could properly be granted to prevent copyright infringement.   At the time Plaintiff filed his Prior Motion, he did not own a copyright in the offending video (because the copyright had not been transferred to him at the time) and, as such, had not alleged a copyright infringement claim against Defendants.  Since that time, however, Plaintiff has rightfully obtained, and registered, a copyright in the video, and has amended his complaint in this action to enforce that right.  This provides a separate, distinct, and independent basis for injunctive relief.  The present Motion is based entirely on Plaintiff's newly-alleged copyright infringement claim and is not an attempt to relitigate the issues raised in the Prior Motion.  For the reasons discussed herein, Defendants should be enjoined from further copyright infringement and ordered immediately to remove the excerpts from the Hulk Hogan sex tape that were posted on the www.Gawker.com website on or about October 4, 2012.

## II.  FACTUAL BACKGROUND

### A.  The Unauthorized Video

Approximately six years ago, Plaintiff was surreptitiously videotaped having sexual relations with a woman in a private bedroom within the home of Todd Alan Clem (professionally known as Bubba The Love Sponge Clem) (hereinafter "Clem").  (Declaration of Plaintiff Terry Gene Bollea, dated October 15, 2012, a true and correct copy of which was filed on October 16, 2012 as Exhibit 1 to Plaintiff's Motion for Temporary Restraining Order ("Bollea Decl."), at ¶ 6).  Clem owned the copyrights in this video (the "Video"). (Declaration of Charles J. Harder dated November 29, 2012 ("Harder Decl."), a true and correct copy of which is attached hereto as **Exhibit 1**, at ¶ 2, Exh. A).  Plaintiff never consented to the taping or the release of the Video.  Bollea Decl. ¶¶ 6, 8.  Clem, the owner and author of the Video, and the copyrights therein, also did not release or publish the Video and, specifically, never granted to Defendants any rights to distribute, copy, publish or release the Video.  Harder Decl. ¶ 2, Exh. A.

### B.  Defendants' Posting of the Video on the Gawker Site

Defendants somehow gained possession of the Video – "a burned DVD copy… was delivered to us through an anonymous source" – and on October 4, 2012, published excerpts of the most graphic parts of the Video (the "Video Excerpts") onto www.Gawker.com (the "Gawker Site").  Within the first week after being published, the webpage containing the Video Excerpts had already been viewed more than 2.9 million times.  (Declaration of Nathaniel Wong dated November 29, 2012 ("Wong Decl."), a true and correct copy of which is attached hereto as **Exhibit 2**, at ¶ 4, Exh. B).

Prior to that time, the Video had never been released to the public. Defendants did not seek, let alone obtain, the right to use the Video, or any part of it, from Plaintiff or Clem. Harder Decl., Exh. A (Clem "has never transferred such rights to anyone, nor licensed to anyone any rights associated with the Works."); Bollea Decl. ¶ 8, Exhs. A and B.

### C. Plaintiff's Prior Motion for Preliminary Injunction

On October 16, 2012, Plaintiff filed his Prior Motion seeking a preliminary injunction based on Plaintiff's privacy and publicity claims, and his claim for infliction of emotional distress. On November 14, 2012, the Court denied the Prior Motion. At the hearing on Plaintiff's Prior Motion, however, in distinguishing the case law cited by Plaintiff, the Court recognized that an injunction is appropriate to prevent copyright infringement, notwithstanding the Court's conclusion that the prior restraint doctrine precluded the issuance of an injunction based on Plaintiff's other claims. The Court stated as follows:

> "I think there's a distinction there because this is a fact specific inquiry, and the *Michaels* case begins with a lengthy discussion on the fact that the plaintiffs copyrighted this film, sought copyright protection…. It seems to me that you cannot eliminate from the *Michaels* case the fact that this particular video had been copyrighted. And that's not our facts here."

Harder Decl., Exh. B, pp. 23, 25-26. Indeed, Gawker Media's counsel conceded at the hearing that:

> "It is so much easier in a copyright case to get an injunction if you own the copyright and you come in and you say, someone has stolen

> your videotape and you own the copyright to it. I mean, the distinction Your Honor has drawn is absolutely clear."

