UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRY GENE BOLLEA professionally
known as HULK HOGAN

      Plaintiff,

                               Case No.: 8:12-cv-02348-JDW-TBM

vs.

GAWKER MEDIA, LLC aka GAWKER      **DISPOSITIVE MOTION**
MEDIA, *et al.*

      Defendants.

_____/

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
### FIRST AMENDED COMPLAINT FOR FAILURE TO STATE
### A CLAIM AND FOR LACK OF PERSONAL JURISDICTION

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) and Local Rule 3.01,

by and through the undersigned counsel, defendants Gawker Media, LLC, Gawker Media Group,

Inc., Gawker Entertainment, LLC, Gawker Technology, LLC, Gawker Sales, LLC, Nick Denton,

A.J. Daulerio, and Kate Bennert (collectively, "defendants")[1] hereby move this Court for an

order dismissing plaintiff's First Amended Complaint ("Complaint" or "FAC") against them in

its entirety for failure to state a claim upon which relief may be granted and, as to defendants

Gawker Media Group, Inc., Gawker Entertainment, LLC, Gawker Technology, LLC, and

Gawker Sales, LLC (the "Tag-Along Defendants"), for want of personal jurisdiction.  As

grounds for their motion, defendants state as follows:

1.      Plaintiff alleges various claims at common law and under the Copyright Act

arising out of the publication on www.gawker.com of a report (the "Gawker Story") about a

---

[1] Defendant Blogwire Hungary Szellemi Alkotast Hasznosito KFT has not been served with process, and so does not join in this motion.  Nevertheless, the same arguments in favor of dismissal advanced here under both Rules 12(b)(2) and 12(b)(6) would apply to it as well.

video of plaintiff, a well-known celebrity, cheating on his wife with the wife of his best friend with the friend's blessing (the "Video"), together with brief excerpts of the Video (the "Excerpts").

2.      With respect to plaintiff's common law tort claims, he fails to state a claim upon which relief can be granted because (a) defendants' conduct involves speech about a matter of public concern and is therefore shielded from liability by the First Amendment; and (b) plaintiff fails as a matter of law to establish the elements of each of the torts.

3.      With respect to plaintiff's claim that the Excerpts infringe a newly-acquired copyright in the Video, he fails to state a claim upon which relief can be granted because he does not properly plead the ownership or registration of a valid copyright, including in a manner that would support an award of statutory damages or attorneys' fees.

4.      Finally, plaintiff fails to plead facts alleging any wrongful conduct against the Tag-Along Defendants or to plead any facts that demonstrate any tortious activity in Florida that would support the exercise of this Court's jurisdiction over them.

5.      For these reasons, as explained more fully in the following Memorandum of Law, defendants move the Court to dismiss the Complaint in its entirety.

## MEMORANDUM OF LAW

### A.      Factual Background

Although the plaintiff's allegations are known to the Court from plaintiff's TRO Application and two preliminary injunction motions (with a third now pending), defendants briefly summarize plaintiff's new Complaint, including his new claim for copyright infringement.  According to that Complaint, "Plaintiff has devoted a tremendous amount of his time and effort to developing his career as a professional champion wrestler, motion picture actor, and television personality, and to developing his universal goodwill, reputation and

2

brand." FAC ¶ 30.  Plaintiff alleges that this respectable public image has been damaged by the

posting on the Internet of brief excerpts from a longer videotape depicting him having

"consensual sexual relations with a woman" that he concedes "was taken approximately six

years ago," FAC ¶¶ 1, 27, at which time plaintiff was still married to his wife of many years

(Linda Hogan).  Plaintiff further alleges that he "had no knowledge" that the "activity being

depicted in the Video was being recorded."  FAC ¶ 2.  Plaintiff does not allege that Gawker

played any part in making the initial tape; indeed, he filed a separate lawsuit in Florida Circuit

Court against his friends, the Clems, for recording it.  Fugate Decl. (Dkt. 29) Ex. 1.[2]

Plaintiff alleges that "[o]n or about October 4, 2012, the Gawker Site [www.gawker.com]

published a story entitled 'Even For a Minute, Watching Hulk Hogan Have Sex on a Canopy

Bed is Not Safe For Work, But Watch It Anyway' (the 'Gawker Story')."  FAC ¶ 27.  According

---

[2] Although identified in the Complaint only as "an anonymous woman," FAC ¶ 27, it turns out that plaintiff was having sex with the wife (Heather Clem) of his best friend (Bubba the Love Sponge, himself a well-known radio personality, also known as Todd Alan Clem), with his best friend's blessing, in the Clems' bedroom.  Bollea Decl. ¶ 6.  The Court may take judicial notice of plaintiff's admissions submitted in support of his motions for a temporary restraining order and a preliminary injunction.  *See Guirguis v. Dunkin' Donuts Inc.*, 2010 WL 715514, at *2 (D.N.J. Mar. 1, 2010) (considering a prior admission in ruling on motion to dismiss); *Palm Beach Int'l., Inc. v. Salkin*, 2010 WL 5418995, at *6 (S.D. Fla. Dec. 10, 2010) ("Normally, factual assertions in pleadings . . . are considered to be judicial admissions conclusively binding on the party who made them.").  The Court may also properly take judicial notice of (a) the Gawker Story and the Excerpts as documents placed at issue in plaintiff's Complaint; (b) judicial records in this case and the related case brought by plaintiff against the Clems; and (c) other news reports demonstrating either that the contents of the Gawker Story or Excerpts were previously made public or that the Gawker Story was newsworthy, given that such articles are not offered for the truth of the matter asserted and their authenticity is not subject to any legitimate challenge.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal."); *Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) ("Public records are among the permissible facts that a district court may consider" at the motion to dismiss stage); *Oxford Asset Mgmt., Ltd v. Jaharis*, 297 F.3d 1182, 188 (11th Cir. 2002) (taking notice of multiple documents outside the pleadings on motion to dismiss, including article and press release, "to show their contents, not to prove the truth of matters asserted therein"); *see also Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (at motion to dismiss stage, "[c]ourts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true'") (citation omitted); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (on motion to dismiss, "it is proper to take judicial notice of the *fact* that press coverage . . . contained certain information, without regard to [its] truth").  Alternatively, pursuant to Fed. R. Civ. P. 12(d), the Court may convert this motion into a motion for summary judgment.  The referenced documents were previously submitted as exhibits to the Declaration of Rachel E. Fugate (Dkt. 29) filed in support of Defendant Gawker Media, LLC's Opposition to Plaintiff's [First] Motion for a Preliminary Injunction (Dkt. 28).  In an effort not to burden the Court with additional unnecessary filings, we respectfully refer the Court to that earlier declaration and the exhibits thereto.

