UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TERRY GENE BOLLEA, professionally
known as HULK HOGAN,**

**Plaintiff,**

**vs.**                                      **Case No. 8:12-cv-02348-T-27TBM**

**GAWKER MEDIA, LLC, *et al.*,**

**Defendant.**
_____/

## ORDER

**BEFORE THE COURT** is Plaintiff's Motion for Preliminary Injunction to Enjoin Copyright Infringement (Dkt. 60). Plaintiff seeks an order requiring Defendants to remove "the excerpts from the Hulk Hogan sex tape that were posted on the www.Gawker.com website on or about October 4, 2012, and enjoining Defendants from posting, publishing or releasing any portions or content of the video to the public because Defendants' display of these excerpts constitute an infringement of Plaintiff's copyright." (Dkt. 60, p. 1).[1] Defendants oppose the motion (Dkt. 64).

A hearing on the motion will not assist the Court in resolving Plaintiff's claim. Upon consideration, the Motion for Preliminary Injunction to Enjoin Copyright Infringement (Dkt. 60) is due to be denied, as Plaintiff has not established a likelihood of success on the merits of his purported copyright infringement claim or that he will suffer irreparable harm if an injunction is not issued. Substantial questions exist concerning the validity of his copyright and significantly, whether, assuming a valid copyright, Defendants have a colorable defense of fair use.

_____

[1] This is Plaintiff's second motion for preliminary injunction (and third request for preliminary injunctive relief).

## II. Factual Background

According to Plaintiff's submissions, approximately six years ago, he engaged in consensual sexual relations with a woman that was not his wife.[2]  Allegedly unbeknownst to Plaintiff, the encounter was videotaped (the "**Video**").  Plaintiff insists that he was unaware that the encounter was being videotaped and would have strenuously objected to any recording thereof.  Despite repeatedly disclaiming any knowledge of, and consent to, the videotaping, Plaintiff now contends that he recently obtained and registered a copyright for the Video.

On or about October 4, 2012, one or more of the named defendants (collectively, "**Gawker Media**") posted to their website (www.Gawker.com) (the "**Gawker Site**") excerpts of the Video. Plaintiff contends that the Video was posted without his permission and Gawker Media has refused numerous requests that they remove the excerpts from the Gawker Site.  Plaintiff contends that "[i]f the Video remains publicly posted and disseminated, it will have a substantial adverse and detrimental effect on [his] personal and professional life, including irreparable harm to both." Bollea Declaration (Dkt. 4-1), ¶ 11.

On October 15, 2012, Plaintiff commenced this action by filing a five count complaint against Defendants asserting claims for (1) invasion of privacy by intrusion upon seclusion, (2) publication of private facts, (3) violation of the Florida common law right of publicity, (4) intentional infliction of emotional distress, and (5) negligent infliction of emotional distress. Following the hearing on the his original Motion for Preliminary Injunction, Plaintiff filed a First Amended Complaint adding a new claim for copyright infringement.

---

[2] Plaintiff has submitted, *inter alia*, the Declaration of Plaintiff Terry Gene Bollea (Dkt. 4-1), the Declaration of Charles J. Harder (Dkt. 60-1), and the Declaration of Nathaniel Wong (Dkt. 60-2).

### III. Discussion

A preliminary injunction may be granted only if the movant establishes: "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246–47 (11th Cir. 2002). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (quotation marks omitted). "Failure to show any of the four factors is fatal ... ." *ACLU of Fla. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009).

As discussed below, it is doubtful that Plaintiff could establish a likelihood of success on the merits or that the balancing of harm and public interest warrant preliminary injunctive relief. Regardless, Plaintiff's motion for preliminary injunctive relief is due to be denied because he has produced no evidence demonstrating that he will suffer irreparable harm absent a preliminary injunction.

#### *Likelihood of Success*

As an initial matter, it is questionable whether Plaintiff will prevail on his claim for copyright infringement. Significant issues relating to the validity of the copyright and Gawker Media's fair use of the Video create substantial doubt as to whether Plaintiff will prevail on his claim for copyright infringement. *See Michaels v. Internet Entertainment Group, Inc.*, No. CV 98-0583 DDP (CWx), 1998 WL 882848 (C.D. Cal. Sept. 11, 1998) (granting summary judgment in favor of

defendant on plaintiff's claim that broadcasting excerpts of sex tape constituted copyright infringement). Indeed, this Court has previously found that Defendants' published the video excerpts "in conjunction with the news reporting function." That factual finding supports a colorable fair use defense, as the Copyright Act expressly provides that "the fair use of a copyrighted work . . . for purposes such as criticism, [or] news reporting . . . is not an infringement of copyright." 17 U.S.C. § 107.

