UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| TERRY GENE BOLLEA, professionally known as HULK HOGAN, <br><br> Plaintiff, <br><br> v. <br><br> GAWKER MEDIA, LLC aka GAWKER MEDIA; GAWKER MEDIA GROUP, INC. aka GAWKER MEDIA; GAWKER ENTERTAINMENT, LLC; GAWKER TECHNOLOGY, LLC; GAWKER SALES, LLC; NICK DENTON; A.J. DAULERIO; KATE BENNERT; BLOGWIRE HUNGARY SZELLEMI ALKOTAST HASZNOSITO KFT, <br><br> Defendants. | Case No. 8:12-cv-2348-T-27TBM |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Terry Gene Bollea, professionally known as "Hulk Hogan" ("Mr. Bollea" or "Plaintiff"), hereby responds to Defendants Gawker Media, LLC, Gawker Media Group, Inc., Gawker Entertainment, LLC, Gawker Technology, LLC, Gawker Sales, LLC, Nick Denton, A.J. Daulerio, and Kate Bennert's ("Defendants'") Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") for Failure to State a Claim and for Lack of Personal Jurisdiction, dated December 7, 2012 ("Motion"), and respectfully requests that the Motion be denied.

I.      <u>**INTRODUCTION**</u>

The First Amendment does not permit Gawker Media to trammel Mr. Bollea's rights by posting on its website an unlawfully recorded videotape of him naked and having sex in a private bedroom, for all the world to see.  Defendants' argument would altogether eliminate the right to privacy, contrary to the Eleventh Circuit's admonition that "[b]oth the rights to freedom of speech and freedom of the press… and the right to privacy… are fundamental constitutional rights," and that "[t]he Constitution directs no hierarchy between them." *Toffoloni v. LFP Publ'g Group, LLC*, 572 F.3d 1201, 1207-1208 (11th Cir. 2009). Accordingly, the Eleventh Circuit requires courts to "engage in a **fact-sensitive balancing** with an eye toward that which is **reasonable** and that which **resonates with our community morals**, in order to protect the Constitution as a whole." *Id*.  Here, "our community morals" dictate that an illegal video of a person having sex in a private bedroom should **not** be permitted to be posted on the Internet, not in the name of the First Amendment or otherwise. Gawker Media is exploiting the video for purposes of profit at the expense of Mr. Bollea's rights of privacy, publicity, and copyrights.  Defendants invite reversible error by asking the Court to bypass the required balancing by dismissing the FAC.

The facts alleged in the FAC involve one of the most egregious sets of facts imaginable.  The FAC provides that Mr. Bollea was **secretly videotaped** naked and engaged in private sexual relations with a woman in a private bedroom.  Mr. Bollea did not know about, or consent to, the taping or the distribution of the tape.  Gawker Media somehow gained possession of the tape and edited the most graphic parts of it into a minute-and-a-half "highlight reel" depicting Mr. Bollea fully naked; showing his sex partner performing oral

sex on him; and showing him engaged in sexual intercourse with her.  On October 4, 2012, Gawker Media posted the video at its website, Gawker.com ("Gawker Site"), where it has been viewed by more than 4 million people, earning Gawker Media tremendous advertising revenues as a result.

Mr. Bollea's claims for violation of his privacy rights, publicity rights, and copyrights (which he acquired through Bubba Clem, who has represented and warranted that he owned such rights) should not be dismissed based on Defendants' claimed First Amendment rights. The First Amendment does not trump all other rights.  It does not permit a person to shout "Fire!" in a crowded theater.  It does not permit a person to secretly videotape another person naked in a private place engaging in sexual relations, or post that video on the Internet, particularly when it violates criminal statutes, as it does here.  And it does not permit someone to capitalize on another person's copyrights without a license.

The First Amendment protects Gawker Media's right to **report the news**. However, there is a great divide between reporting the news and capitalizing from a private sex tape under the guise of "journalism."  If Gawker Media is permitted to get away with these acts, then the right to privacy ceases to exist in America, and any public figure can be secretly taped in any private place, engaged in any private activity, including nudity and sexual activity, and the footage can be posted on the Internet forever, for all the world to watch, in the name of "journalism," and without consequence or remedy.  The law does not support such an inequitable result.

Plaintiff's FAC properly alleges facts supporting each of his causes of action against Defendants and establishes personal jurisdiction over all Defendants.  Therefore, Defendants'

motion should be denied in its entirety.

## II.     <u>STANDARD OF REVIEW</u>

On a motion to dismiss, a court must accept as true all of the allegations in the complaint and construe them in the light most favorable to the plaintiff.  *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004); *see also Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The standard on a Rule 12(b)(6) motion is not whether the plaintiff ultimately will prevail in his theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.  *See Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986).  All that is required is "a short and plain statement of the claim."  Fed. R. Civ. P. 8(a)(2).  The plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Rule 12(b)(6) does not countenance... dismissals based on a judge's disbelief of a complaint's factual allegations" (internal citation omitted)).