Harder Decl., Exh. B, p. 28. At the time Plaintiff filed his Prior Motion, however, Plaintiff had not yet obtained ownership or registration of the copyrights in the Video and did not have a basis for a copyright infringement claim or an injunction based on such a claim. That has now changed.

### D. The Transfer of the Copyright to the Unauthorized Video to Plaintiff

On October 26, 2012, Clem entered into a written agreement (the "Transfer Agreement") whereby he transferred to Plaintiff all of his "rights, title and interest, including without limitation all copyrights, trademarks and all other intellectual property rights, in and to any and all videos, audio/visual works, and all related content, depicting [Plaintiff] in any way, including without limitation all video(s) depicting [Plaintiff] engaged in sexual relations with Heather Clem." Harder Decl. Exh A. By the terms of Transfer Agreement, the transfer of rights, including the copyrights, became effective as of October 1, 2012. *Id*.

Plaintiff then filed an application with the United States Copyright Office to register his newly-acquired copyright in the Video. The copyright was issued by the Copyright Office, effective as of November 3, 2012, and was assigned the registration number "PAu 3-639-502." Harder Decl. ¶ 4, Exh. C. On November 8, 2012, Plaintiff filed his First Amended Complaint adding a claim for copyright infringement.

### E. Defendants' Ongoing Copyright Infringement

Defendants continue to use the Video Excerpts on the Gawker Site, and continue to advertise on, and thereby profit from, the web page that contains the Video Excerpts. Wong

Decl. Exh. A.  The unauthorized Video Excerpts are receiving many thousands of new views each and every day, and within the past nine (9) days alone the offending web page received more than 20,000 page views.  Wong Decl. ¶ 6, Exh. B.  Indeed, since November 3, 2012, the effective date of Plaintiff's copyright registration, the offending web page has received more than 80,000 views.  Wong Decl. ¶ 5, Exh. B.  This continuing infringement of Plaintiff's copyrights should be enjoined immediately.

### III.  ARGUMENT

#### A. Plaintiff is Entitled to Entry of a Preliminary Injunction

The Copyright Act specifically authorizes the Court to grant preliminary and permanent injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  Indeed, protection of copyrights under the Copyright Act is a value and directive expressed within the Constitution.  U.S. Const., Art. I, § 8, cl. 8 ("Congress shall have the power… To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Rights to their respective Writings and Discoveries").  The Eleventh Circuit has held that:

> "Since the Copyright Act is the congressional implementation of a constitutional directive to encourage inventors by protecting their exclusive rights in their discoveries, copyright interests also must be guarded under the Constitution, and *injunctive relief is a common judicial response to infringement of a valid copyright*."

*Cable/Home Commc'n Corp. v. Network Productions, Inc.*, 902 F.2d 829, 849 (11th Cir. 1990) (emphasis added).

Such relief does not offend the protections of the First Amendment, as "First Amendment protections [are] already embodied in the Copyright Act's distinction between copyrightable expression and uncopyrightable facts and ideas." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985).  In fact, the Supreme Court has recognized that within the First Amendment there is "a concomitant freedom *not* to speak," and stated that "Courts and commentators have recognized that copyright… serve[s] this countervailing First Amendment value." *Id*. (emphasis in original).  As the Eleventh Circuit has stated, "[w]ith respect to copyright protection, '***[t]he first amendment is not a license to trammel on legally recognized rights in intellectual property***.'"  *Cable/Home Commc'n*, 902 F.2d at 849 (emphasis added) (quoting *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1187 (5th Cir.1979)).  Indeed, Defendants' counsel has conceded that, "[i]t is so much easier in a copyright case to get an injunction…" Harder Decl., Exh. B, p. 28.

Thus, Mr. Bollea is entitled to preliminary injunctive relief if he shows: "(1) a substantial likelihood of success on the merits of the underlying case; (2) the movant will suffer irreparable harm in the absence of an injunction; (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction is not issued; and (4) an injunction would not disserve the public interest." *Johnson & Johnson Vision Care, Inc. v. 1-800-Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002); *Keeton v. Anderson-Wiley*, 664 F.3d 865, 868 (11th Cir. 2011); Local Rule 4.05.

Where a plaintiff seeks to enjoin alleged copyright infringement, irreparable injury is established once the plaintiff has shown a likelihood of success on the copyright claim.