to the Complaint, the "Gawker Story featured a link to the Video Excerpts." *Id.* The Video Excerpts begin with Bubba the Love Sponge encouraging his wife and plaintiff to have sex while he waits in another room.[3] They also depict plaintiff receiving a phone call and deciding not to take it, and principally depict conversations between plaintiff and Mrs. Clem in which plaintiff stated *inter alia*: that he should instead be at home; that he had been working out; that he just ate, felt "like a pig" and was out of breath; and that his son's girlfriend's twin sister had proposed a liaison with plaintiff. The excerpts total one minute and 41 seconds and include fewer than 10 seconds of sexual activity.[4] Noting that the Video had been "circulated last April" and the subject of prior reports on numerous celebrity news websites, the Gawker Story's text offers a humorous description of both the sex and the conversation depicted in the Video, comments on the public's fascination with celebrities' sex lives, attempts to capture both the disappointment and satisfaction of knowing that "celebrity sex" is often ordinary, and repeatedly notes that the Video appears to be depicting plaintiff's affair with his best friend's wife with his best friend's blessing – a fact later confirmed by plaintiff.

As set forth in greater detail in Defendant Gawker Media, LLC's Opposition to Plaintiff's [First] Motion for Preliminary Injunction (Dkt. 28) ("Gawker PI Opp."), the videotape had been the subject of widespread news coverage prior to Gawker's post, including graphic description of its contents and posting of images from the Video. *See* Fugate Decl. Exs. 3-15. Despite his current claims about his public image, some six months prior to Gawker's post plaintiff admitted in an interview that he had no idea who the woman in the sex tape was because he had sex with a

---

[3] *See* http://gawker.com/5948770/even-for-a-minute-watching-hulk-hogan-have-sex-in-a-canopy-bed-is-not-safe-for-work-but-watch-it-anyway.

[4] The sexual encounter appears to have been recorded on a stationary camera as part of a home surveillance system. *See also* http://www.youtube.com/watch?v=IwPQRPHTMPA at 4:35-5:14 (describing surveillance system in Clems' home).

lot of women during that period – adding, "'During that time, I don't even remember people's names, much less girls.'" *Id.* Ex. 14.  Moreover, in 2009, long before reports of the tape surfaced, plaintiff published an autobiography, *My Life Outside the Ring*, in which he described, *inter alia*, an affair he had while still married to Linda Hogan, admitting that the details of the affair "became national news."  Fugate Decl. Ex. 2; *see also id.* Ex. 14 (review noting same).  Widespread public interest in and discussion of Hogan's sexual encounter has continued since the publication of the Gawker Story, including news reports of various statements by plaintiffs and his representatives, as well as often conflicting statements by Bubba the Love Sponge about plaintiff's knowledge of the taping and role in the release of the Video.  *See* Fugate Decl. Exs. 17-24; *see also* Gawker PI Opp. at 4 and nn. 10-14.  Despite claiming that the Gawker Story invades his privacy, plaintiff both actively participated in this public discussion and repeatedly included the Gawker Story in the Court's public docket in his filings in this case.  *See, e.g.*, Bollea Decl. Ex. D (Dkt. 4-1) at 8-11 (attaching Gawker Story); Dkt. 54-2 (attaching four additional copies).

## B.   <u>Prior Proceedings</u>

As this Court is aware, after the Excerpts were posted, plaintiff moved for a temporary restraining order and a preliminary injunction.  *See* Dkt. 4, 5.  The Court denied his request for a TRO, *see* Dkt. 8, and subsequently denied his request for an injunction, *see* Dkt. 47; *Bollea v. Gawker Media, LLC*, 2012 WL 5509624 (M.D. Fla. Nov. 14, 2012), finding that:

> Plaintiff's public persona, including the publicity he and his family derived from a television reality show detailing their personal life, his own book describing an affair he had during his marriage, prior reports by other parties of the existence and content of the Video, and Plaintiff's own public discussion of issues relating to his marriage, sex life, and the Video all demonstrate that the Video is a subject of general interest and concern to the community.

*Id.* at *3.  As such, the Court held that Gawker's "decision to post **excerpts** of the Video online is appropriately left to editorial discretion" and protected by the First Amendment.  *Id.* (emphasis in original).  At the hearing on plaintiff's motion, plaintiff's counsel advised that he planned to file an amended complaint also asserting a claim for copyright infringement.  *See* Dkt. 45 (transcript) at 35-37.  In its order denying that motion, the Court noted the filing of the Amended Complaint, and expressly relied on authority granting summary judgment in "analogous circumstances" in connection with claims alleging violations of "plaintiff's rights under privacy and copyright law," where excerpts of a similar tape were, as here, the subject of a news report.  2012 WL 5509624, at *2 n.2 & *3 n.5.  The Court subsequently denied plaintiff's second injunction motion for the same reasons.  *See* Dkt. 61.

Given that Gawker played no role in recording the original video (and for copyright purposes neither did plaintiff), the prior extensive news reporting about it, the public interest in the Video, and the limited excerpts that Gawker posted, plaintiff's claims should be dismissed in their entirety.

## ARGUMENT

## I.   PLAINTIFF'S TORT CLAIMS ARE BARRED BY THE FIRST AMENDMENT.

Last year, in *Snyder v. Phelps*, the Supreme Court reaffirmed that "[t]he Free Speech Clause of the First Amendment . . . can serve as a defense in state tort suits," including claims for intentional infliction of emotional distress and invasion of privacy.  131 S. Ct. 1207, 1215 (2011) (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50-51 (1988)).  Here, because the publication involves a matter of public concern, as this Court has already held, plaintiff's claims fail as a matter of constitutional law.

In *Snyder*, the Supreme Court considered whether the First Amendment "shield[ed]" from tort liability members of the Westboro Baptist Church who picketed near a soldier's funeral

service carrying clearly offensive signs that said, among other things, "God Hates Fags," "You're Going to Hell," "God Hates the USA/Thank God for 9/11," "Thank God for Dead Soldiers," and "God Hates You."  131 S. Ct. at 1213.  The soldier's father brought a number of tort claims against the Church and its members, including claims for intentional infliction of emotional distress and invasion of privacy.  Because defendants' speech addressed a matter of public concern, the Court held, the First Amendment barred plaintiff's claims.  *Id.* at 1215.