Plaintiff's reliance on *HarperCollins Publishers v. Gawker Media*, 721 F.Supp.2d 303 (S.D.N.Y. 2010), is unpersuasive. The mere fact that the posting of excerpts of a copyrighted work would increase traffic to a website and, correspondingly, advertising revenue, standing alone is insufficient to demonstrate a commercial use that would preclude a finding of fair use under copyright law. As this Court previously noted: "It is true that Defendants stand to indirectly profit from the posting of the Video excerpts to the extent it drives additional traffic to Defendants' website. This is true, however, with respect to any information posted online by any media outlet and is distinguishable from ***selling*** access to the Video solely for the purpose of commercial gain." *See also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 584 (1994) (noting that "news reporting, comment, [and] criticism" are activities "generally conducted for profit in this country"). "For commercial use to weigh heavily against a finding of fair use, it must involve more than simply publication in profit-making venture." *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 22 (1st Cir. 2000).

In *HarperCollins*, the court relied on the fact that "[t]he posts on Gawker consisted of very brief introductions followed by the copied material" in concluding that Gawker's use was not for "purposes such as criticism, comment, [or] news reporting ... ." *HarperCollins*, 721 F.Supp.2d at

306. That is, the court found that Gawker Media merely copied *verbatim* portions of Plaintiff's yet to be published book and "essentially engaged in no commentary or discussion." *Id.* In contrast, in this case, Gawker Media posted an edited excerpt of the Video together with nearly three pages of commentary and editorial describing and discussing the Video in a manner designed to comment on the public's fascination with celebrity sex in general, and more specifically Plaintiff's status as a "Real Life American Hero to many," as well as the controversy surrounding the allegedly surreptitious taping of sexual relations between Plaintiff and the then wife of his best friend – a fact that was previously reported by other sources and was already the subject of substantial discussion by numerous media outlets.[3]

Moreover, unlike the plaintiff in *HarperCollins*, Plaintiff in this case cannot legitimately claim that he seeks to enforce the copyright because he intends to publish the Video. In any event, it cannot reasonably be argued that Gawker Media is usurping Plaintiff's potential market for the Video (which Plaintiff himself characterizes as a "sex tape") by publishing excerpts of the video. *See Michaels*, 1998 WL 882848, at *14 ("[Defendant's] transformative use of the Tape excerpts to produce an entertainment news story does not affect Lee's market for the same service, because Lee is not in such a market.").

### Balancing of Harm and Public Interest

Similarly, it is doubtful that the balancing of harm and public interest warrant preliminary injunctive relief. The Supreme Court has repeatedly recognized that even minimal interference with

---

[3] As this Court previously noted: " Plaintiff's public persona, including the publicity he and his family derived from a television reality show detailing their personal life, his own book describing an affair he had during his marriage, prior reports by other parties of the existence and content of the Video, and Plaintiff's own public discussion of issues relating to his marriage, sex life, and the Video all demonstrate that the Video is a subject of general interest and concern to the community."

the First Amendment freedom of the press causes an irreparable injury. *See, e.g., Nebraska Press Ass'n*, 427 U.S. at 559; *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976); *see also Bartnicki v. Vopper*, 532 U.S. 514, 531-32 (2001) (holding that First Amendment interest in publishing matters of public importance outweighed conversants' privacy rights given fact that media outlet had played no part in illegal reception). The Eleventh Circuit has recognized that the balance between the First Amendment and copyright is preserved, in part, by the doctrine of fair use. *See Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1263 (11th Cir. 2001).

### *Irreparable Harm*

Even if Plaintiff could establish a likelihood of success on the merits and that the balancing of harm and public interest warrant preliminary injunctive relief, Plaintiff has produced no evidence demonstrating that he will suffer irreparable harm in the copyright sense absent a preliminary injunction. The only evidence in the record reflecting harm to Plaintiff relates to harm suffered by him personally and harm to his professional image due to the "private" nature of the Video's content.[4] This evidence does not constitute irreparable harm in the context of copyright infringement.

"[T]he justification of the copyright law is the protection of the commercial interest of the artist/author. It is not to coddle artistic vanity or to protect secrecy, but to stimulate creation by protecting its rewards." *New Era Publications International, ApS v. Henry Holt & Co.*, 695 F.Supp. 1493, 1526 (S.D.N.Y. 1988). "The plaintiff's interest is, principally, a property interest in the copyrighted material." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) (citing *Wheaton v. Peters*,

---

[4] The First Amended Complaint does not specify the damage purportedly suffered by Plaintiff as a result of the alleged copyright infringement, alleging only in conclusory fashion that he suffered "a severe and irreparable injury which cannot adequately be compensated by monetary damages." First Amended Complaint (Dkt. 42), ¶ 86.