Throughout the Motion, Defendants reference the Court's Order denying Plaintiff's Motion for Preliminary Injunction, and treat the Court's findings in connection with that motion as established law of the case.  *See, e.g.*, Motion p. 6.  But the Court's findings regarding Plaintiff's request for a preliminary injunction have no bearing on the present Motion.  It is well established that findings of fact and conclusions of law made by a court in connection with a preliminary injunction proceeding are not binding adjudications.[1]

---

[1] *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("where a federal district court has granted a preliminary injunction, the parties generally will [not] have had the benefit [] of a full opportunity to present their cases"); *see also Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (findings at preliminary injunction stage are made before discovery was completed and evidence fully developed and, thus, were "not binding on the district court . . .").

Moreover, to prevail on a motion for preliminary injunction, a plaintiff must establish a substantial likelihood of success on the merits. In contrast, on a motion to dismiss, the complaint need only allege facts that, if true, support a prima facie case, **even if** the plaintiff is **unlikely** to succeed on the merits. *See Bell Atl. Corp.*, 550 U.S. at 556 ("a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely'").

### III.   ARGUMENT

####    A.   The First Amendment Does Not Bar Plaintiff's Claims

#####      1.   The Court Must Balance the Parties' Rights

The Eleventh Circuit has held that the First Amendment, and the right to privacy, stand on **equal footing**:

> **Both** the rights to freedom of speech and freedom of the press, as guaranteed by the First Amendment, **and the right to privacy**, as guaranteed by the Due Process Clause, **are fundamental constitutional rights**. The Constitution directs no hierarchy between them. Thus, courts are required to engage in a **fact-sensitive balancing,** with an eye toward that which is **reasonable** and that which **resonates with our community morals**, in order to protect the Constitution as a whole.

*Toffoloni*, 572 F.3d at 1207-08 (emphasis added). Addressing the tension between the right to privacy and the First Amendment, the Ninth Circuit has held:

> Does the spirit of the Bill of Rights require that individuals be free to pry into the unnewsworthy private affairs of their fellowmen? In our view it does not. In our view **fairly defined areas of privacy must have the protection of law if the quality of life is to continue to be reasonably acceptable. The public's right to know is, then, subject to reasonable limitations so far as concerns the private facts of its individual members**….

*Virgil v. Time, Inc.*, 527 F.2d 1122, 1128 (9th Cir. 1975) (emphasis added).[2]

---

[2] These holdings are consistent with U.S. Supreme Court precedent holding that where a defendant seeks to use the First Amendment to insulate tortious conduct from liability, the court must

The First Amendment, therefore, does not automatically trump any competing interests or rights, as Defendants wrongly claim.  Rather, Defendants' First Amendment rights must be balanced against Mr. Bollea's privacy rights (as well as his publicity rights and copyrights), with all inferences drawn in favor of Mr. Bollea at this stage.

### 2.      Mr. Bollea's Rights Outweigh Defendants' Rights

"[S]peech on matters of purely private concern is of less First Amendment concern." *Dun & Bradstreet*, 472 U.S. at 759 (internal cites omitted).  In *Snyder v. Phelps*, 131 S.Ct. 1207 (2011), on which Defendants' First Amendment argument predominantly relies, the U.S. Supreme Court held:

> **Not all speech is of equal First Amendment importance**, however, and where matters of purely private significance are at issue, First Amendment protections are often less rigorous.  That is  because restricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest:  There is no threat to the free and robust debate of public issues; there is no potential interference with a meaningful dialogue of ideas; and the threat of liability does not pose the risk of a reaction of self-censorship on matters of public import.

*Id*. at 1215-16 (emphasis added; internal cites and quotes omitted); *see also Virgil*, 527 F.2d at 1128 ("We conclude that **unless it be privileged as newsworthy [], the publicizing of private facts is not protected by the First Amendment**.") (emphasis added).

### 3.      Determining Whether a Matter is of Public Concern is a Fact-Specific Inquiry

When evaluating the implications of the First Amendment on a defendant's liability "courts are **required to engage in a fact-sensitive balancing**."  *Toffoloni*, 572 F.3d at 1208

---

balance First Amendment concerns against other rights allegedly violated.  *See, e.g.*, *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 757 (1985) (in a defamation action, the court must "balance the State's interest in compensating private individuals for injury to their reputation against the First Amendment interest in protecting this type of expression").

(reversing District Court's grant of a motion to dismiss).  *Snyder* also clarifies that this fact-specific inquiry is not appropriate for resolution on a motion to dismiss.  *Snyder*, 131 S.Ct. at 1215-18 ("Whether the First Amendment prohibits holding [defendant] liable for its speech… turn largely on whether that speech is of public or private concern, **as determined by all the circumstances of the case**." (emphasis added)).  The Supreme Court explained:

> Deciding whether speech is of public or private concern requires us to examine the content, form, and context of that speech, **as revealed by the whole record**….  In considering content, form, and context, no factor is dispositive, and **it is necessary to evaluate all the circumstances of the speech**, including what was said, where it was said, and how it was said.