*Stoneworks*, 1998 WL 998962, at *6 ("Once the moving party has demonstrated a likelihood of success on the merits of a copyright infringement claim, irreparable harm is presumed. It is well settled that money damages cannot compensate for the harm caused by copyright infringement.") (*citing* 4 Nimmer, Nimmer on Copyright § 14:06[A]); *Michaels v. Internet Ent. Group, Inc.*, 5 F.Supp.2d 823, 830 (C.D. Cal. 1998) ("Where a copyright plaintiff succeeds in showing a likelihood of success on the merits, irreparable injury is presumed."); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir. 1983) (holding that "[a] copyright plaintiff who makes out a prima facie case of infringement is entitled to a preliminary injunction without a detailed showing of irreparable harm").

In *Michaels*, the federal court in California confronted a nearly identical set of circumstances. The celebrity plaintiffs, Bret Michaels and Pamela Anderson Lee, owned the copyrights to a videotape of them engaging in sexual activity, and the defendant sought to publish the videotape on the internet without plaintiffs' authorization. *Michaels*, 5 F.Supp.2d at 828-30. The court held that defendant's conduct would constitute an infringement of plaintiffs' copyright and issued a Temporary Restraining Order on that basis, enjoining the defendant's publication of the copyrighted video. *Id*. at 828, 843. The *Michaels* Court's analysis, which is discussed in more detail below, is instructive here.

### 1. Plaintiff Has a Strong Likelihood of Succeeding on His Claim

To state a claim for copyright infringement, Plaintiff must demonstrate: (i) that he owns a valid copyright in the works at issue; and (ii) that the infringer copied original elements of those works. *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 (11th Cir. 2002); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991). Plaintiff can establish

both of these elements, and thus has established a strong likelihood of success on his copyright infringement claim.

### a. Plaintiff Owns a Valid Copyright in the Video

A copyright registration certificate is "prima facie proof of the existence of a valid copyright." 17 U.S.C. § 410(c); *see C.B. Fleet Co., Inc. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1081 (S.D. Fla. 2007); *Michaels*, 5 F.Supp.2d at 830 ("Registration certificates are prima facie evidence that the plaintiff owns a valid copyright.").

Here, Clem was the author of, and therefore the initial owner of, the copyright in the Video. See 17 U.S.C. § 201(a) ("Copyright in a work protected under this title vests initially in the author or authors of the work.") Copyrights may be transferred. See 17 U.S.C. § 201(d)(1) ("The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law.") Shortly after Plaintiff filed his initial Complaint against Defendants, Clem transferred his intellectual property rights in the Video, including his copyrights, to Plaintiff.[1]  Harder Decl., ¶ 2, Exh. A.  On November 3, 2011, Plaintiff registered the copyrights in the Video and obtained Copyright Registration Number "PAu 3-639-502." Harder Decl. Exh. C. A true and correct copy of the registration certificate is attached to the Harder Decl., filed in support hereof. Plaintiff therefore owns a valid copyright and is entitled to seek to enjoin the ongoing infringement of this copyright by

---

[1] In the Transfer Agreement, "Bubba represents and warrants to Terry that he owns all, or at least one half of all, copyrights in and to the Works." Harder Dec. Exh. A.  The fact that Clem may have shared a joint ownership of the copyrights in the Video with his ex-wife, Heather Clem, would not preclude Plaintiff from pursuing a claim for copyright infringement or seeking injunctive relief. *See, e.g., Brownmark Films, LLC v. Comedy Partners*, 800 F. Supp. 2d 991, 997 (E.D. Wis. 2011), *aff'd*, 682 F.3d 687 (7th Cir. 2012) (plaintiff who had acquired an interest in a copyright from some, but not all, of joint owners of the copyright, had standing to sue for infringement of that copyright).

Defendants.[2]  17 U.S.C. § 410(c) ("certificate of a registration… shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate"); *C.B. Fleet*, 510 F.Supp.2d at 1081.  Thus, Plaintiff has satisfied the first element of his copyright infringement claim.

### b. Defendants Copied and Published Original Excerpts of the Video

It is undisputed that Defendants published original excerpts from the Video.  Indeed, the Gawker Article admits that the Video Excerpts posted on the Gawker Site come directly from the Video: "Up top, you'll see one minute from the 30 minutes of footage taken of 59-year-old Hulk Hogan."  *See* Wong Decl., Exh. A; *cf Michaels*, 5 F.Supp.2d at 830-31.