"Speech on matters of public concern," the Supreme Court explained, "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Id.* (internal quotation marks and citations omitted).  Moreover, the Court emphasized, what constitutes a matter of "public concern" must be construed broadly, lest "courts themselves . . . become inadvertent censors."  *Id.* at 1216.  Thus, speech deals with a matter of public concern when, for example, "it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."  *Id.* (internal marks and citations omitted).  "The arguably 'inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern.'"  *Id.* (citation omitted).  *See also Bollea*, 2012 WL 5509624, at *2 n.3 (matters of public concern "'extend[] beyond subjects of political or public affairs to all matters of the kind customarily regarded as 'news' and all matters giving information to the public for purposes of education, amusement or enlightenment'") (quoting *Anonsen v. Dohahue*, 857 S.W.2d 700, 703-04 (Tex. App. 1993)).  Once a court determines that a defendant's speech addresses a matter of public concern, it "cannot be restricted simply because it is upsetting or arouses contempt."  *Snyder*, 131 S. Ct. at 1219.  *See also Time, Inc. v. Hill*, 385 U.S. 374, 388 (1967) ("[Drawing a] line between the informing and the entertaining is too elusive for the protection of freedom of the press.") (citations omitted).

7

As it relates to a claim for intentional infliction of emotional distress, the Court noted that

the potential for censoring speech is particularly real:

> The jury here was instructed that it could hold Westboro liable for intentional
> infliction of emotional distress based on a finding that Westboro's picketing was
> "outrageous." "Outrageousness," however, is a highly malleable standard with an
> inherent subjectiveness about it which would allow a jury to impose liability on
> the basis of the jurors' tastes or views, or perhaps on the basis of their dislike of a
> particular expression. In a case such as this, a jury is unlikely to be neutral with
> respect to the content of the speech, posing a real danger of becoming an
> instrument for the suppression of . . . sometimes unpleasant expression.

*Snyder*, 131 S. Ct. at 1219 (internal marks and citations omitted). Because "[s]uch a risk is

unacceptable," we must tolerate "even outrageous speech in order to provide adequate breathing

space to the freedoms protected by the First Amendment." *Id.* Similarly, with respect to

plaintiff's invasion of privacy claims, the Court explained that, "[i]n most circumstances, the

Constitution does not permit the government to decide which types of otherwise protected

speech are sufficiently offensive to require protection. . . ." *Id.* at 1220 (citations omitted).

Under these principles, each of the common law causes of action plaintiff alleges is

significantly cabined by the First Amendment, both by itself and by having been incorporated

into the elements of the torts.[5] *See Snyder*, 131 S. Ct. at 1220 (rejecting plaintiff's intrusion

upon seclusion claim on First Amendment grounds); *Post-Newsweek Stations Orlando, Inc. v.

Guetzloe*, 968 So. 2d 608, 612 (Fla. 5th DCA 2007) (noting that, under Supreme Court

precedent, "privacy will rarely trump the First Amendment"); *Tyne v. Time Warner Entm't Co.*,

901 So. 2d 802, 810 (Fla. 2005) (statutory right of publicity subject to First Amendment

limitation for works involving public interest that do not use a person's name or likeness to

promote a good or service); *Falwell*, 485 U.S. at 56-57 (rejecting intentional infliction claim on

---

[5] While generally courts avoid reaching constitutional issues if they can be decided on common law or
statutory grounds, in cases involving speech, the First Amendment imposes both a bar to liability and substantive
limitations on the common law torts such that addressing those limitations is appropriate as an initial matter.

First Amendment grounds).  There can be no question that the Gawker Story and the Excerpts were of "general interest and of value and concern to the public."  *Snyder*, 131 S. Ct. at 1216. Indeed, with respect to the Excerpts, this Court has already so held.  *See* 2012 WL 5509624, at *3 ("the Video is a subject of general interest and concern to the community.").[6]

When plaintiff's tort claims are scrutinized through the lens of the First Amendment, they fail to state a claim and must be dismissed.

## II.   PLAINTIFF'S TORT CLAIMS ALSO FAIL AS A MATTER OF COMMON LAW.

Even if plaintiff's claims were not constitutionally infirm, which they are, they fail for the independent reason that he has not established their elements as a matter of common law.

### A.   Intrusion Upon Seclusion

To state a claim for intrusion upon seclusion, a plaintiff must allege that defendants "physically or electronically intrud[ed] into one's private quarters."  *Allstate Ins. Co. v. Ginsberg*, 863 So.2d 156, 158 (Fla. 2003).[7]  *See also*, *e.g.*, *Spilfogel v. Fox Broad. Co.*, 433 F.

---

[6] In his Motion for a Preliminary Injunction Pending Appeal, plaintiff alleges that defendants' conduct is actionable because dissemination of the video constitutes a felony under Florida's Video Voyeurism Statute.  *See* Dkt. 54 at 11-13 (citing Fla. Stat. § 810.145).  Putting aside that the statute does not appear to create a civil cause of action (plaintiff has not asserted one, presumably for this reason), the statute cannot be constitutionally enforced to punish the *publication* of the Gawker Story and/or Excerpts where defendants played no role in *recording* the Video. As the Supreme Court explained most recently in *Bartnicki v. Vopper*, 532 U.S. 514, 528, 535 (2001), in finding unconstitutional analogous "dissemination" provisions of the federal Wiretap Act:  where, as here, the "publisher of information has obtained the information in question in a manner lawful in itself, but from a source who has [recorded] it unlawfully," that "stranger's illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern."  The Court added that the "right of privacy" cannot constitutionally "'prohibit any publication of matter which is of public or general interest.'"  *Id.* at 534.  *See also, e.g., Florida Star v. B.J.F.*, 491 U.S. 524, 541 (1989) (statute punishing report of identity of rape victim unconstitutional for same reason); *Cape Publ'ns, Inc. v. Hitchner*, 549 So. 2d 1374, 1379 (Fla. 1989) (same with respect to publication of contents of confidential child abuse report, finding that there can be no liability for the publication of truthful information lawfully obtained).

[7] In *Ginsberg*, prior to addressing the intrusion case before it, the Court enumerated all four branches of the privacy tort, including intrusion, publication of private facts, misappropriation, and false light.  863 So. 2d at 162. When the Florida Supreme Court later held in *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098 (Fla. 2008), that Florida does not recognize the tort of false light, it characterized *Ginsberg*'s passing mention of false light as *dicta*, but without in any way affecting *Ginsberg*'s discussion of the requirements for establishing intrusion.  *Id.* at 1103 & n.7. Thus, although this case does not and could not involve a claim for false light, to the extent plaintiff has previously contended that "Florida has adopted the four causes of action comprising invasion of privacy as stated in the restatement," Dkt. 54 at 5 n.1, that contention is incorrect.