33 U.S. 591, 661 (1834)).[5]  The Fourth Circuit discussed the nature of the fair use defense in the

context of privacy concerns as follows:

> Because the challenged use is noncommercial, Bond must
> demonstrate that the use of the manuscript as evidence in the
> litigation would harm the potential market for his manuscript.
> Neither in his brief nor at oral argument has Bond been able to
> identify any harm or potential harm to his work against which the law
> of copyrights protects. The only harm that we can discern from his
> arguments is a claim that he has lost the right to control the release of
> a "private" or "confidential" document. But at oral argument, he
> conceded that the document was not confidential. Indeed, it is
> apparent that Bond has circulated the document in an effort to have
> it published. ***But more importantly, the protection of privacy is not
> a function of the copyright law.*** *See, e.g., New Era Publications Int'l
> ApS v. Henry Holt & Co.*, 695 F.Supp. 1493, 1504-05 (S.D.N.Y.
> 1988) (Leval, J.).  To the contrary, the copyright law offers a limited
> monopoly to encourage ultimate public access to the creative work of
> the author. ***If privacy is the essence of Bond's claim, then his action
> must lie in some common-law right to privacy, not in the Copyright
> Act.*** *See, e.g., Lawrence v. A.S. Abell Co.*, 299 Md. 697, 475 A.2d
> 448, 450-51 (1984).

*Blond v. Blum*, 317 F.3d 385, 395 (4th Cir. 2003) (emphasis added).  Here, Plaintiff's copyright claim

is, in essence, nothing more than a belated attempt to bolster his previous claims based on the

common-law right to privacy.

The main concern proffered by Plaintiff – the concern that spurred this litigation- well before

Plaintiff obtained his purported ownership of a copyright in the Video – is that the "private" Video

portrays him in poor light and in an embarrassing fashion. *See, e.g.*, First Amended Complaint, ¶¶

42, 52, 61, 76 ("Plaintiff has suffered injury, damage, loss, harm, anxiety, embarrassment,

---

[5] While "the Supreme Court has suggested [that] a copyright holder might also have a First Amendment interest
in not speaking," the protection of such interest is relevant in the context of a preliminary injunction only to the extent
that it is not remediable after a final adjudication. *Salinger*, 607 F.3d at 81 (citing *Harper & Row Publishers, Inc. v.
Nation Enters.*, 471 U.S. 539, 559 (1985)). Economic loss, even if difficult to quantify, is no basis for the entry of a
preliminary injunction restricting speech. *See, e.g., Hughes Network Sys., Inc. v. Interdigital Communications Corp.*,
17 F.3d 691, 693 (4th Cir. 1994); *In re King World Productions, Inc.*, 898 F.2d 56, 60 (6th Cir. 1990).

humiliation, shame, and severe emotional distress ..."), ¶ 66 ("Plaintiff has suffered severe emotional distress, anxiety and worry."). After attempting to quell any distribution or publication of excerpts of the Video in an effort to protect his mental well-being, personal relationships, and professional image, Plaintiff cannot legitimately claim that he is concerned with protecting the financial worth of the Video.

This is not a case in which the posting of copyrighted materials implicates the ownership value of the copyright because it impacts the commercial advantage of controlling the release of those materials. Indeed, there is no evidence that Plaintiff ever intends to release the Video and, in fact, it is quite likely that Plaintiff seeks to recover the copyrighted material for the sole purpose of destroying – not publishing – the copyrighted material. *See Nunez*, 235 F.3d at 24 (noting that where use of copyrighted material does not threaten copyright holder's right of first publication, nature of copyrighted work factor weighs in favor of finding of fair use). Moreover, the posting of a relatively poor quality edited excerpt[6] from the Video is unlikely to change the demand for the Video and, if anything, may actually increase it. *See id.* at 25 (noting that newspaper's publication of copyrighted photograph of naked beauty pageant contestant on front cover of newspaper should not change demand for portfolio).

Finally, Plaintiff's contention that irreparable harm should be presumed because he has alleged a *prima facie* case of copyright infringement is mistaken. While this may have been the rule in some circuits, it is no longer the law after *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). *See, e.g., Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enter., Int'l*, 544 F.3d

---

[6] Of note, Defendants did not simply post the entire Video – or substantial portions thereof, but rather posted a carefully edited excerpt consisting of less than two minutes of the thirty minute video of which less than ten seconds depicted explicit sexual activity.

1287, 1323 (11th Cir. 2008); *Live the Life Ministries, Inc. v. The Pairs Foundation, Inc.*, No. 4:11cv194-WS/WCS, 2011 WL 6780997, at *12 (N.D. Fla. Sep. 27, 2011).  Thus, an injunction "does not automatically issue upon a finding of copyright infringement," rather a plaintiff must still demonstrate the four requisites for either a preliminary or a permanent injunction.  *Peter Letterese & Assocs., Inc.,* 533 F.3d at 1323.

## IV.  Conclusion

Plaintiff has failed to demonstrate that he his entitled to a preliminary injunction. At a minimum, Plaintiff has introduced no evidence establishing that he would suffer irreparable harm in the copyright sense absent preliminary injunctive relief.  If it is ultimately found that Defendants have infringed a valid copyright held by Plaintiff, any violation is best redressed after a trial on the merits rather than by a prior restraint in derogation of the First Amendment.

Accordingly, Plaintiff's Motion for Preliminary Injunction to Enjoin Copyright Infringement (Dkt. 60) is **DENIED**.

**DONE AND ORDERED** this ___20th___ day of December, 2012.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

9