*Id*. at 1216 (emphasis added) (internal cites and quotes omitted).  In finding that the First Amendment precluded plaintiff's claims, the *Snyder* court reached this determination only after carefully reviewing and discussing **all of the facts** presented **at trial**.[3]  *See id*. at 1216-19.  The *Snyder* court was careful to instruct that:

> Our holding today is narrow.  **We are required in First Amendment cases to carefully review the record, and the reach of our opinion here is limited by the particular facts before us.**  As we have noted, the sensitivity and significance of the interests presented in clashes between First Amendment and state law rights counsel relying on limited principles that sweep no more broadly than the appropriate context of the instant case.

*Id.* at 1220 (emphasis added) (internal cites and quotes omitted).[4]  Accordingly, it is inappropriate to resolve these issues on a motion to dismiss.

---

[3] The *Snyder* defendants' speech was found to constitute a matter of public concern because "the issues they highlight – the political and moral conduct of the United States and its citizens, the fate of our Nation, homosexuality in the military, and scandals involving the Catholic clergy – are matters of public import."  *Snyder*, 131 S.Ct. at 1217.  This is significantly different than the private sex video posted to the Internet by Defendants.

[4] In his concurring opinion, Justice Breyer expounded on the narrow holding of First Amendment protection, explaining that the opinion does not "say anything about Internet postings."  *Id.* at 1221.  Following the example set by the Supreme Court in *Snyder*, and as required by the

Thus, the only remaining inquiry on the Motion is whether Plaintiff has sufficiently alleged a *prima facie* case for his causes of action.  As discussed below, Plaintiff has more than met this minimal burden.

**B.    The FAC Alleges a *Prima Facie* Case for Public Disclosure of Private Facts**

To establish a claim for public disclosure of private facts under Florida law, a plaintiff must show that there was (1) a publication, (2) of private facts, (3) that are offensive, and (4) are not of public concern.  *Cape Publ'ns, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989).[5]  As discussed below, Mr. Bollea has sufficiently alleged a *prima facie* case.

**1.    Public Disclosure of Private Facts that are Offensive**

Mr. Bollea alleges public disclosure by Defendants' posting of a one minute and forty second "highlight reel" of Mr. Bollea naked and having sex in a private bedroom.  Defendants' posting allowed millions of people to watch the private sexual encounter.  FAC ¶¶ 27, 29, 45, 51.  Mr. Bollea alleges throughout the FAC that the sexual encounter was private.  It occurred in a private bedroom, where Mr. Bollea had a reasonable expectation of

---

Eleventh Circuit in *Toffoloni*, this Court should engage in the **required** balancing of First Amendment rights with Mr. Bollea's privacy rights, publicity rights and copyrights, and determine whether Gawker's posting of the excerpts of the Bollea sex tape **is a matter of public concern**, only after it has had the opportunity to review "the whole record" and "all the circumstances of the case."

[5] The Restatement (Second) of Torts provides that:  "when a photograph is taken without the plaintiff's consent in a private place, or one already made is stolen from his home, the plaintiff's appearance that is made public when the picture appears in a newspaper is still a private matter, and his privacy is invaded."  Restatement (2d) of Torts, § 652D, cmt. (b). The Restatement also states that "[s]exual relations… are normally entirely private matters."  *Id.*

privacy.  FAC ¶¶  1-2.  Mr. Bollea also alleges that the publication of the video showing him naked and having sex was highly offensive.  FAC ¶¶ 37, 45, 47.[6]

Defendants do not challenge that the posting of the sex video was a "publication" or that it was "offensive."  Rather, Defendants contend that the private sexual conduct was not private because other websites had reported on the **possible existence** of the video, and had posted a few alleged stills from the video, though they did not publish any actual footage of the video.  First, limited prior disclosure of the fact that the video exists, or a still image from the video, does not eviscerate the private nature of the video.  *See, e.g.*, *Michaels v. Internet Entertainment Group*, 5 F. Supp. 2d 823, 841 (C.D. Cal. 1998) ("The plaintiffs' privacy interest in the unreleased portions of the Tape is undiminished.").  Second, whether and the extent to which the private conduct was previously disclosed is exactly the sort of factual dispute that is improper to resolve on a motion to dismiss.