The *Michaels* court held under similar circumstances that, "The Copyright Act confers on owners the exclusive rights to reproduce the work, prepare derivative works, distribute copies to the public, to perform the work publicly, and to display the work publicly."  *Michaels*, 5 F.Supp.2d at 830 (citing 17 U.S.C. §§ 106(1)-(5)).  Thus, as was the case in *Michaels*, Defendants' distribution of excerpts of the copyrighted Video would directly conflict with "plaintiffs' exclusive rights to distribute the Tape to the public," and "would also interfere with the plaintiffs' public display rights, which include the right to display 'individual images of a motion picture.'"  *Id*. at 831.

Plaintiff has presented substantial evidence of Defendants' unauthorized publication and dissemination of the Video Excerpts on the Gawker Site.  Specifically, within the first week after being published, the Video Excerpts had already been viewed on the Gawker Site

---

[2] Defendants cannot claim any copyright in the underlying Video.  Defendants did not play any role in creating the Video itself and admit that they received a copy of the Video on a DVD from "an anonymous source."  *See* Wong Decl., Exh. A.

more than 2.9 million times. Wong Decl. ¶ 4, Exh. B. Defendants' publication, and infringement, continues daily. Within the past nine (9) days alone, the offensive web page received more than 20,000 page views. Wong Decl ¶ 6, Exh. B.

Because Defendants have displayed and continue to display Plaintiff's copyrighted Video, Plaintiff has a substantial likelihood of prevailing on his copyright infringement claim.

### 2. Mr. Bollea is Continuing to Suffer Irreparable Injury

"Once the moving party has demonstrated a likelihood of success on the merits of a copyright infringement claim, irreparable harm is presumed." *See, e.g., Stoneworks*, 1998 WL 998962 at *6; *Michaels*, 5 F.Supp.2d at 830; *Apple Computer*, at 1254. As discussed above, Plaintiff has alleged a prima facie case of copyright infringement and has shown a likelihood of succeeding on its copyright infringement claim. Plaintiff has thereby met his burden of establishing irreparable harm. This harm to Plaintiff will not cease until Defendants are enjoined from displaying the Video Excerpts or any other portion of the Video.

### 3. The Balance of Hardships Favors Plaintiff

As discussed immediately above, it is to be presumed that Plaintiff is suffering irreparable harm as a result of Defendants' unauthorized use of the Video Excerpts. *Stoneworks*, 1998 WL 998962 at *6; *Michaels*, 5 F.Supp.2d at 830. Conversely, Defendants will not suffer any harm if an injunction is granted. Requiring Defendants to remove the Video Excerpts from the website will simply put Defendants back into the same position they were before they improperly posted the copyrighted Video Excerpts without authorization.

### 4. An Injunction Will Not Disserve the Public Interest

"Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections." *Apple Computer*, 714 F.2d at 1255; *see also, Stoneworks*, 1998 WL 998962 at *6 ("The public interest can only be served by upholding copyright protection"). As a result, because Plaintiff has shown a likelihood of success on his copyright infringement claim, an injunction enjoining continued infringement will not disserve the public interest.

### B. Defendants' Publishing of the Video Excerpts is Not a Fair Use

Defendants may attempt to argue that, notwithstanding their unauthorized use of Plaintiff's copyrighted Video, their conduct constitutes a "fair use" of Plaintiff's copyrighted work and is, thus, permitted. As discussed below, any such argument will fall flat, and should be summarily rejected.

Section 107 of the Copyright Act states:

> "In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include –
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

> (4) the effect of the use upon the potential market for or value of the copyrighted work."

17 U.S.C. § 107.  These factors strongly militate against any "fair use" defense that Defendants may raise and further support Plaintiff's likelihood of succeeding on his copyright infringement claim.