App'x 724, 726 (11th Cir. 2011) (*per curiam*) ("Under Florida law, . . . tort [of intrusion] requires intrusions 'into a "place" in which there is a reasonable expectation of privacy.'") (citation omitted); *Stasiak v. Kingswood Co-Op, Inc.*, 2012 WL 527537, at *2 (M.D. Fla. 2012) (same); *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1308 (M.D. Fla. 2010) (same), *aff'd*, 627 F.3d 833 (11th Cir. 2010).  Plaintiff alleges he was surreptitiously videotaped without his knowledge or consent (albeit not in his own "private quarters," but those of the Clems).  *See, e.g.*, FAC ¶¶ 1, 27.  He does not allege, however, that defendants participated in any way in creating that Video or any other fact that would constitute an actionable intrusion.  Instead, he claims that by "posting, publishing, distributing, disseminating and exploiting" the Video, Gawker intruded upon his seclusion.  FAC ¶ 36.  As the above authorities make clear, however, that is insufficient to state a claim for intrusion, and therefore plaintiff's intrusion claim should be dismissed with prejudice as a matter of law.[8]

### B.  Publication of Private Facts

To establish the tort of publication of private facts, plaintiff must show (1) the publication, (2) of private facts, (3) that are highly offensive, and (4) that are not of public concern.  *See, e.g.*, *Hitchner*, 549 So. 2d at 1377 (citing *Restatement (Second) of Torts* § 652D). This claim fails for at least two independent reasons.

First, the facts were not private at the time the Gawker Story was posted, but had been widely disseminated prior to that time in both news reports and photographs.  *See* Fugate Decl. Exs. 2-16; *see also Bollea*, 2012 WL 5509624, at *3 (noting that plaintiff's own book described a prior affair and other prior reports by third parties detailed content of Video).  It is well settled that "[r]epublication of facts already publicized elsewhere cannot provide a basis for an invasion

---

[8] Although plaintiff continues to allege this cause of action in his Amended Complaint, he omitted any mention of it, or his renewed claims for intentional and negligent infliction of emotional distress, in his discussion of the likelihood of success on the merits section of his Motion for Injunction Pending Appeal.  *See* Dkt. 54 at 5-14.

of privacy claim." *Heath v. Playboy Enters., Inc.*, 732 F. Supp. 1145, 1149 (S.D. Fla. 1990); *see also Lee v. Penthouse Int'l Ltd.*, 1997 WL 33384309, at *6 (C.D. Cal. Mar. 19, 1997) (no private facts claim for publishing previously disclosed sexually intimate photographs of Tommy Lee and Pamela Anderson because "there can be no privacy with respect to a matter which is already public") (citation omitted).  Because the facts disclosed were already public, plaintiff cannot state a claim for publication of private facts as a matter of law.

Second, the Gawker Story and accompanying Excerpts involve a matter of public concern.  As the Florida Supreme Court has emphasized:  "the requirement of lack of public concern is a formidable obstacle" which "has been recognized . . . as being so broad as to nearly swallow the tort." *Hitchner*, 549 So. 2d at 1377 (dismissing invasion of privacy claims where facts were a matter of public concern).  *See also Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502 (Fla. 3d DCA 1993) ("the publication of private facts is not an invasion of privacy where these facts are also of public concern.").  Here, as this Court has already held, there can be no doubt that the Gawker Story and Excerpts are a matter of public interest and concern.  *Bollea*, 2012 WL 5509624, at *3.  *See also Eastwood v. Superior Court*, 198 Cal. Rptr. 342, 351 (Cal. App. 1983) ("the purported romantic involvements" of celebrities are "matter[s] of public concern"); *Restatement (Second) of Torts* § 652D cmt. g (matters of public concern include "news" as "publishers and broadcasters have defined the term" including "matters of genuine, even if more or less deplorable, popular appeal").  Particularly in light of the image plaintiff purports to convey to the public, the fact he cheated on his own wife with the wife of his best friend – another celebrity – with the friend's blessing and while he waited in another room, speaks directly to his character and the image he claims to have cultivated.

In his various earlier motions, plaintiff has relied heavily on *Michaels v. Internet Entertainment Group, Inc.*, 5 F. Supp. 2d 823 (C.D. Cal. 1998). *See, e.g.*, Dkt. 54 at 3, 6-9, 14. There, however, the defendant was simply selling a complete copy of a sex tape involving Bret Michaels and Pamela Anderson, and as such "involved purely commercial speech." *Bollea*, 2012 WL 5509624, at *3 (citing *Michaels*, 5 F. Supp. 2d at 834-35).  In circumstances more analogous to the Gawker Story, the same court subsequently found there was no actionable invasion of privacy by another defendant who broadcast a news report about that same tape, together with a series of excerpts, because the report constituted a matter of public concern. *See Michaels v. Internet Entm't Grp., Inc.*, 1998 WL 882848, at *10 (C.D. Cal. Sept. 11, 1998) (because plaintiff "is a voluntary public figure" and the purportedly "private matters broadcast bore a substantial nexus to a matter of public interest," privacy claim "fails as a matter of law"). Other courts considering similar purportedly private depictions of nudity or sex have drawn the same line. *See, e.g.*, *Lee*, 1997 WL 3384309, at *5 ("the sex life of Tommy Lee and Pamela Anderson Lee is . . . a legitimate subject for an article by *Penthouse*" and sexually explicit images of the couple accompanying the article were "newsworthy," especially given prior reports and statements by plaintiffs about their sex lives); *Jones v. Turner*, 23 Media L. Rep. (BNA) 1122, 1995 WL 10611 (S.D.N.Y. Feb. 7, 1995) (refusing to enjoin publication of nude photographs of Paula Corbin Jones in *Penthouse* magazine where photographs bore relationship to accompanying article and article involved matter of public interest).

At bottom, plaintiff asks this Court to judicially enforce the favorable image he and his publicists have tried to advance and to suppress or punish additional information others put forward that calls that image into question.  But for important societal reasons, "the judgment of what is newsworthy is primarily a function of the publisher, not the courts." *Heath*, 732 F. Supp.

at 1149 n.9.  *Accord Bollea*, 2012 WL 5509624, at *3 ("Defendants' decision to post **excerpts** of

the Video online is appropriately left to editorial discretion") (emphasis in original).  *See also*

*Cape Publ'ns, Inc. v. Bridges*, 423 So. 2d 426 (Fla. 5th DCA 1982) (publication of photograph of

plaintiff clad only in a dish towel, which illustrated report about abduction and rescue, held to be

of legitimate public concern); *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 102 n.9 (2d

Cir. 2000) ("In media cases, the scope of what is 'arguably within the sphere of public concern'

has been held to be extraordinarily broad with great deference paid to what the publisher deems

to be of public interest.") (citation omitted).  Accordingly, this claim must be dismissed as a

matter of law for this reason as well.