Further, Defendants suggest that Mr. Bollea's sexual encounter with Ms. Clem became newsworthy because "plaintiff's own book described a prior affair."  Motion pp. 5, 10.  On the contrary, the affair described in the book had nothing to do with Ms. Clem or the conduct depicted in the video at issue.  *See* Exh. 2 to Fugate Decl. filed on November 2, 2012.  As such, contrary to Defendants' misleading suggestion, the book did not disclose any of the private facts or conduct posted on the Gawker Site, and they remained private until Defendants' wrongful dissemination.  Mr. Bollea's allegations regarding the private nature of the acts depicted in the video (as discussed immediately above) should be credited and any inferences to be drawn should be resolved in Mr. Bollea's favor.

---

[6] Apart from being offensive, both the secret recording and the distribution thereof constitutes a felony under Florida's video voyeurism law, Fla. Stat. § 810.145.

2.     **The Video Depicting Mr. Bollea Having Sex in a Private Bedroom is Not a Matter of Public Concern**

Mr. Bollea is required to show only that when all facts alleged are presumed true and all inferences construed in his favor, he has a **plausible claim** that a video (depicting him naked and having sex in a private bedroom) is not a matter of public concern such that all people of the world are entitled to watch it.  The facts as alleged are more than sufficient to meet this standard.  Courts have repeatedly held that private sexual relations are not a matter of public concern, even when they involve public figures.  The Eleventh Circuit has recognized that "even public figures, like actresses, may be 'entitled' to keep private 'some intimate details ... such as sexual relations ....'" *Toffoloni*, 572 F.3d at 1211 (11th Cir. 2009) (citing Restatement (2d) of Torts § 652D, cmt. (h)); *see also*, *Michaels*, 5 F.Supp.2d at 840 ("even people who voluntarily enter the public sphere retain a privacy interest in the most intimate details of their lives").

Contrary to Defendants' claims, Mr. Bollea's sexual encounter with Ms. Clem did not become newsworthy because "plaintiff published an autobiography… admitting that the details of the affair 'became national news.'"  Motion p. 5.  That Plaintiff may have had an affair with another woman (i.e., not Ms. Clem), even if it became newsworthy, does not forever remove Mr. Bollea's right to privacy.  To the contrary, "public exposure of one sexual encounter [does not] forever remove[] a person's privacy interest in all subsequent and previous sexual encounters."  *Michaels*, 5 F.Supp.2d at 840.

Even if the Court were to find Mr. Bollea's encounter with Ms. Clem to be a matter of public concern, it does not follow that the actual **video footage** of Mr. Bollea naked and having sex in a private bedroom is something that all people of the world should be entitled

to watch at Defendants' website.  While a news report about private conduct may be newsworthy, publicly displaying a video showing the actual private activity, including full frontal nudity and explicit sexual acts, is not.  There is a world of difference between the ***fact*** and the ***act***.  Under similar circumstances, the *Michaels* court explained:

> Because they sought fame, [plaintiffs] must tolerate some public exposure of **the fact of their involvement**.  The fact recorded on the Tape, however, is not that [plaintiffs] were romantically involved, but rather **the visual and aural details of their sexual relations,** facts which are ordinarily considered **private even for celebrities**.

*Id.*  In distinguishing the prior case of *Eastwood v. Superior Court*, 198 Cal. Rptr. 342 (Cal. App. 1983), frequently cited by Defendants, *Michaels* held that *Eastwood* involved "publicity about the **fact** of a famous person's romantic involvement" **not "graphic descriptions of the most intimate aspects of the relationships.**"  *Michaels*, *supra* at 840 (emphasis added).

The cases cited by Defendants do not contradict this important distinction between reporting on the fact of a private encounter, versus showing the private act itself.  These cases only bolster the need for this important distinction.  In *Cape Publ'ns, Inc. v. Hitchner*, 549 So. 2d 1374 (Fla. 1989), cited repeatedly by Defendants, a newspaper reported on a story involving parents who had physically abused their daughter, including "scrubbing the daughter's bottom and rectum with a steel wool pad." *Id.*  The court properly held that this **report** was newsworthy and subject to First Amendment protection because this deplorable conduct was the subject of a public trial.  However, if that news media somehow obtained a video of this vile and explicit abuse, and posted it to the Internet for all the world to watch, it is hard to imagine a court permitting the public display of that video – of a naked child being abused by her parents – based on a First Amendment argument by the news media, as

compared with the violation of the victim's privacy rights.  Moreover, in *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), the court held that a newspaper was protected by the First Amendment from liability for privacy violations when it published the identity of a rape victim.  Again, had the news media obtained and published the actual video of the plaintiff being raped, it is unconscionable to think that the court would have permitted the media to post that video over the victim's objections.  The ***fact*** of the rape is one thing, but depicting the ***act*** is quite another.  Here the fact that Mr. Bollea had sex with Ms. Clem may be of public interest or concern; but the video showing them naked and engaged in oral sex and sexual intercourse in a private bedroom is not.

Mr. Bollea therefore has alleged a *prima facie* case for invasion of his privacy, and this claim should not be dismissed.