Defendant Gawker Media LLC ("Gawker Media") has previously been enjoined from continued copyright infringement under circumstances similar to the present case upon a finding that the fair use doctrine did not apply.  *HarperCollins Publishers v. Gawker Media*, 721 F. Supp. 2d 303 (S.D.N.Y. 2010).  Specifically, in *HarperCollins*, the plaintiff had acquired copyrights in *America By Heart*, a book authored by former vice-presidential candidate Sarah Palin.  Prior to the release of the book, a portion of the book "fell into defendants hands."  *Id*. at 305.  Without authorization from the plaintiff, defendant Gawker Media published on the Gawker Site excerpts from the book.  *Id*.  Specifically, Gawker Media initially posted images of twenty-one (21) full pages from the book and then replaced those pages with *excerpted portions* from only twelve (12) pages of the book.  The plaintiff filed a lawsuit for copyright infringement and, shortly thereafter, sought a Temporary Restraining Order from the court.

In granting a Temporary Restraining Order against defendant Gawker Media, the Court in *HarperCollins* examined the four "fair use" factors identified in the Copyright Act.  The court's analysis in *HarperCollins* is instructive here.

As to the first factor in the fair use analysis, the court in *HarperCollins* held:

> "[Gawker's] use of the copyrighted material was commercial in nature in two ways. First, the copyrighted material was placed alongside links to advertisements. The more clicks those links receive, the more compensation [Gawker] can ask of advertisers. Second, the more visitors Gawker receives because of the posting of the copyrighted material, the more attractive it becomes to potential advertisers on the site and, again, the more compensation [Gawker] can ask of those advertisers."

*Id*. at 306. The commercial nature of the defendant's unauthorized use of copyrighted material in that case weighed against Gawker Media's "fair use" defense. *Id*. at 306-7; *see also*, *Michaels*, 5 F.Supp.2d at 834-35 ("the commercial nature of [defendant's] proposed display of short segments of the Tape weighs against a finding of fair use"). Defendants' use of the Video Excerpts in the present case are commercial in nature for the exact same reasons identified in *HarperCollins*. As a result, this factor similarly weighs against any "fair use" defense that Defendants may assert.

As to the second factor, the *HarperCollins* court held that "the excerpts used by defendant come from an unpublished work, substantially weakening defendant's fair use claim." *HarperCollins*, 721 F.Supp.2d at 306; *see also*, *Michaels*, 5 F.Supp.2d at 835 ("The fact that a work is unpublished is a critical element of its 'nature.'"). In the present case, the Video Excerpts were also unpublished prior to Defendants' widespread dissemination of them through the Gawker Site.

To the extent that Defendants attempt to argue that the Video had been previously "published" by virtue of other websites discussing the Video, or showing a still image from it, such an argument was flatly rejected by the court in *Michaels* when analyzing copyright infringement of a similar video. Specifically, the defendant in *Michaels* argued that a prior "dissemination of a 148-second clip from the Tape on an internet site" constituted prior publication sufficient to substantiate a "fair use" defense. *Michaels*, 5 F.Supp.2d at 835. The court rejected this argument, stating: "The inquiry for purposes of fair use is whether the *owner* has previously published the work, thereby making the work available for public discussion and fair use." *Id*. (emphasis added). The court further held that "[t]he plaintiffs' interest in controlling the first authorized publication of the Tape, therefore, still weighs against fair use." *Id.*

Moreover, the *Michaels* court explained that "the inquiry into the nature of the work must also address the degree to which the work expresses facts or ideas in such a way as to make discussion of these facts or ideas difficult without quotation of the work." *Id*. The *Michaels* court then held, however, that "it does not seem likely that the portrayal of two people engaged in sexual relations on the Tape constitutes a set of facts or ideas whose discussion requires seeing the Tape." *Id*. The same analysis applies here and similarly weighs against a fair use defense.

As to the third factor, the defendant need not use a majority of the copyrighted work in order for it to be considered a substantial use. In *HarperCollins*, for example, the court found that excerpted portions from twelve (12) pages of a 304-page book to be "a substantial

portion of the Book."[3]  *HarperCollins*, 721 F.Supp.2d at 306.  In the present case, Defendants used a larger percentage of the copyrighted work, i.e., one (1) minute and forty-one (41) seconds of the approximately thirty (30) minute Video.  The *Michaels* court explained, however, that "[t]his factor looks not only at the simple proportion of the work used, but also at the relative importance of the parts used."  *Michaels*, 5 F.Supp.2d at 835-36.