### C.    Common Law Right of Publicity

In analyzing right of publicity claims, courts in Florida have found that the common law

right of publicity is "substantially identical" to the statutory right under Fla. Stat. § 540.08.  *See*

*Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1320 n.1 (11th Cir. 2006).  *See also Fuentes v.*

*Mega Media Holdings, Inc.*, 721 F. Supp. 2d 1255 (S.D. Fla. 2010) (employing § 540.08 analysis

to dismiss common law right of publicity claim); *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d

1205 (M.D. Fla. 2002) (same).  Under either, a plaintiff must establish that his name, image, or

likeness was used for a "commercial" purpose.  *See* Fla. Stat. § 540.08; *Fuentes*, 721 F. Supp. 2d

at 1261.  This he cannot do.

To establish a commercial purpose, Florida state and federal courts have uniformly held

that plaintiff must show his "name or likeness is used to directly promote a commercial product

or service, *separate and apart* from the publication [at issue]."  *Fuentes*, 721 F. Supp. 2d at 1258

(emphasis in original).  *See also Lane*, 242 F. Supp. 2d at 1212 (statutory right of publicity

prohibits "using a person's name or likeness to directly promote a product or service"); *Epic*

*Metals Corp. v. CONDEC, Inc.*, 867 F. Supp. 1009, 1016 (M.D. Fla. 1994) (same); *Nat'l*

13

*Football League v. The Alley, Inc.*, 624 F. Supp. 6, 10 (S.D. Fla. 1983) (same).  As the court

explained in *Loft v. Fuller*, 408 So. 2d 619, 622-23 (Fla. 4th DCA 1981), the publication of a

plaintiff's name, likeness, or image is actionable "not simply because it is included in a

publication that is sold for a profit, but rather because of the way it associates the individual's

name or his personality with something else."

      In determining whether defendants' "use" of plaintiff's image was "commercial," the fact

that Gawker sells advertising or makes a profit – like any other media entity – is immaterial.  *See*

*Tyne*, 901 So. 2d at 808 ("'That books, newspapers, and magazines are published and sold for

profit does not prevent them from being a form of expression whose liberty is safeguarded by the

First Amendment.'") (quoting *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 501 (1952)); *see*

*also Bollea*, 2012 WL 5509624, at *3 n.7 (While "Defendants stand to indirectly profit" if the

Video "drives additional traffic to Defendants' website," that is true "with respect to any

information posted online by any media outlet and is distinguishable from ***selling*** access to the

Video solely for the purpose of commercial gain.") (emphasis in original).  Thus, the only issue

here is whether plaintiff's image was used by defendants to "merely advertise[] a product or

service for business purposes."  *Tyne*, 901 So.2d at 809 (citing *Cardtoons L.C. v. Major League*

*Baseball Players Ass'n*, 95 F.3d 959 (10th Cir. 1996)).  Plaintiff does not claim any such thing,

and indeed, he cannot.  *See* FAC ¶¶ 56-57 (alleging defendants' use of "Plaintiff's name, image,

identity and persona *in connection with the Gawker Story*").[9]

      Because plaintiff does not plead facts that would establish that a "commercial" use, its

publication is both protected by the First Amendment and does not satisfy an essential element of

---

[9] Indeed, given the balance between the First Amendment and the misappropriation tort, in a third opinion, the *Michaels* court clarified its order prohibiting sales by IEG, the entity actually *selling* the *full* tape, to permit it to "report on or comment on matters of public interest" or even "to attract attention to IEG as a news medium." *Michaels v. Internet Entm't. Grp., Inc.*, 1998 WL 35242549, at *4-5 (C.D. Cal. Feb. 27, 1998).

the tort.  *See Valentine v. CBS, Inc.*, 698 F.2d 430, 433 (11th Cir. 1983) (affirming ruling, as a matter of law, that publisher did not violate right of publicity where defendants did not use plaintiff's name to directly promote a product or service); *Tyne*, 901 So. 2d at 809 (dismissing misappropriation claim for same reason); *Fuentes*, 721 F. Supp. 2d at 1260 (same where plaintiff could not allege that defendants "used his name and likeness to promote some other product or service").  As such, plaintiff's claim for common law misappropriation fails as a matter of law and should be dismissed with prejudice.

### D.      Intentional Infliction of Emotional Distress

As discussed in Part I *supra*, the cause of action for intentional infliction of emotional distress ("IIED") is particularly disfavored in the First Amendment arena because of the likelihood that the tort might be used to punish disfavored speech.  *See Snyder*, 131 S. Ct. at 1219; *Falwell*, 485 U.S. at 50-51.  Even were his claim not constitutionally infirm, plaintiff has failed to state a claim for IIED.

First, plaintiff has not pled *facts* that would, even if proven true, establish that that defendants' conduct was "intentional or reckless" with respect to plaintiff's alleged emotional distress.  *See Lockhart v. Steiner Mgmt. Servs., LLC*, 2011 WL 1743766, at *3 (S.D. Fla. May 6, 2011) (granting motion to dismiss because conclusory assertions that defendant engaged in "intentional conduct designed and intended to cause . . . severe emotional distress" were insufficient to state a claim).  Plaintiff's sole factual contention in this regard is that defendants refused plaintiff's requests not to publish and, later, to take down, the Excerpts.  *See* FAC ¶ 64. But publishers are regularly subjected to such requests, and plaintiff's theory would expose any publisher who stood on its right to publish to a claim for IIED.  Moreover, where defendants edited the more than 30-minute Video down to less than two minutes of Excerpts in connection

15

with the Gawker Story, and included only approximately nine seconds of sexually explicit footage, such conduct is a far cry from the kind of conduct that Florida courts have found to qualify as intentionally or recklessly causing severe emotional distress.  *See, e.g.*, *Nims v. Harrison*, 768 So. 2d 1198, 1200-01 (Fla. 1st DCA 2000) (defendant threatened to kill teacher and rape her children in student newsletter); *Williams v. City of Minneola*, 575 So. 2d 683, 686 (Fla. 5th DCA 1991) (police officers viewed videotape of autopsy of man who died of an apparent drug overdose at officer's home in a "party atmosphere").