### C.   The FAC alleges a *Prima Facie* Case for Copyright Infringement

The FAC alleges that "Plaintiff is the owner of the copyrights in and to the Video."  Thus, there is no merit to Defendant's argument that "plaintiff has failed to adequately allege that he owns a copyright in the Video."  Motion p. 18.  Defendants appear to take issue with the fact that the Complaint does not allege that Plaintiff acquired ownership of the copyright as the result of a transfer of those rights.[7]  There is no requirement that the manner in which ownership is acquired be alleged, and Defendants cite no authority suggesting otherwise.[8]

---

[7] Defendants concede that they received a copy of the Copyright Transfer Agreement and of Mr. Bollea's copyright registration certificate.  Motion at 18, n. 10.

[8] *Roig v. Star Lofts*, 2011 WL 6178882 (M.D. Fla. Dec. 12, 2011) and *Total Mkt. Techs., Inc. v. Angel Medflight*, 2012 WL 33150 (M.D. Fla. Jan. 6, 2012), relied on by Defendants, do not support the dismissal of Plaintiff's copyright claim.  For example, in *Roig¸ supra* at *2, the Court noted that "the pleadings fail to allege copyright ownership . . ."  In contrast, here, ownership is expressly alleged.  FAC, ¶ 77.  In *Total Mkt. Techs., Inc.*, *supra*, at *5, the Court dismissed the complaint based

Contrary to Defendants' claim, Mr. Bollea's allegation of ownership of the copyright on its face is consistent with Mr. Bollea not being the author of the video, because Defendants concede that a copyright can be transferred.  Motion p. 19, n. 11.

Likewise, the FAC properly alleges that the copyright in the video is registered. Specifically, the FAC alleges that "Plaintiff has complied with requirements of Title 17 of the United States Code with respect to the registration of the copyright in and to the Video, thereby entitling Mr. Bollea to assert his rights and privileges in and to the Video."  FAC ¶ 78.  There is no requirement that the copyright registration be attached to the Complaint.  *See American Institute of Physics v. Schwegman Lundberg & Woessner, P.A.*, 2012 WL 3799647 (D.Minn. July 2, 2012) (Motion to dismiss copyright claim denied where "Plaintiffs have not attached to the Complaint the articles' copyright registration certificates.")  Mr. Bollea has properly alleged that he has complied with all registration requirements, and there is no basis for the dismissal of his copyright infringement claim.

### D. The FAC Alleges a *Prima Facie* Case for Violation of Florida Common Law Right of Publicity

To prevail on a claim for violation of common law right of publicity under Florida law, a party must establish that an individual's name or likeness is used without his consent for the benefit that its value confers on the defendant.  *Agency for Health Care v. Assoc. Indus.*, 678 So. 2d 1239, 1252, n. 20  (Fl. 1996) (holding that one of the "four types of wrongful conduct that can all be remedied with resort to an invasion of privacy action," is "appropriation – the unauthorized use of a person's name or likeness to obtain some

---

on the conclusion that a valid copyright cannot exist over blank forms, not because ownership of the claimed copyright was not alleged.

benefit.")  The FAC alleges that "Defendants misappropriated Mr. Bollea's name, likeness, image, identity and persona by using the Video Excerpts and Narrative for the purpose of commercial gain, without Plaintiff's consent."  FAC, ¶ 56.  These allegations plainly allege the unauthorized use of Mr. Bollea's name and likeness to obtain some benefit, and therefore properly allege a violation of common law rights of publicity, as the elements of that claim are set forth in *Agency for Health Care*, *supra*.

While Florida also has a statutory claim for unauthorized publication of name or likeness, Fla. Stat. § 540.08, this statutory claim does not supersede common law claims for violation of publicity.  Rather, the statute provides that "[t]he remedies provided for in this section shall be in addition to and not in limitation of the remedies and rights of any person under the common law against the invasion of her or his privacy."  Fla. Stat. § 540.08(7). Defendants urge the Court to analyze this claim as if it were a claim for a violation of Florida Statute § 540.08, a statutory right of publicity violation.  While Defendants rely on certain federal cases that equate the common law and statutory claims and conclude that the elements are "substantially identical," a comparison of the elements of the common law claim as articulated by the Florida Supreme Court in *Agency for Health Care*, *supra*, with the elements set forth in Fla. Stat. § 540.08 make clear that they are not equivalent.  The elements of pleading a common law claim are **less restrictive**.  To evaluate the common law claim based on the statutory elements would be to disregard the statutory admonition that "[t]he remedies provided for in this section shall be in addition to and not in limitation of the remedies and rights of any person under the common law."  *Id.*

In any event, the FAC also properly alleges a claim for violation of publicity rights in violation of Fla. Stat. § 540.08.  The FAC alleges the unauthorized misappropriation of Mr. Bollea's likeness "for the purpose of commercial gain."  FAC, ¶ 56.  This is equivalent to an allegation that Mr. Bollea's name and/or image was misappropriated for a "commercial purpose."  Thus, even under the narrower statutory elements, the FAC properly alleges a claim for violation of publicity rights.  *See e.g. Gritzke v. M.R.A. Holding, LLC*, 2002 WL 32107540, *1 (N.D.Fla. Mar. 15, 2002) (denying motion to dismiss publicity claim where "Plaintiff has squarely alleged that defendant published her photograph in Florida for commercial and advertising purposes").[9]  Accordingly, Defendants' motion to dismiss Plaintiff's common law right of publicity claim should be denied.