Here, Defendants edited the most graphic parts of the Video into a one-minute "highlight reel" depicting Mr. Bollea fully naked; showing his sex partner performing oral sex on him; and showing him engaged in sexual intercourse with her.  As the *Michaels* court held, with respect to a sex tape the value "lies in the use of individual images or small segments," and "the fact that [defendant] proposes to use only a few seconds of the work does not in this case weigh in favor of fair use."  *Id*. at 836.  As a result, Defendants' use of the Video Excerpts constitutes a "substantial" portion of the copyrighted Video and weighs against a fair use defense.

The final factor for fair use relates to the effect of the unauthorized use on the potential market for or value of the copyrighted work.  While the court in *HarperCollins* found this factor to be a matter of speculation, it noted that "it is the difficulty in determining such effect that makes a legal remedy inadequate."  *HarperCollins*, 721 F.Supp.2d at 307.  The *HarperCollins* court ultimately held that the plaintiff had a likelihood of success against the defense of fair use despite finding that the fourth factor in the fair use analysis "neither helps nor harms either side."  *Id*.  Accordingly, regardless of the value of the Video or the potential market for its release, any fair use defense raised by Defendants will fail.

---

[3] *See* Harder Decl., Exh. D ("Hardcover: 304 pages").

### C. Plaintiff Should not be Required to Post a Bond

"The amount of an injunction bond is within the sound discretion of the district court." *Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd.*, 112 F.3d 1125, 1127 (11th Cir. 1997). The Court's discretion is wide and extends to whether any bond should be required at all. Despite the mandatory nature of the language of Federal Rule of Civil Procedure 65(c), "federal courts have come to recognize that the district court possesses discretion over whether to require the posting of security.'" *The Complete Angler, LLC v. City of Clearwater*, 607 F.Supp.2d 1326, 1335 (M.D. Fla. 2009) (quoting *Popular Bank of Fla. v. Banco Popular de Puerto Rico*, 180 F.R.D. 461, 463 (S.D. Fla. 1998)). "Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right." *The Complete Angler*, 607 F.Supp.2d at 1335; *see also Cont'l Oil Co. v. Frontier Ref. Co.*, 338 F.2d 780, 782 (10th Cir. 1964) (noting that exercise of the Court's discretion not to require a bond is particularly appropriate where issues of public concern or important constitutional rights are involved). Here, Plaintiff alleges an infringement of his copyright, a right which is protected by the Constitution. *Cable/Home Commc'n*, 902 F.2d at 849 ("Since the Copyright Act is the congressional implementation of a constitutional directive… copyright interests also must be guarded under the Constitution"). Accordingly, and because Defendants will not suffer any harm if the Court enters an injunction, the Court should not require a bond. If a bond is required, Plaintiff suggests the *de minimis* amount of One Thousand Dollars ($1,000.00).

## IV. CONCLUSION

The standards for issuance of a preliminary injunction having been met, Plaintiff requests that this Court enjoin Defendants from disclosing, disseminating or publishing the Video, or any excerpts or portions thereof, and enter a Preliminary Injunction in the form attached as **Exhibit 3** to Plaintiff's Motion for Preliminary Injunction.

Respectfully Submitted,

DATED: November 30, 2012

  /s/ Kenneth G. Turkel
Kenneth G. Turkel, Esq.
Florida Bar No. 867233
kturkel@bajocuva.com
Christina K. Ramirez
Florida Bar No. 0954497
cramirez@bajocuva.com
**BAJO CUVA COHEN & TURKEL, P.A.**
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Telephone: (813) 443-2199
Facsimile: (813) 443-2193

DATED: November 30, 2012

  /s/ Charles J. Harder
Charles J. Harder, Esq.
California Bar No. 184593 (Admitted *Pro Hac Vice*)
charder@wrslawyers.com
Eric Levinrad, Esq.
California Bar No. 169025 (Admitted *Pro Hac Vice*)
elevinrad@wrslawyer.com
**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
11400 W. Olympic Boulevard, 9th Floor
Los Angeles, CA 90064-1582
Telephone: (310) 478-4100
Facsimile: (310) 479-1422

*Attorneys for Plaintiff Terry Gene Bollea*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of November, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send a notice of electronic filing to all persons registered to receive notice via the CM/ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/ECF participants.

    /s/ Charles J. Harder
Attorney