Second, plaintiff has not pleaded facts that would establish "outrageous" conduct for purposes of his IIED claim.  "In Florida, '[t]he issue of whether or not the activities of defendant rise to the level of being extreme and outrageous . . . is a legal question in the first instance for the court to decide as a matter of law.'"  *Vance v. S. Bell Tel. & Telegraph Co.*, 983 F.2d 1573, 1575 n.7 (11th Cir. 1993) (quoting *Baker v. Fla. Nat. Bank*, 559 So. 2d 284, 287 (Fla. 4th DCA 1990)).  Here, the publication of the Gawker Story and the Excerpts, including approximately nine seconds of footage of plaintiff engaged in sexual activity, hardly qualifies, especially in light of plaintiff's own public discussions of his sex life.  *See Moore v. Wendy's Int'l, Inc.*, 1994 WL 874973, at *3-4 (M.D. Fla. 1994) (granting motion to dismiss based on finding that, although allegations of extreme sexual harassment were "totally inexcusable and unacceptable," they did not qualify as "outrageous" conduct required to establish IIED).  Accordingly, plaintiff's IIED claim should be dismissed for this reason as well.  *See Nickerson v. HSNi, LLC*, 2011 WL 3584366, at *3 (M.D. Fla. Aug. 15, 2011) (dismissing IIED claim where conduct alleged, "while perhaps unlawful, [wa]s not sufficiently outrageous in character, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community").

16

Finally, plaintiff has not pled facts that, if proven, would establish the publication caused him *severe* emotional distress.  His Complaint pleads only that "[a]s a proximate result of [defendants' conduct], Plaintiff has suffered severe emotional distress, anxiety and worry."  FAC ¶ 66.  But these conclusory assertions are insufficient to plead the sort of *severe* emotional distress required to pursue this cause of action.  *See Nickerson*, 2011 WL 3584366, at *3 (granting motion to dismiss because conclusory allegations of emotional distress were insufficient to state IIED claim).  *Cf. Saludes v. Republica de Cuba*, 577 F. Supp. 2d 1243, 1254-55 (S.D. Fla. 2008) (plaintiff sufficiently demonstrated that torture of her son caused her severe emotional distress including "insomnia and constant nightmares since her son was imprisoned").

### E.      Negligent Infliction of Emotional Distress

Plaintiff has no claim at all for negligent infliction of emotional distress.  Plaintiff previously conceded that, under Florida law, a claim for negligent infliction of emotional distress must flow from actual physical injuries.  *See* Dkt. 4 at 11 (motion for temporary restraining order); Dkt. 5 at 7 (first motion for preliminary injunction); *see also Zell v. Meek*, 665 So. 2d 1048, 1054 (Fla. 1995) ("physical injury" of some kind is an essential element of cause of action).  Despite this concession, plaintiff has nevertheless re-asserted this claim in his new Complaint, despite alleging no such physical injuries.  Accordingly, plaintiff's negligent infliction claim should be dismissed with prejudice as a matter of law.

### F.      Copyright Infringement

Finally, plaintiff's belated claim for copyright infringement should be dismissed because plaintiff has failed to plead facts sufficient to establish either ownership, or registration, of a copyright in the Video.[10]

First, plaintiff has failed to adequately allege that he owns a copyright in the Video.  *See Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 190-91 (11th Cir. 2011) (under the Copyright Act, "only the legal or beneficial owner of an 'exclusive right' has standing to bring a copyright infringement action"); *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247 (11th Cir. 1999) ("[t]o state a claim for copyright infringement," a plaintiff must adequately plead, *inter alia*, "*ownership* of a valid copyright") (emphasis added).  Under the Copyright Act, the ownership of copyright in a work initially vests "in the author or authors of the work," 17 U.S.C. § 201 – *i.e.*, the person(s) "to whom [the work] owes its origin," *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1368 (11th Cir. 1981) (citation omitted).  Here, plaintiff has not pleaded any facts to indicate that he authored the Video.  *See, e.g.*, *Steve Altman Photography v. United States*, 18 Cl. Ct. 267, 281-82 (1989) (subjects of photographic portrait were not authors for copyright purposes, even where they commissioned photograph and suggested backdrop).  Rather, he

---

[10] Subsequent to his filing of this Complaint, plaintiff filed his *third* motion for an injunction (Dkt. No. 60), this time seeking a preliminary injunction specifically on copyright grounds.  While plaintiff ultimately attached to that motion what purport to be a transfer of copyright ownership in the Video to him from Bubba the Love Sponge and a copyright registration, *see* Harder Decl. (Dkt. 60-1) Exs. A & C, that subsequent filing cannot cure the defects in this pleading, absent the filing of a new complaint.  *See Majd-Pour v. Georgiana Cmty. Hosp.*, 724 F.2d 901, 902 n.1 (11th Cir. 1984) (proper vehicle for curing defects in a complaint is by filing amended pleading); *FMC Corp. v. Varonos*, 1988 WL 116825, at *5 (N.D. Ill. Oct. 21, 1988) ("[P]leading insufficiencies cannot be cured by [a party's] motion[s] and briefs," including motion for preliminary injunction), *aff'd*, 892 F.2d 1308 (7th Cir. 1990).  Accordingly, defendants will refrain from addressing the substance of plaintiff's copyright claim, including the elements of the claim and fair use, until either (a) plaintiff files a Second Amended Complaint, should the Court authorize him to do so, that properly pleads a valid copyright and registration, or (b) defendants' file their opposition to plaintiff's latest motion for a preliminary injunction, which will address those issues raised for the first time in that motion and which will also demonstrate the futility of amendment as to plaintiff's copyright infringement claim.

disclaims any role whatsoever in its creation, affirmatively and repeatedly pleading that he was in fact unaware of its existence until years after the fact.  *See* FAC ¶¶ 2, 27, 28, 36, 45, 46.  Thus, contrary to plaintiff's conclusory assertion that he "is the owner of the copyrights in and to the Video," FAC ¶ 78, the actually pleaded facts demonstrate the opposite.[11]  Accordingly, plaintiff's copyright infringement claim should be dismissed for failure to adequately plead ownership.  *See, e.g.*, *Total Mktg. Techs., Inc. v. Angel Medflight Worldwide Air Ambulance Servs., LLC*, 2012 WL 33150, at *5 (M.D. Fla. Jan. 6, 2012) (dismissing copyright claim where plaintiff failed to plead any facts suggesting work was subject to a valid copyright); *Roig v. Star Lofts on the Bay Condominium Assoc., Inc.*, 2011 WL 6178882, at *2 (M.D. Fla. Dec. 12, 2011) (dismissing copyright claim where plaintiff failed to adequately allege ownership).