### E.    The FAC Alleges a *Prima Facie* Case for Intrusion Upon Seclusion

Invasion of privacy by intrusion is defined as follows:

> One who intentionally intrudes, physically **or otherwise**, upon the solitude or seclusion of another **or his private affairs or concerns**, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person.

---

[9] In *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562 (1977), the only right of publicity case ever considered by the U.S. Supreme Court, plaintiff performed a human cannonball act at state fairs and told a local television news reporter that it was not permitted to film his performance. Against his objection, the reporter filmed his performance and the news station broadcast, during its evening news program, 15 seconds of plaintiff's 30 minute performance. Plaintiff sued for violation of common law right of publicity; the news station claimed the First Amendment right to report the news.  The Supreme Court sided with the plaintiff and held the broadcast was a right of publicity violation, holding:  "The rationale for protecting the right of publicity is the straight-forward one of preventing unjust enrichment by the theft of good will.  No social service is served by having the defendant get for free some aspect of the plaintiff that would have market value and for which he would normally pay." *Id.* at 576.  The parallels to the instant case are instructive. *See also*, RESTATEMENT (SECOND) OF TORTS, Section 652C: "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy."

RESTATEMENT (SECOND) OF TORTS, Section 652B (emphasis added).  Mr. Bollea has alleged

throughout the FAC that Defendants intentionally intruded upon Mr. Bollea's intimately

private affairs.  *See e.g.*, FAC at ¶¶ 35, 36, 38, 39.  Moreover, Mr. Bollea has alleged that

Defendants' conduct was "offensive and objectionable to Plaintiff, and would be offensive

and objectionable to any reasonable person of ordinary sensibilities."  FAC, ¶ 37.  Thus, Mr.

Bollea has adequately alleged a claim for intrusion upon seclusion.

Defendants merely offer a string-cite of case law, followed by the statement that "[a]s

the above authorities make clear [Plaintiff's allegations against Defendants are] insufficient

to state a claim for intrusion."  Motion, p. 10.  The cases cited by Defendants, however, are

inapposite and do not diminish the sufficiency of Mr. Bollea's allegations.[10]

### F.      The FAC Alleges a *Prima Facie* Case for Intentional Infliction of Emotional Distress

Whether conduct which forms the basis of a claim is "outrageous enough to rise to

the level required by the tort may be decided as a question of law when the facts of a case can

under no conceivable interpretation support the tort. . . but where significant facts are

disputed, or where differing inferences could reasonably be derived from undisputed facts,

---

[10] For example, *Allstate Ins. Co. v. Ginsberg*, 863 So.2d 156 (Fla. 2003), involved an unwelcome sexual contact and the court held that the intrusion must be somewhere where "there is a reasonable expectation of privacy and not [] to a body part."  *Id.* at 162 (holding that "this is a tort in which **the focus is the right of a person to be free from public gaze**.") (emphasis added).  In the present case, however, the intrusion is not an unwanted touching by Defendants, it was an intrusion into Mr. Bollea's private affairs, where Mr. Bollea had a right to be free from the public's gaze.  In *Spilfogel v. Fox Broad. Co.*, 433 F.App'x 724 (11th Cir. 2011), the plaintiff was videotaped on a public street, and the court held that for liability to attach, the offender must intrude "into one's private quarters."  *Id.* at 726.  Conversely, Mr. Bollea's private conduct occurred in a private bedroom, where he had a reasonable expectation of privacy.  In *Stasiak v. Kingswood Co-op, Inc.*, 2012 WL 527537 (M.D. Fla. Feb. 17, 2012), the court found that an inquiry into plaintiff's credit histories was not highly offensive or outrageous to a reasonable person.  Here, unauthorized publication of the Video showing Mr. Bollea naked and having sex is certainly more offensive than an inquiry into a credit score.

the question of outrageousness is for the jury to decide. *Williams v. City of Minneola*, 575 So. 2d 683, 692 (Fla. 5th DCA, 1991).  In *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278-79 (Fla. 1985), the Florida Supreme Court relied on the definition of extreme and outrageous conduct set forth in Section 46, RESTATEMENT (SECOND) OF TORTS, which states:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Defendants' argument that the conduct alleged is not outrageous as a matter of law is without merit.  Posting a secretly taped video of a person engaged in intimate sexual activity on the internet for all the world to see, as the FAC alleges, is outrageous – or, at a minimum – could certainly be considered outrageous.  If this conduct were described to an average member of the community, this conduct could well arouse resentment and lead that person to exclaim "Outrageous!"  A conclusion that the conduct is outrageous can reasonably be inferred from the facts alleged, and it would be inappropriate to dismiss this claim.