Second, plaintiff has failed to adequately allege *registration* of his purported copyright in the Video.  *See* 17 U.S.C. § 411(a) (mandating that "no civil action for infringement . . . shall be instituted until preregistration or registration of the copyright" occurs).  As the Supreme Court has explained, this provision requires copyright registration as "a precondition to filing a claim," which a plaintiff must satisfy *before* filing an infringement claim.  *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1241-42, 1247 (2010).  While plaintiff avers in a conclusory fashion that he has "complied with" the statutory registration requirements, FAC ¶ 78, he does not plead any supporting facts, such as a registration number, or attach a copyright registration certificate to the Complaint.  The copyright claim should be dismissed on that ground as well.  *See, e.g.*, *Curington v. UMG Recordings, Inc.*, 2011 WL 3568278, at *2 (M.D.N.C. Aug. 12, 2011)

---

[11] While a copyright can be transferred by a writing "signed by the owner of the rights conveyed" or by operation of law, *see* 17 U.S.C. §§ 201(a), 204(a), plaintiff has pleaded no facts to indicate that he has acquired ownership of a copyright in the Video, despite not being its author.  For example, plaintiff does not allege that the copyright was transferred to him by the Video's author, and does not even identify who the author was.  Absent any factual basis, plaintiff's bare legal conclusion that he owns the copyrights in the Video simply is insufficient under the federal pleading standards.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (complaint must plead "enough *facts* to state a claim to relief that is plausible on its face") (emphasis added).

(dismissing copyright claim because plaintiffs did not attach copyright registration to complaint and thus had not "adequately alleged facts to support their claim of registration"), *aff'd*, 468 F. App'x 304 (4th Cir. 2012); *Derminer v. Kramer*, 386 F. Supp. 2d 905, 911 n.10 (E.D. Mich. 2005) (concluding that copyright claim was invalid where "Plaintiffs failed to provide a date of registration or a registration number, much less a certificate of that registration"); *Vargas v. Pfizer, Inc.*, 418 F. Supp. 2d 369, 373 (S.D.N.Y. 2005) (concluding that plaintiff's copyright claims were deficient because plaintiff failed to attach copyright registration).

Finally, even if plaintiff had adequately stated a cause of action for copyright infringement (which he has not), his specific claims for statutory damages and attorneys' fees, *see* FAC ¶¶ 82, 84, 85, should be dismissed.  A copyright plaintiff is only eligible for statutory damages or attorneys' fees where the effective date of registration of the copyright preceded the infringement.  *See* 17 U.S.C. § 412; *see also Pegasus Imaging Corp. v. Northrop Grumman Corp.*, 2010 WL 4627721, at *4 (M.D. Fla. Nov. 5, 2010) (same).  Here, plaintiff has pleaded nothing to indicate that the purported copyright in the Video was registered prior to Gawker's publication of Excerpts from it.  Accordingly, at a minimum, plaintiff's claims for statutory damages and attorneys' fees must be dismissed.  *See, e.g.*, *Inst. For The Dev. Of Earth Awareness v. PETA*, 2009 WL 2850230, at *4 (S.D.N.Y. Aug. 28, 2009) (dismissing claims for statutory damages and attorneys' fees where complaint "offer[ed] no factual allegations to support its theory that post-registration infringement occurred").

## III.   THE TAG-ALONG DEFENDANTS SHOULD BE DISMISSED BECAUSE THE AMENDED COMPLAINT ALLEGES NO ACTIONABLE CONDUCT BY THEM NOR FACTS SUFFICIENT TO ESTABLISH JURISDICTION OVER THEM.

Altogether apart from the adequacy of plaintiff's pleading more generally, plaintiff has failed to plead sufficient facts to connect any of the Tag-Along Defendants to the complained of conduct, or to establish any basis for this Court's exercise of personal jurisdiction over them.

A.      **Failure to State a Claim**

Each of plaintiff's purported causes of action arises out of the publication of the Gawker Story and/or the Excerpts from the Video on the Gawker website.  *See* FAC  ¶¶ 1, 3-4, 27, 35-39, 41-43, 45-51, 53, 56-62, 64-69, 71-76, 79, 81-84, 86.  While Gawker Media, LLC concedes that it, as the operator of the Gawker website, published the Gawker Story and the Excerpts, plaintiff has not otherwise pleaded any facts to indicate that the other named business entities – Gawker Media Group, Inc., Gawker Entertainment, LLC, Gawker Technology, LLC, Gawker Sales, LLC and the not-yet-served Blogwire Hungary Szellemi Alkotast Hasznosito KFT – played any role in that publication.  Simply grouping all of the entities together as "Gawker Media," and then generally alleging that this collective "owns, operates, controls and publishes several Internet websites, including the Gawker site," FAC ¶¶ 16-17, is insufficient in the absence of any specific facts about each particular's entity's role.[12]  Under the applicable pleading standard, "allegations of 'generalized conduct' against multiple defendants are only proper if the complaint also alleges *facts* which evoke more than the 'the mere possibility' that *each individual defendant* acted unlawfully."  *Lawrie v. Ginn Cos.*, 2010 WL 3746725, at *4 (M.D. Fla. Sept. 21, 2010) (emphasis added).  Here, no such facts are alleged.[13]

Nor can plaintiff make these other business entities liable for the conduct of Gawker Media, LLC simply by pleading that all the entities are part of the same "Gawker" family of

---

[12] The same goes for plaintiff's general "information and belief" allegation that "Defendants, and each of them, were and are the agents, licensees, employees, partners, joint-venturers, co-conspirators, owners, principals, and employers of the remaining Defendants, and each of them are, and at all times herein mentioned were, acting within the course and scope of that agency, license, partnership, employment, conspiracy, ownership, or joint venture."  FAC ¶ 22.  Those are simply legal conclusions that need not be credited.  *See FTC v. Phoebe Putney Health Sys., Inc.*, 663 F.3d 1369, 1375 (11th Cir. 2011) (on a motion to dismiss, a court is not "bound to accept as true a legal conclusion couched as a factual allegation").