There is also no merit to the argument that the FAC has not pled facts to establish that Defendants' conduct was intentional or reckless. To support a claim for intentional infliction of emotional distress, "all that need be shown is that [the defendant] intended his specific behavior and knew or should have known that the distress would follow." *Dominguez v. Equitable Life Assurance Soc'y of the U.S.*, 438 So.2d 58, 59 (Fla. 3d DCA 1983), approved, 467 So.2d 281 (Fla.1985).  In *Williams*, *supra* at 690, the Court observed that "the cause of action should more appropriately be called 'outrageous conduct causing severe emotional distress' because it could involve either the deliberate or reckless infliction of mental

suffering."  The FAC alleges intentional conduct by Defendants.  *See*, *e.g.*, FAC ¶ 64 ("At all times herein, Defendants acted intentionally and unreasonably in publishing, distributing and disseminating the Gawker Story when they knew or should have known that emotional distress would likely result").  The intent element is therefore sufficiently pled.

Finally, in alleging that "[a]s a direct and proximate result of the aforementioned acts by Defendants, Mr. Bollea has suffered injury, damage, loss, harm, anxiety, embarrassment, humiliation, shame, and severe emotional distress," FAC, ¶ 68, Mr. Bollea has properly alleged severe emotional distress.  Accordingly, there is no basis for dismissal of this claim.

### G.  The FAC Alleges a *Prima Facie* Case for Negligent Infliction of Emotional Distress

Florida's "impact rule" only provides that "'before a plaintiff can recover **damages** for emotional distress caused by the negligence of another, the emotional distress must flow from physical injuries the plaintiff sustained in an impact.'"  *S. Baptist Hosp. of Florida, Inc. v. Welke*r, 908 So. 2d 317, 320 (Fla. 2005) (emph. added, internal citations omitted).  With certain exceptions, the "impact rule" bars a plaintiff from recovering damages for his or her emotional distress that is caused by another's negligence but does not flow from physical injury.  But the "impact rule" does not bar injunctive relief.  Accordingly, Mr. Bollea's claim for negligent infliction of emotional distress properly states a claim on which injunctive relief can be based.

### H.  The Court has Personal Jurisdiction over All of the Defendants

Defendants' challenge to personal jurisdiction over Gawker Media Group, Inc., Gawker Entertainment, LLC, Gawker Technology, LLC, and Gawker Sales, LLC, whom

Defendants style the "Tag-Along Defendants" (herein referred to as the "Related Entity Defendants") is without merit.

First, Plaintiff has alleged that all Defendants "were and are the agents, licensees, employees, partners, joint-venturers, co-conspirators, owners, principals, and employers" of the other Defendants, and that Defendants collectively acted as a single enterprise, aka "Gawker Media," in committing the acts alleged in the FAC, and "were and are all under the control of defendant Gawker Media Group, Inc."  FAC ¶¶ 13, 16, 22.  Plaintiff has thus alleged that all Defendants, including the Related Entity Defendants, committed tortious acts that injured Mr. Bollea in his home state of Florida.  Defendants' tortious conduct, as alleged in the FAC, was expressly aimed at Florida[11] and Defendants knew that their conduct would directly impact and harm the Florida Plaintiff in this case.[12]  Defendants concede that personal jurisdiction exists over **some** of the Defendants.  Because the identical allegations are alleged against all Defendants, Florida's long-arm statute is satisfied as to the Related Entity Defendants, in the same way that it is to the other Defendants who have not challenged personal jurisdiction.

Once Mr. Bollea has alleged a *prima facie* case for jurisdiction, he does not have "the burden of proving 'by affidavit the basis upon which jurisdiction may be obtained' [unless] the defendant challenging jurisdiction files 'affidavits in support of his position.'  *Posner v.*

---

[11]  The FAC alleges that Defendants posted a video of the two Florida residents (Mr. Bollea and Ms. Clem), that was filmed in Florida, that violated copyrights held in Florida, and injured Mr. Bollea (and others) in Florida.

[12]  *See New Lenox Indus. v. Fenton*, 510 F. Supp. 2d 893, 904 (M.D. Fla. 2007) (where tortious conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum.)

*Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (internal citation omitted).  Here, the

Related Entity Defendants failed to submit any affidavits contesting jurisdiction.  This failure

to make an appropriate evidentiary submission dictates rejection of the jurisdictional grounds

of the motion to dismiss.

Moreover, as a factual matter, an examination of the public records reflect that

Defendants act in conjunction with and on behalf of each other, and for a common purpose.