[13] Putting aside that it has yet to be served, *see* note 1 *supra*, plaintiff does allege that Blogwire Hungary Szellemi Alkotast Hasznosito KFT "owns the Internet domain name GAWKER.COM."  FAC ¶ 15.  But that is, by itself, plainly insufficient to make it a publisher of the Gawker Story or Excerpts.

businesses.  As plaintiff alleges, Gawker Media, LLC is a limited liability company organized and operating under the laws of Delaware.  *See* FAC ¶ 8.  As such, it is a legally distinct entity, the conduct of which cannot be imputed to any affiliated entity absent some basis for disregarding Gawker Media, LLC's separate legal status.  *See, e.g.*, *Arbor Place, L.P. v. Encore Opportunity Fund, LLC*, 2002 WL 205681, at *6 (Del. Ch. Jan. 29, 2002) (observing, in case involving affiliated LLCs, that "[t]he separate existence and rights of discrete entities is well established in Delaware law and the Court is reluctant to ignore such separate existence even in the case of a wholly-owned subsidiary.").  Here, plaintiff simply alleges that the other Gawker entities "were and are all under the control of defendant Gawker Media Group, Inc.," FAC ¶ 13, but otherwise alleges no facts to justify disregarding their status as distinct entities.  This general and purely conclusory assertion of "control" by "Gawker Media Group" provides an insufficient basis for disregarding the separate legal status of the different business entities named as defendants.  *See, e.g.*, *Centrifugal Air Pumps Australia v. TCS Obsolete, LLC*, 2010 WL 3584948, at *2 (M.D. Fla. Sep. 9, 2010) (claims were fatally defective where plaintiff failed to plead facts to support a valid theory of corporate veil piercing); *Bochardt v. Mako Marine Int'l, Inc.*, 2009 WL 3856678, at *6 (S.D. Fla. Nov. 17, 2009) (dismissing claims where plaintiffs' "conclusory allegations" did not "allege[] sufficient information to pierce the corporate veil" of defendants); *see also, e.g.*, *Stern v. News Corp.*, 2010 WL 5158635, at *4 (S.D.N.Y. Oct. 14, 2010) (parent corporation could not be liable for publication of its subsidiary absent some basis for piercing corporate veil).

**B.  Failure to Allege Any Facts That Would Establish Personal Jurisdiction**

For these same reasons, plaintiff has also failed to provide any basis for this Court to exercise personal jurisdiction over the Tag-Along Defendants.  As plaintiff concedes, none is a

citizen or resident of Florida.  *See* FAC ¶¶ 9, 10, 11, 12, 14 (indicating that the various business

entities are located in the Cayman Islands, New York and Hungary).  Nor does plaintiff contend

that any of these defendants has sufficient contacts with the State of Florida to provide for this

Court's general jurisdiction, as the only asserted bases for jurisdiction are Fla. Stat.

§§ 48.193(1)(a) and 48.193(1)(b), *see* FAC ¶¶ 26(a)-(b), which provide for specific jurisdiction.

*See Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 626 (11th Cir. 2010) (noting

that section 48.193(1) is the provision for specific jurisdiction).

But specific jurisdiction, whether premised on section 48.193(1)(a), which applies to

defendants who do business in the state, or section 48.193(b), which applies to defendants who

commit tortious acts within the state, requires what is manifestly missing in the case of these

defendants – conduct in the forum state that gave rise to the cause of action.  *See Oldfield v.

Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1221 n.27 (11th Cir. 2009) ("'[S]pecific jurisdiction'

refers to jurisdiction over causes of action arising from or related to a defendant's actions within

the forum."); *RC3, Inc. v. Bieber*, 2012 WL 4207457, at *3 (M.D. Fla. Sep. 18, 2012) ("A court

may exercise specific jurisdiction over a nonresident defendant only when plaintiff's cause of

action arises from or is directly related to the defendant's contacts with the forum state.");

*Schwartzberg v. Knobloch*, 98 So. 3d 173, 177 (Fla. 2d DCA 2012) ("[J]urisdiction may be

asserted upon nonresident persons or entities in accordance with [section 48.193(1)(a)] where the

cause of action arises from that person's business activities in Florida.").  As noted above,

plaintiff has not pleaded sufficient facts to indicate either that any of these defendants published

the Gawker Story and/or the Excerpts, or that the conduct of Gawker Media, LLC can be

imputed to them.  Accordingly, there is no basis for exercising specific jurisdiction over these

defendants.  *See Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1347 (S.D. Fla. 2009)

(no basis for specific jurisdiction over particular defendant where causes of action arose out of an act of publication and plaintiff did not plead acts of publication by that defendant); *see also PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808-09 (11th Cir. 2010) (no basis for specific jurisdiction over defendants where causes of action were inadequately pleaded); *Ellis v. Celebrity Cruises, Inc.*, 2010 WL 6730808, at *1 (S.D. Fla. July 15, 2010) (plaintiff failed to adequately plead basis for personal jurisdiction where complaint merely provided conclusory allegations tracking the language of Florida's long-arm statute).

In sum, the claims against the Tag-Along Defendants should be dismissed both for failure to state a claim upon which relief can be granted and for lack of personal jurisdiction.

**CONCLUSION**

For the foregoing reasons, plaintiff's First Amended Complaint should be dismissed in its entirety.

Respectfully submitted,

THOMAS & LOCICERO PL

By:___/s/ Gregg D. Thomas_____
    Gregg D. Thomas
    Florida Bar No.: 223913
    Rachel E. Fugate
    Florida Bar No.: 0144029
400 North Ashley Drive, Suite 1100
P.O. Box 2602 (33601)
Tampa, FL 33602
Telephone: (813) 984-3060
Facsimile: (813) 984-3070
gthomas@tlolawfirm.com
rfugate@tlolawfirm.com

Seth D. Berlin (admitted *pro hac vice*)
Paul J. Safier (admitted *pro hac vice*)
LEVINE SULLIVAN KOCH & SCHULZ, LLP
1899 L Street, NW, Suite 200
Washington, DC 20036
Telephone: (202) 508-1122
Facsimile: (202) 861-9888
sberlin@lskslaw.com
psafier@lskslaw.com

Of Counsel:
Cameron A. Stracher
Gawker Media
210 Elizabeth Street, 4th Floor
New York, NY 10012
Telephone:  (212) 743-6513
cameron@gawker.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of December 2012, a true and correct copy of

the foregoing is being electronically filed and will be furnished via CM/ECF to:

Kenneth G. Turkel, Esq.
kturkel@BajoCuva.com
Christina K. Ramirez, Esq.
cramirez@BajoCuva.com
Bajo Cuva Cohen & Turkel, P.A.
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Tel: (813) 443-2199
Fax: (813) 443-2193

Charles J. Harder, Esq.
charder@wrslawyers.com
Jonathan H. Waller, Esq.
jwaller@wrslawyers.com
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Boulevard, 9th Floor
Los Angeles, CA 90064-1582
Tel: (310) 478-4100
Fax: (310) 479-1422

David R. Houston, Esq.
dhouston@houstonatlaw.com
432 Court Street
Reno, NV 89501
Tel: (775) 786-4188
Fax: (775) 786-5091

and served by mail and email on:

Eric Levinrad, Esq.
elevinrad@wrslawyers.com
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Boulevard, 9th Floor
Los Angeles, CA 90064-1582
Tel: (310) 478-4100
Fax: (310) 479-1422

*Attorneys for Plaintiff*

/s/ Gregg D. Thomas
Attorney