Nick Denton and Gawker Media, LLC are the only two managers or members of both

Gawker Entertainment, LLC, and Gawker Technology, LLC.  *See* attached Declaration of

Eric Levinrad, ("Levinrad Decl."), at ¶¶ 2, 3, Exhs.  A, B.  Furthermore, Plaintiff has alleged

that Mr. Denton is the founder and owner of Gawker Media Group, Inc., Gawker

Entertainment, LLC, Gawker Technology, LLC, Gawker Sales, LLC and Blogwire Hungary.

FAC ¶ 18.  Mr. Denton also has represented himself as the President of Gawker Sales, LLC

*Id*. at ¶4, Exh. 3.  Further, Blogwire Hungary appears to hold the right to a significant portion

of the intellectual property of Defendants' business, including the Gawker.com internet

domain name and the "Gawker" trademark.[13]  Plaintiff has alleged that all of these Gawker

Media enterprise defendants collectively operate and control the Gawker Site and that Mr.

Denton and Gawker Media, LLC were acting in concert with, at the direction of, and for the

benefit of the other Related Entity Defendants.  FAC ¶ 17, 22.

---

[13] Public records reflect that Blogwire Hungary is the owner of the federal registrations used
by the other Defendants, including among others: GAWKER (U.S. Registration No. 3,168,188),
GAWKER STALKER (U.S. Registration No. 3274763), JEZEBEL (U.S. Registration No. 3597171)
and DEFAMER (U.S. Registration No. 3231927).  Blogwire Hungary also is listed as the owner of
the domain names to all of websites operated by Defendants, including Gawker.com and Jezebel.com.
Levinrad Decl. at ¶ 5.

Courts have exercised personal jurisdiction under similar circumstances.  For example, in *Meier ex reI. Mier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1273 (11th Cir. 2002), the Eleventh Circuit held that where functions are divided between affiliated entities, the actions of one entity may extend specific jurisdiction over the others on an agency theory under Florida's long-arm statute. *Id.* at 1274; *see also Pappalardo v. Richfield Hospitality Servs., Inc.* 790 So.2d 1126, 1128 (Fla. 4th DCA) (jurisdiction exists based on agency theory where defendant entities were "**a confusing conglomerate, and [are] essentially one and the same company**" (emphasis added)).  This is precisely what Mr. Bollea has alleged.  Defendants' motion to dismiss based on claimed lack of  jurisdiction should therefore be denied.

In the alternative, at a minimum, Mr. Bollea should be permitted jurisdictional discovery to ascertain the involvement of each of the entities in this "confusing conglomerate." *Pappalardo*, 790 So.2d at 1128.[14]

## IV.    CONCLUSION

For the reasons set forth above, Terry Bollea respectfully requests that Defendants' Motion [D.E. 63] be denied in its entirety.  If the Court finds that any portion of the motion is due to be granted, Mr. Bollea respectfully seeks leave to amend his First Amended Complaint to correct any deficiencies pursuant to Federal Rule of Civil Procedure 15(a).

---

[14] The Eleventh Circuit provides a qualified right to conduct jurisdictional discovery in circumstances where jurisdictional facts are in dispute.  *Eaton v. Dorchester Dev., Inc*., 692 F.2d 727, 729 (11th Cir. 1982).  Defendants created a confusing corporate structure to attempt to conceal where actual liability may lie and/or shield valuable assets (including intellectual property) from a judgment.  By their Motion, Defendants ask this Court to restrict any potential liability to the entity of their choosing (Gawker Media LLC, which presumably is judgment proof), rather than to the enterprise as a whole as Plaintiff alleged.  Jurisdictional discovery is therefore appropriate.

Respectfully Submitted,

DATED: December 24, 2012

  /s/ Kenneth G. Turkel
Kenneth G. Turkel, Esq.
Florida Bar No. 867233
kturkel@bajocuva.com
Christina K. Ramirez
Florida Bar No. 0954497
cramirez@bajocuva.com
**BAJO CUVA COHEN & TURKEL, P.A.**
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Telephone:  (813) 443-2199
Facsimile:  (813) 443-2193

DATED: December 24, 2012

  /s/ Charles J. Harder
Charles J. Harder, Esq.
California Bar No. 184593 (Admitted *Pro Hac Vice*)
charder@wrslawyers.com
Eric Levinrad, Esq.
California Bar No. 169025 (Admitted *Pro Hac Vice*)
elevinrad@wrslawyer.com
**WOLF, RIFKIN, SHAPIRO, SCHULMAN &
RABKIN, LLP**
11400 W. Olympic Boulevard, 9th Floor
Los Angeles, CA  90064-1582
Telephone:  (310) 478-4100
Facsimile:  (310) 479-1422

*Attorneys for Plaintiff Terry Gene Bollea*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of December, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send a notice of electronic filing to all persons registered to receive notice via the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/ECF participants.

  /s/ Charles J. Harder
Attorney